1
Joseph E. Caceres, Esq. (SBN 169164)
Charles Shamash, Esq. (SBN 178110)
2
Caceres & Shamash, LLP
8200 Wilshire Boulevard, Suite 400
3
Beverly Hills, California 90211
Telephone: (310) 205-3400
4
Facsimile: (310) 878-8308

5
[Proposed] Reorganization Counsel for Debtor
and Debtor-In-Possession
6

7

8                       UNITED STATES BANKRUPTCY COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10                      SAN FERNANDO VALLEY DIVISION

11

12   In re                          )   Case No. 1:09-bk-27368-KT
                                     )
13   CHATSWORTH INDUSTRIAL           )   Chapter 11
     PARK, LP,                       )
14                                   )   **DEBTOR'S MOTION FOR ORDER
                                     )   AUTHORIZING USE OF CASH
15                                   )   COLLATERAL; MEMORANDUM OF POINTS
                                     )   AND AUTHORITIES AND DECLARATION
16                                   )   OF SHARON LYNNE BOYAR AND
                                     )   EXHIBITS IN SUPPORT THEREOF**
17                                   )
                                     )   [Application for Order Setting
18                                   )   Hearing on Shortened Notice filed
                                     )   concurrently herewith on Court
19                                   )   Form F 9075-1.1]
                                     )
20                                   )
                                     )   Date: **Hearing To Be Set
21           Debtor and Debtor-      )   Time:      By Court**
             In-Possession.          )   Ctrm: 301
22                                   )         21041 Burbank Blvd.
     _____ )        Woodland Hills, CA 91367
23

24   **TO THE HONORABLE KATHLEEN THOMPSON, UNITED STATES BANKRUPTCY JUDGE,**

25   **UNITED STATES TRUSTEE, CREDITORS, AND OTHER INTERESTED PARTIES:**

26   //

27   //

28   //

1    CHATSWORTH INDUSTRIAL PARK, LP, debtor and debtor-in-possession

2  in the above entitled Chapter 11 proceeding (the "Debtor" or

3  "Daniger"), which chapter 11 case was commenced on December 23, 2009

4  (the "Petition Date") hereby moves the Court for an order granting the

5  following relief:

6         1.   Authorizing the immediate use of all cash and cash

7              equivalents on hand and hereafter received (i.e., the "Cash

8              Collateral") from the five adjacent industrial properties

9              in Chatsworth, California located at 21026-21040

10             Nordhoff Street, 9035 Independence Avenue., 21019

11             Osborne Street, 21025 Osborne Street, and 21045-51

12             Osborne Street (the "Chatsworth Properties"), to pay

13             ordinary and necessary operating expenses in accordance with

14             the cash flow Projections/Budget attached, as Exhibit "1,"

15             to the accompanying Declaration of Sharon Lynne Boyar, and

16             permitting the carryover of any unused but authorized use of

17             cash from month-to-month.[1]

18        2.   Authorizing the Debtor to exceed any line item in the budget

19             by up to ten percent (10%) in any one month, as long as the

20             overage for all items in the aggregate does not exceed ten

21             percent (10%) of the total budget amount for that month,

22             with the budget savings in one month to be carried over into

23             subsequent months on an aggregate basis;

24        3.   Granting <u>Keybank, N.A.</u>, as purported holder of a first trust

25             deed on the Chatsworth Properties and/or cash collateral

26             therefrom, as adequate protection for the foregoing usage, a

---

[1]There are a total of 7 buildings and 9 rental units on these
properties.  The buildings are cross-collateralized by the alleged lien first
trust deed of Keybank, NA.

1    replacement lien on such collateral to the same extent that

2    it holds a validly perfected, unavoidable, and enforceable

3    prepetition lien, and a replacement lien on newly acquired

4    cash collateral, to the same extent, validity and priority

5    as it now holds, with a value equal to the amount of the

6    cash collateral expended by Debtor (said liens shall <u>not</u>

7    attach to any property or proceeds acquired or generated by

8    the Debtor through the use of funds that are not subject to

9    such liens);

10    4.    Setting a final hearing on the Motion; and

11    5.    Granting such further relief as the Court deems just and

12    proper.

13    The purpose for the use of Cash Collateral is self-evident, as it

14    goes without saying that in order to preserve the value of the

15    Chatsworth Properties and the Debtor's ability to collect the maximum

16    income therefrom, the Debtor must maintain the buildings in proper

17    condition.  In order to do so, the Debtor's immediate and ongoing cash

18    needs include, but are not necessarily limited to, paying for usual

19    items such as utilities, insurance, property taxes, maintenance,

20    repairs, and management fees.  The Debtor also proposes to pay its

21    mortgage payments to Keybank as provided under its note, i.e.,

22    $67,126.99 per month (which includes an escrow amount of $19,775.57/

23    mth. intended to pay for items such as tenant improvements, property

24    taxes, insurance, and broker commissions), as adequate protection.

25    In order to timely pay for these items and to otherwise meet its

26    obligations on an ongoing basis throughout this case, the Debtor must

27    have the immediate use of the Cash Collateral.

28    As adequate protection of the interests of each entity with a

3

purported interest in the Cash Collateral, the Debtor will (I) grant

Keybank, N.A., as purported holder of a lien on the Chatsworth

Properties as set forth above and/or cash collateral therefrom,

replacement liens on such collateral to the same extent that it holds a

validly perfected, unavoidable, and enforceable prepetition lien, and

on newly acquired cash collateral, to the same extent, validity and

priority as it now holds, with a value equal to the amount of the cash

collateral expended by Debtor; and also grant the L.A. County Tax

Collector, as a possible holder of a lien for delinquent taxes,

replacement liens on such collateral to the same extent that it holds a

validly perfected, unavoidable, and enforceable prepetition lien, and

on newly acquired cash collateral, to the same extent, validity and

priority as it now holds, with a value equal to the amount of the cash

collateral expended by Debtor; (ii) make ongoing cash payments to

Keybank, N.A. in the form of regular monthly mortgage payments of

$67,126.99 per month (which includes an escrow amount of $19,8775.57/

mth. intended to pay for items such as tenant improvements, property

taxes, insurance, and broker commissions), as provided by its note; and

by virtue of this payment to Keybank pay its ongoing property taxes to

the L.A. County Tax Collector through the impound account; (iii)

provide periodic (monthly) accountings reflecting all collections and

disbursements made by the Debtor, as required by the U.S. Trustee's

guidelines; and (iv) maintain appropriate insurance coverage on the

properties so as to protect the secured creditors' interest therein.

A proposed form of order setting forth the above terms is attached
as Exhibit "3" to the accompanying Declaration of Sharon Lynne Boyar.

The Debtor will provide the twenty (20) largest unsecured
creditors, all purported secured creditors, the Office of the United

4

1   States Trustee and parties requesting special notice with notice of

2   this Motion and the initial hearing thereon, and, upon entry of an

3   interim order, will promptly mail an appropriate notice of the interim

4   order together with notice of the further hearing, to all known

5   creditors in this case and to the United States Trustee, subject to any

6   order limiting such notice.

7        Due to the urgent nature of the relief requested herein, the

8   Debtor is concurrently filing his *Application for Order Setting Hearing*

9   *on Shortened Notice* on his Motion for Order Authorizing Use of Cash

10  Collateral, requesting that the Court set the matter for hearing on

11  notice shorter than would ordinarily be required under the Local

12  Bankruptcy Rules.[2]

13       This Motion is made on the basis of the accompanying Declaration

14  of Sharon Lynne Boyar, and attached Exhibits, the within points and

15  authorities, and on such other evidence as the Court elects to consider

16  prior to or at the hearing on this matter.

17       **WHEREFORE,** the Debtor prays that the Court enter an order granting

18  the relief requested above, and such additional relief as the Court

19  deems just and proper.

20

21  Dated: January 12, 2010      Respectfully Submitted,

22                               CACERES & SHAMASH, LLP

23                                    /s/ Joseph E. Caceres
                                 By:_____
24                               Joseph E. Caceres, Esq.
                                 Charles Shamash, Esq.
25                               [Proposed] Reorganization Counsel for
                                 Debtor and Debtor-in-Possession
26

27  _____

28       [2]As the Debtor does not need the matter heard on less than 48 hours
    notice, the Debtor is not utilizing the procedure available under Local
    Bankruptcy Rules 2081-1 and 9075-1 for emergency motions, so as to provide
    better notice of the initial hearing than would be provided under that rule.

# I.

## BACKGROUND OF THE CASE

1.    Structure of the Debtor

The Debtor is a limited partnership.  Boyar Management Corp. is the Debtor's 99% General Partner, and the Sharon Boyar Trust is its 1% Limited Partner.  Sharon Lynne Boyar is the President & Sole Shareholder of Boyar Management Corp.

2.    The Nature of the Debtor's Business

The Debtor owns and operates five adjacent industrial properties in Chatsworth, California located at 21026-21040 Nordhoff Street, 9035 Independence Avenue., 21019 Osborne Street, 21025 Osborne Street, and 21045-51 Osborne Street.  There are a total of 7 buildings and 9 rental units on these properties.  The buildings are cross-collateralized by the alleged lien first trust deed of Keybank, NA.

3.    The Events and Circumstances Leading to the Filing of the
       Bankruptcy Case

The immediate cause of the filing was that pre-petition loan workout discussions with Keybank had failed to yield a positive result. The Debtor's financial problems stemmed from the following events.

In December 2008 the Debtor received its monthly property management report from Jalmar Properties, its previous management company which it had used over 12 years.  This report had several items that were questionable.  The Debtor wrote to the head of the company and listed many items that the Debtor felt were being grossly overcharged, such as $2000 to sweep the roofs; $13,000 to clean and paint an empty building which had no tenant in sight (the Debtor was charged $45 an hour for each of 3 laborers to do the work); and over $30,000 to a landscaping company, among several other items.  The

1  Debtor was told that as soon as the person in charge returned from

2  vacation the Debtor would get explanations for all the charges.

3      Unfortunately, when said person returned, he wrote checks that

4  cleaned out the Debtor's bank account, and then quit in the middle of

5  the month of January 2009 without the required notice. Prior to this he

6  had been notified that he had been taken off the Debtor's accounts and

7  could no longer sign checks, but the bank paid all the checks he had

8  written despite having had the Debtor fill out a new signature card

9  excluding him.  As a result, the Debtor sued both the bank and the

10 management company.  The dispute with the bank was resolved in

11 mediation, with the bank paying back half of the money.  However, the

12 case against Jalmar is still pending.

13     In the meantime, the Debtor contacted Keybank, NA immediately.

14 The Debtor told Keybank its payment would be late that month since

15 Jalmar had emptied the Debtor's account (the Debtor had always kept

16 enough in its account to make the payment for that month before

17 collecting the rents, but this was no longer possible).  Since that

18 first contact, however, Keybank would not do anything to accommodate

19 the Debtor, refusing to even waive a late charge.  It has refused,

20 without explanation, to release funds from the escrow account that the

21 Debtor pays into every month for their intended purposes, such as

22 tenant improvements, property taxes, insurance, and broker commissions

23 (the Debtor believes this account contains well over $200,000 at the

24 current time).  This forced the Debtor to use rents for these and other

25 costs, making the Debtor's situation worse.

26     Making matters worse, at one point a representative of Keybank

27 told the Debtor to stop making payments and it would then automatically

28 be considered for a loan modification.  The Debtor was eventually

1  contacted by LNR Partners on behalf of Keybank, and the Debtor's

2  representative actually flew to Miami to meet with them. Unfortunately,

3  every offer made by the Debtor to resolve the problem was rejected.

4  Even then the Debtor managed to arrange to borrow enough money from a

5  private party to bring all payments, including late charges, up to

6  date, but Keybank then added default interest and turned down the

7  Debtor's offer.

8      The Debtor believes most of the work the property needed has

9  now been done and that it should be able to make ongoing mortgage

10 payments during the bankruptcy case, and intends to do so.

11 4.    Issues in Case

12     The main issues the Debtor will be dealing with is obviously the

13 delinquency on its mortgage with Keybank.  The Debtor is currently

14 looking into refinancing its properties to cure the delinquencies to

15 Keybank, either by taking out a second trust deed or preferably a whole

16 new first.  It is also considering its other options such as private

17 party financing, reaching a consensual arrangement with Keybank, or

18 dealing with Keybank's claims in a plan.  The breathing spell

19 occasioned by the chapter 11 filing will allow the Debtor to explore

20 and attempt to resolve these issues.

21                        **II.**

22              **SUMMARY OF RELIEF REQUESTED AND**

23             **THE CRITICAL NEED FOR IMMEDIATE RELIEF**

24     The financial and other troubles leading to the filing of the

25 instant case are described above.  The Debtor is currently managing the

26 Chatsworth Properties as rental income property.

27     As the Chatsworth Properties are income-producing real estate, it

28 goes without saying that in order to preserve the value of the

1   properties and the Debtor's ability to collect the maximum income

2   therefrom, the Debtor must maintain the properties in proper condition.

3   In order to do so, the Debtor's immediate and ongoing cash needs

4   include, but are not necessarily limited to, paying for usual items

5   such as utilities, insurance, property taxes, maintenance, repairs, and

6   management fees.  The Debtor also proposes to pay its mortgage payments

7   to Keybank as provided under its note, i.e., <u>$67,126.99</u> per month

8   (which includes an escrow amount of $19,775.57/mth. intended to pay for

9   items such as tenant improvements, property taxes, insurance, and

10  broker commissions), as adequate protection.  In order to timely pay

11  for these items and to otherwise meet its obligations, the Debtor must

12  have the immediate use of all cash and cash equivalents on hand, as

13  well as those generated in the future ("Cash Collateral").  Without

14  this relief, the Debtor's ability to maintain and operate its

15  properties will be damaged to the severe detriment of both the creditor

16  body and the prospective viability of this Chapter 11 case, as well as

17  to the detriment of the Debtor's tenants.  Accordingly, the Debtor

18  respectfully requests that the Court grant the relief prayed for

19  herein, on an interim basis, and thereafter set a final hearing.

20                              **III.**

21        **SECURED DEBT STRUCTURE OF THE DEBTOR, THE DEBTOR'S BUDGET,**

22                 **AND PROPOSED USE OF CASH COLLATERAL**

23        Debtor believes its secured debt structure is as follows:

24  //

25  //

26  //

27  //

28  //

| CREDITOR | AMOUNT | SECURITY | VALUE OF SECURITY |
|---|---|---|---|
| Keybank, N.A. | Apx. $7.5m + claimed<br><br>($67,126.99/mth inc. $19,775.57 escrow) | Chatsworth Properties<br><br>(Alleged Deed of Trust) | $20-22m<br><br>(Debtor's estimate) |
| L.A. County Tax Collector | Apx. $48,953<br><br>(appears Keybank may not have paid 12/10/09 installment out of escrow impound acct) | Chatsworth Properties<br><br>(Possible Lien for Unpaid Property taxes) | $20-22m<br><br>(Debtor's estimate) |
| | **Total Secured Debt on Prop:**<br><br>**Apx. $7.55m +** | | **Total Value of Prop:**<br><br>**$20-22m**<br><br>(Debtor's estimate) |

*See* Boyar Declaration.  The Debtor seeks to use the alleged cash collateral of the above referenced creditors on an immediate basis, subject to final hearing, as set forth herein, in accordance with the terms and conditions set forth in this Motion and will be subject to the Debtor's compliance with a reasonable budget as indicated in the Debtor's monthly cash flow projection/budget (the "Budget") attached to the Boyar Declaration as Exhibit "1".  Debtor further requests that any cash collateral which the Debtor is authorized to use in a given month which goes unutilized may be carried over from month-to-month by the Debtor.

The Budget reflects the Debtor's best estimate of its projected cash needs over the next few months, and is based on its experience with the Chatsworth Properties over the past 12 months or so.

1    However, in recognition of the fact that no projection is ever

2    completely accurate, and that expenses and costs can fluctuate from

3    month-to-month, the Debtor has included a provision in this Motion for

4    relief allowing the Debtor the flexibility to spend more than what is

5    provided for in the individual line items included in the budget, as

6    long as the expenditure for the total month does not exceed the overall

7    budget total by more than 10%.  Under this structure, the Debtor will

8    have the flexibility to operate the buildings without disruption, and

9    the creditors will have the protection of reasonable use limitations.

10        To protect any interest of the secured creditors, each will retain

11   its liens on all collateral as to which they held validly perfected,

12   enforceable pre-petition liens, and to the rents, profits and proceeds

13   of such collateral (i.e., to the same extent, validity, and priority as

14   existed pre-petition).  However, the liens shall <u>not</u> attach to any

15   property or proceeds thereof acquired or generated by the Debtor

16   through the use of funds that are not subject to the liens.  The Debtor

17   will provide periodic (monthly) accountings reflecting all collections

18   and disbursements made by the Debtor, as required by the U.S. Trustee's

19   guidelines, upon request by any party.  As will be demonstrated herein-

20   below, the Debtor's Cash Collateral proposal meets the burden

21   established by Section 363 of the Bankruptcy Code.

22                                **IV.**

23                **THE DEBTOR SHOULD BE AUTHORIZED TO USE**

24           **CASH COLLATERAL PURSUANT TO 11 U.S.C. §363**

25        The provisions of 11 U.S.C. §363(c)(2) govern the use of cash

26   collateral.  Section 363(c)(2) provides, in pertinent part, as follows:

27        The trustee may not use, sell or lease cash collateral . . .

28        unless:

(A)   Each entity that has an interest in such cash

collateral consents; or

(B)   The court, after notice and a hearing, authorizes

such use, sale, or lease in accordance with the provisions

of this section.

*11 U.S.C. § 363(c)(2).*

However, the Court may authorize use of a creditor's cash collateral in the absence of creditor consent.  Section 363(e) of the Bankruptcy Code provides that, upon the request of an entity that has an interest in property proposed to be used by the Debtor, the court must prohibit or condition such use "as is necessary to provide adequate protection of such interest."  Therefore, this Court may authorize the Debtor's use of any Cash Collateral upon determining that entities holding interests in the cash collateral will be adequately protected.  *In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988).  In the case of *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365; 108 S. Ct. 626, (1988), the United States Supreme Court analyzed and quantified the parameters of the "interest in property," referenced in Sections 362(d)(1), 361 and 363(e), which the Bankruptcy Code undertakes to protect, where required, through adequate protection.  This analysis led the Court in *Timbers* to the conclusion that the "interest in property" referenced in the above sections of the Bankruptcy Code means, and is limited to, the "value of the collateral."  *Id.*  Therefore, under the *Timbers* analysis, the adequate protection provisions in the Bankruptcy Code only protect a secured creditor from a potential *diminution in the value of that creditor's collateral* during the post-petition period.  <u>Id</u>.

The "value" oriented adequate protection analysis adopted by the

1   Supreme Court in the Timbers case has been closely adhered to by the

2   courts which have subsequently had occasion to address this issue.  See

3   e.g., *In re Ledgemere Land Corp.*, 116 B.R. 338,  343 (Bankr. D. Mass.

4   1990) [so long as the receivables being collected and used by the

5   debtor are being replaced by sufficient new receivables in which the

6   creditor is granted a security interest, creditor is adequately

7   protected]; *In re Johnson*, 90 B.R. 973, 978 (Bankr. D. Minn. 1988)

8   [since value of the collateral has not declined, secured creditor is

9   not impaired and is not entitled to receive adequate protection

10  payments]; *In re Century Inv. Fund VII Ltd. Partnership,* 96 B.R. 884,

11  887 (Bankr. E.D. Wis. 1989) [where value appears to be stable, secured

12  creditor is not entitled to adequate protection payments]; *In re*

13  *Kessler,* 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) [under *Timbers*,

14  secured creditors are not entitled to adequate protection payments, as

15  there was no showing that collateral was depreciating in value]; *In re*

16  *Anderson,* 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) [secured creditor

17  required to show a necessity for adequate protection by showing a

18  decline in asset value from the petition date].

19       As can be seen from the above, the law is clear that no adequate

20  protection payments are required unless there is a decline in the value

21  of the secured creditor's collateral which actually impairs the

22  creditors' secured claim.  Nevertheless, despite the lack of any

23  evidence of such decline in value, not to mention the tremendous amount

24  of equity in each of the Chatsworth Properties, the Debtor will make

25  such payments, even though technically not required.  As set forth

26  below, and as evidenced by the Boyar Declaration, the Debtor's request

27  to use cash collateral does not jeopardize any creditor's collateral,

28  particularly as the Debtor has a tremendous amount of equity in the

1  Chatsworth Properties, and is willing to make adequate protection

2  payments to its secured creditors by making its ongoing mortgage

3  payments, as provided under the notes, i.e., $67,126.99 (inc.

4  $19,775.57 escrow) per month to Keybank, NA (the alleged 1st trust deed

5  holder on the Chatsworth Properties), and ongoing property taxe

6  payments (apx. $8,160/mth) to the L.A. County Tax Collector through the

7  Keybank impound account, as adequate protection in order to further

8  protect their interests and to demonstrate good faith.

9                                **V.**

10      **THE DEBTOR HAS MET ITS ADEQUATE PROTECTION BURDEN**

11      Under the Debtor's cash collateral proposal, secured creditors'

12  interest in Cash Collateral will be adequately protected because they

13  are protected from a diminution in value through replacement liens and

14  through the maintenance and preservation of the Debtor's building. The

15  secured creditors' interests are further protected by the proposed

16  adequate protection payments set forth above. *See 11 U.S.C. § 361*

17  (adequate protection may be provided via periodic cash payments or

18  replacement liens, among other things). Moreover, they are protected

19  by a huge equity cushion in the properties. In fact, a sufficient

20  equity cushion in real property constitutes adequate protection such

21  that no adequate protection payments are even required. *See* In re

22  Mellor, 734 F.2d 1396 (9th Cir. 1984)(20% equity cushion held

23  sufficient, while citing approvingly to cases holding that even 10%

24  adequate). *See also* In re Boulders on the River, Inc., 164 B.R. 99,

25  104 (9th Cir. BAP 1994) (finding creditor with a cushion of 11.45%

26  adequately protected). Nevertheless, the Debtor will make such

27  payments as set forth herein.

28      The Debtor proposes that the secured creditors be granted

                                14

1  replacement liens, to the same extent, validity and priority as they

2  now hold, on newly acquired cash collateral with a value equal

3  to the amount of the cash collateral expended by the Debtor.

4  Furthermore, the Budget attached to the Boyar Declaration establishes

5  that through the consistent income of the property, the Debtor will

6  protect the pool of collateral securing the above stated liens if the

7  Debtor is allowed to expend the funds indicated in the Budget.  The

8  Budget shows that the Debtor will continue to generate rent in an

9  amount which will not be less than the budgeted cash to be used on a

10 going forward basis.  Accordingly, the Debtor will be able to replace

11 every dollar of Cash Collateral used with a dollar to be collected on

12 its rents.  The Debtor will provide periodic (monthly) accountings

13 reflecting all collections and disbursements made by the Debtor, as

14 required by the U.S. Trustee's guidelines.

15      Finally, the value of the collateral is not "depreciating" as the

16 Debtor is properly maintaining the building and intends to continue

17 doing so, and the property is insured for loss, further protecting the

18 secured creditors' interest therein.

19      In summary, the Boyar Declaration provides evidence to establish

20 with reasonable certainty that the Debtor's use of any cash collateral

21 is, and will continue to be, adequately protected.

22                              **VI.**

23 **THE DEBTOR REQUESTS THAT THE COURT SCHEDULE A FINAL HEARING ON THIS**

24 **MOTION AS SOON AS POSSIBLE IN ACCORDANCE WITH THE REQUIREMENTS OF THE**

25 **BANKRUPTCY RULES AFTER EXPIRATION OF THE 15-DAY PERIOD OF FRBP 4001**

26      By this Motion, the Debtor is requesting that the Court schedule a

27 final hearing on this Motion in accordance with the requirements of the

28 Federal Rules of Bankruptcy Procedure ("FRBP").  Rule 4001 of the FRBP

provides that the Court may commence a final hearing on this Motion no

earlier than 15 days after service of the Motion.  The Debtor needs to

obtain approval of the use of the Cash Collateral on an ongoing basis

in order to ensure that it will be able to pay the expenses of properly

maintaining its building.  The Debtor therefore requests that a final

hearing on this issue should be held as soon as possible after the

expiration of the 15-day period provided for by Rule 4001, in order to

prevent any damage to the Debtor's operation.

**VII.**

**<u>CONCLUSION</u>**

As set forth in the Boyar Declaration, in order to ensure

that the Debtor's operation of its property can continue, it is

absolutely necessary that the Debtor be permitted the immediate use of

Cash Collateral on an ongoing basis.  It goes without saying that in

order to preserve the value of the property and the Debtor's ability to

collect the maximum rents, the Debtor must maintain its building in

proper condition.  In order to do so, the Debtor's immediate cash needs

include, but are not necessarily limited to, paying for usual items

such as utilities, insurance, property taxes, maintenance, repairs, and

management fees.  In order to timely pay for these items and to

otherwise meet its obligations, the Debtor must have the immediate use

of all cash and cash equivalents on hand, as well as those generated in

the future ("Cash Collateral").

Without this immediate relief, the Debtor's ability to maintain

and operate its property will be damaged to the severe detriment of

both the creditor body and the prospective viability of this Chapter 11

case, as well as to the detriment of the Debtor's tenants. Accordingly,

the Debtor respectfully requests that the Court grant the relief prayed

1    for herein, on an interim basis, and thereafter set a final hearing.

2        The purported interests of the secured creditors on the Chatsworth

3    Properties will be adequately protected by the proposed replacement

4    liens.  Further adequate protection will be provided by the provision

5    of monthly financial reports, the maintenance of insurance on the

6    properties, and the huge equity cushion on the properties.  Finally,

7    they are protected by the proposed adequate protection payments.

8        **Wherefore**, the Debtor respectfully requests that this Court:

9        1.    Authorize the immediate use of all Cash Collateral on hand

10   and hereafter received to pay ordinary and necessary operating expenses

11   in accordance with the budget attached as Exhibit "1" to the

12   accompanying Declaration of Sharon Lynne Boyar, and permit the

13   carryover of any unused but authorized use of cash from month-to-month;

14       2.    Authorize the Debtor to exceed any line item in the budget

15   by up to ten percent (10%) in any one month, as long as the overage for

16   all items in the aggregate does not exceed ten percent (10%) of the

17   total budget amount for that month, with the budget savings in one

18   month to be carried over into subsequent months on an aggregate basis;

19       3.    Grant Keybank, NA and the L.A. County Tax Collector, as

20   holders of purported or potential liens on the Chatsworth Properties

21   and/or Cash Collateral therefrom as set forth above, as adequate

22   protection for the foregoing usage, liens on such collateral to the

23   same extent that they hold a validly perfected, unavoidable, and

24   enforceable prepetition lien, and replacement liens on newly acquired

25   cash collateral, to the same extent, validity and priority as they now

26   hold, with a value equal to the amount of the cash collateral expended

27   by Debtor (said liens shall <u>not</u> attach to any property or proceeds

28   acquired or generated by the Debtor through the use of funds that are

1  not subject to such liens);

2        4.    Set a final hearing on the Motion; and

3        5.    Grant such further relief as the Court deems just and

4  proper.

5  Dated: January 12, 2010      CACERES & SHAMASH, LLP

6                                    /s/ Joseph E. Caceres
                                By:_____
7                               Joseph E. Caceres, Esq.
                                Charles Shamash, Esq.
8                               [Proposed] Reorganization Counsel for
                                Debtor and Debtor-in-Possession
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DECLARATION OF SHARON LYNNE BOYAR</u>

I, Sharon Lynne Boyar, do hereby declare as follows:

    1.   I am the President and sole shareholder of Boyar Management Corp., the Debtor's General Partner.  I am over the age of 18.  I have personal knowledge of the matters set forth in this declaration, except where stated to be on information and belief, and if called to testify could and would testify competently thereto.

    2.   On December 23, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  The Debtor is continuing to operate its real property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

### <u>BACKGROUND OF THE CASE</u>

**Structure of the Debtor**

    3.   The Debtor is a limited partnership.  Boyar Management Corp. is the Debtor's 99% General Partner, and the Sharon Boyar Trust is its 1% Limited Partner.  I, Sharon Lynne Boyar, am the President & Sole Shareholder of Boyar Management Corp.

**The Nature of the Debtor's Business**

    4.   The Debtor owns and operates five adjacent industrial properties in Chatsworth, California located at 21026-21040 Nordhoff Street, 9035 Independence Avenue., 21019 Osborne Street, 21025 Osborne Street, and 21045-51 Osborne Street.  There are a total of 7 buildings and 9 rental units on these properties.  The buildings are cross-collateralized by the alleged lien first trust deed of Keybank, NA.

//

//

//

**The Events and Circumstances Leading to the Filing of the**

**Bankruptcy Case**

5.    The immediate cause of the filing was that pre-petition loan workout discussions with Keybank had failed to yield a positive result. The Debtor's financial problems stemmed from the following events.

In December 2008 the Debtor received its monthly property management report from Jalmar Properties, its previous management company which it had used over 12 years.  This report had several items that were questionable.  The Debtor wrote to the head of the company and listed many items that the Debtor felt were being grossly overcharged, such as $2000 to sweep the roofs; $13,000 to clean and paint an empty building which had no tenant in sight (the Debtor was charged $45 an hour for each of 3 laborers to do the work); and over $30,000 to a landscaping company, among several other items.  The Debtor was told that as soon as the person in charge returned from vacation the Debtor would get explanations for all the charges.

Unfortunately, when said person returned, he wrote checks that cleaned out the Debtor's bank account, and then quit in the middle of the month of January 2009 without the required notice. Prior to this he had been notified that he had been taken off the Debtor's accounts and could no longer sign checks, but the bank paid all the checks he had written despite having had the Debtor fill out a new signature card excluding him.  As a result, the Debtor sued both the bank and the management company.  The dispute with the bank was resolved in mediation, with the bank paying back half of the money.  However, the case against Jalmar is still pending.

In the meantime, the Debtor contacted Keybank, NA immediately. The Debtor told Keybank its payment would be late that month since

1   Jalmar had emptied the Debtor's account (the Debtor had always kept

2   enough in its account to make the payment for that month before

3   collecting the rents, but this was no longer possible).  Since that

4   first contact, however, Keybank would not do anything to accommodate

5   the Debtor, refusing to even waive a late charge.  It has refused,

6   without explanation, to release funds from the escrow account that the

7   Debtor pays into every month for their intended purposes, such as

8   tenant improvements, property taxes, insurance, and broker commissions

9   (the Debtor believes this account contains well over $200,000 at the

10  current time).  This forced the Debtor to use rents for these and other

11  costs, making the Debtor's situation worse.

12      Making matters worse, at one point a representative of Keybank

13  told the Debtor to stop making payments and it would then automatically

14  be considered for a loan modification.  The Debtor was eventually

15  contacted by LNR Partners on behalf of Keybank, and the Debtor's

16  representative actually flew to Miami to meet with them. Unfortunately,

17  every offer made by the Debtor to resolve the problem was rejected.

18  Even then the Debtor managed to arrange to borrow enough money from a

19  private party to bring all payments, including late charges, up to

20  date, but Keybank then added default interest and turned down the

21  Debtor's offer.

22      The Debtor believes most of the work the property needed has

23  now been done and that it should be able to make ongoing mortgage

24  payments during the bankruptcy case, and intends to do so.

25      **Issues in Case**

26      6.    The main issues the Debtor will be dealing with is obviously

27  the delinquency on its mortgage with Keybank.  The Debtor is currently

28  looking into refinancing its properties to cure the delinquencies to

1 Keybank, either by taking out a second trust deed or preferably a whole

2 new first.  It is also considering its other options such as private

3 party financing, reaching a consensual arrangement with Keybank, or

4 dealing with Keybank's claims in a plan.  The breathing spell

5 occasioned by the chapter 11 filing will allow the Debtor to explore

6 and attempt to resolve these issues.

7 **THE CRITICAL NEED FOR IMMEDIATE RELIEF**

8     7.    The financial and other troubles leading to the filing of

9 the instant case are described above.  The Debtor is currently managing

10 the Chatsworth Properties as rental income property.

11    8.    As the Chatsworth Properties are income-producing real

12 estate, it goes without saying that in order to preserve the value of

13 the properties and the Debtor's ability to collect the maximum income

14 therefrom, the Debtor must maintain the properties in proper condition.

15 In order to do so, the Debtor's immediate and ongoing cash needs

16 include, but are not necessarily limited to, paying for usual items

17 such as utilities, insurance, property taxes, maintenance, repairs, and

18 management fees.  The Debtor also proposes to pay its mortgage payments

19 to Keybank as provided under its note, i.e., $67,126.99 per month

20 (which includes an escrow amount of $19,775.57/ mth. intended to pay

21 for items such as tenant improvements, property taxes, insurance, and

22 broker commissions), as adequate protection.  In order to timely pay

23 for these items and to otherwise meet its obligations, the Debtor must

24 have the immediate use of all cash and cash equivalents on hand, as

25 well as those generated in the future ("Cash Collateral").  Without

26 this relief, the Debtor's ability to maintain and operate its

27 properties will be damaged to the severe detriment of both the creditor

28 body and the prospective viability of this Chapter 11 case, as well as

1   to the detriment of the Debtor's tenants.  Accordingly, the Debtor

2   respectfully requests that the Court grant the relief prayed for

3   herein, on an interim basis, and thereafter set a final hearing.

4               **SECURED DEBT STRUCTURE OF THE DEBTOR**

5      9.   I believe the Debtor's secured debt structure is as follows:

| CREDITOR | AMOUNT | SECURITY | VALUE OF SECURITY |
|---|---|---|---|
| Keybank, N.A. | Apx. $7.5m + claimed<br><br>($67,126.99/mth inc. $19,775.57 escrow) | Chatsworth Properties<br><br>(Alleged Deed of Trust) | $20-22m<br><br>(Debtor's estimate) |
| L.A. County Tax Collector | Apx. $48,953<br><br>(appears Keybank may not have paid 12/10/09 installment out of escrow impound acct) | Chatsworth Properties<br><br>(Possible Lien for Unpaid Property taxes) | $20-22m<br><br>(Debtor's estimate) |
| | **Total Secured Debt on Prop:**<br><br>**Apx. $7.55m +** | | **Total Value of Prop:**<br><br>**$20-22m**<br><br>(Debtor's estimate) |

21      **THE DEBTOR'S BUDGET AND PROPOSED USE OF CASH COLLATERAL**

22      10.   The Debtor seeks to use the alleged cash collateral of the

23   above referenced creditors on an immediate basis, subject to final

24   hearing, as set forth herein, in accordance with the terms and

25   conditions set forth in this Motion and will be subject to the Debtor's

26   compliance with a reasonable budget as indicated in the Debtor's

27   monthly cash flow projection/budget (the "Budget"), a true and correct

28   copy of which is attached hereto as Exhibit "1".  Debtor further

requests that any cash collateral which the Debtor is authorized to use

in a given month which goes unutilized may be carried over from month-

to-month by the Debtor.

11.    The Budget reflects the Debtor's best estimate of its

projected cash needs over the next few months, and is based on its

experience with the Chatsworth Properties over the past 12 months or

so.  However, in recognition of the fact that no projection is ever

completely accurate, and that expenses and costs can fluctuate from

month-to-month, the Debtor has included a provision in this Motion for

relief allowing the Debtor the flexibility to spend more than what is

provided for in the individual line items included in the budget, as

long as the expenditure for the total month does not exceed the overall

budget total by more than 10%.  Under this structure, the Debtor will

have the flexibility to operate the buildings without disruption, and

the creditors will have the protection of reasonable use limitations.

### **ADEQUATE PROTECTION**

12.    The Debtor is willing to grant its secured creditors on the

Chatsworth Properties replacement liens on new cash collateral to the

extent that it uses their cash collateral in order to protect their

interests in that collateral.  The Debtor will also maintain and

preserve the property.  The Debtor is also willing to make adequate

protection payments to its secured creditors pursuant to their notes as

set forth herein.

13.    Furthermore, I believe the Budget attached hereto as Exhibit

"1" establishes that through the consistent income of the property, the

Debtor will protect the pool of collateral securing the above stated

liens if it is allowed to expend the funds indicated in the Budget.

The Budget shows that the Debtor will continue to generate rents in an

1   amount which will not be less than the budgeted cash to be used on a

2   going forward basis. Accordingly, the Debtor will be able to replace

3   every dollar of Cash Collateral used with a dollar to be collected on

4   rents.  The Debtor will provide periodic accountings reflecting all

5   collections and disbursements made by it, as required by the U.S.

6   Trustee's guidelines.

7       14.  The Debtor is properly maintaining the building and intends

8   to continue doing so, and has current insurance on the property, so as

9   to protect it against loss, with Farmers/Truck Insurance Exchange.  A

10  true and correct copy of this policy is attached hereto as Exhibit "2."

11      15.  For the foregoing reasons, the Debtor respectfully requests

12  that the Court grant this motion.  A proposed form of order granting

13  this motion is attached hereto as Exhibit "3."

14      I declare under penalty of perjury that the foregoing is true and

15  correct.

16      Executed on January 12, 2010 at Tarzana, California.

17

18                                    _Sharon Lynne Boyar_

19                                    Sharon Lynne Boyar

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# MONTHLY PROJECTIONS – CHATSWORTH PROPERTIES

**RENTAL INCOME:**

| | |
|---|---|
| Rents: | $ 92,000.00 |
| CAM Charges: | $ 10,872.00 |

**TOTAL GROSS INCOME:**　　　　　　　**$102,872.00**

**EXPENSES:**

| | | |
|---|---|---|
| MORTGAGE Keybank, NA | $ 67,127.00 | (inc's escrow of $19,776 for taxes, insurance, & other items |
| PROPERTY TAXES* | *$ 8,160.00* | *(supposed to be paid by Keybank from impound accnt) |
| INSURANCE* | *$ 2,900.00* | *(supposed to be paid by Keybank from impound accnt) |
| REPAIRS & MAINTENANCE | $ 2,000.00 | |
| ACCOUNTING | $ 1,000.00 | |
| MNGT. FEES/INSIDER COMP [Sharon Boyar] | $ 15,000.00 | |
| GARDENING/LANDSCAPE/CLEANING [Alan Smokler, son of Sharon Boyar] | $ 2,000.00 | |
| TELEPHONE | $ 63.00 | |
| POSTAGE | $ 10.00 | |
| UTILITIES | $ 1,200.00 | |
| MISCELLANEOUS | $ 2,000.00 | |
| **TOTAL EXPENSES:** | **$ 90,400.00** | ***(Not inc. prop. tax & ins., as supposed to be paid from impound account)** |

*Debtor also requests authority to directly pay property taxes and/or insurance at its discretion, should Keybank not pay such items from the impound account. In such an event Debtor reserves the right to seek any appropriate offset or recovery from Keybank.

# EXHIBIT 2

TRUCK INSURANCE EXCHANGE

**MEMBERS OF THE FARMERS INSURANCE GROUP OF COMPANIES**
**HOME OFFICE: 4680 WILSHIRE BLVD., LOS ANGELES, CALIFORNIA 90010**

## POLICY DECLARATIONS
### COMMERCIAL REAL ESTATE - PREMIER

1

| | | |
|---|---|---|
| Named Insured Mailing Address | CHATSWORTH INDUSTRIAL PARK | |
| | C/O SHARON BOYER | |
| | 5101 VANALDEN AVE | |
| | TARZANA          CA 91356-3907 | |

| EasyPay Acct. No. | Prod. Count |
|---|---|
| 30-56-371 | 09424-71-90 |
| Agent No. | Policy Number |

The named insured is an individual unless otherwise stated:

[X] Partnership    [ ] Corporation    [ ] Joint Venture    [ ] Organization (Any other)

Type of Business   REAL ESTATE

2  Policy Period from   10/30/09   (not prior to time applied for) to   10/30/10   12:01 a.m. Standard Time
If this policy replaces other coverage that ends at noon standard time of the same day this policy begins, this policy will not take effect until the other coverage ends. **This policy will continue for successive policy periods as follows:** If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period subject to our premiums, rules and forms then in effect.

3  Insured location same as mailing address unless otherwise stated:

| 001 | 001 | 21026 NORDHOFF ST (SEE E0002) | CHATSWORTH | CA 913115910 |
|---|---|---|---|---|
| 001 | 002 | 9035 INDEPENDENCE STREET | CHATSWORTH | CA 91311 |
| 001 | 003 | 21019-21051 OSBORNE | CHATSWORTH | CA 91311 |

4  We provide insurance only for those coverages described below and for which a specific limit of insurance is shown.

### PROPERTY
### COVERAGES AND LIMITS OF INSURANCE

| COVERAGES | PREM NO. 001 001 | PREM NO. 001 002 | PREM NO. 001 003 |
|---|---|---|---|
| BUILDINGS | $5,031,000 | $1,799,000 | $8,963,700 |
| BUILDING ORDINANCE AND LAW | COV A    COVERED | COV A    COVERED | COV A    COVERED |
| | COV B    $56,200 | COV B    $28,100 | COV B    $56,200 |
| | COV C    $536,000 | COV C    $190,700 | COV C    $950,200 |
| AUTOMATIC BUILDING INCREASE | 8% | 8% | 8% |
| PROPERTY DEDUCTIBLE | $5,000 | $5,000 | $5,000 |
| OUTDOOR TREES, SHRUBS, PLANTS | $2,500 | | |

Business Income (All Listed Premises) 18 months-Actual Loss Sustained

### ADDITIONAL COVERAGES

| COVERAGE | All Premises |
|---|---|
| LOCK REPLACEMENT | $10,000 |
| BACKUP OF SEWER AND DRAIN | $1,000 |
| DEBRIS REMOVAL | $25,000 |

56-5991 ED3    8-06
565991-ED3



C5991301                    PAGE 1 OF 3

## COVERAGE EXTENSIONS - Optional Higher Limits of Insurance Per Occurrence

| COVERAGE | All Premises |
|---|---|
| ACCOUNTS RECEIVABLE | $25,000 |
| VALUABLE PAPERS | $25,000 |
| OFF PREMISES PERSONAL PROPERTY | $5,000 |
| POLLUTION CLEAN-UP | $25,000 |

## OPTIONAL COVERAGES: We provide insurance for those Optional Coverages described below.

| COVERAGE | All Premises |
|---|---|
| OUTDOOR SIGNS | $25,000 |
| EMPLOYEE DISHONESTY | $25,000 |
| MONEY AND SECURITIES | $25,000 |

**LIABILITY AND MEDICAL PAYMENTS** - Except for Fire Legal Liability, each paid claim for the following coverage reduces the amount of insurance we provide during the applicable annual period. Please refer to Paragraph D.4. of the Liability Coverage Form.

| COVERAGE | LIMITS OF INSURANCE |
|---|---|
| LIABILITY | $2,000,000 PER OCC/  $4,000,000 GEN AGG |
| MEDICAL EXPENSES | $5,000 PER PERSON |
| TENANTS LIABILITY | $100,000 PER OCCURRENCE |

Mortgage Holders:

| Premises No. | Mortgage Holder Name, Address |
|---|---|
|  |  |

Countersigned _____ By _____

(Date)                                                                    (Authorized Representative)

56-5991   8/05                                                          C5891302          PAGE 2 OF 3

# EXHIBIT 3

Joseph E. Caceres, Esq. (SBN 169164)
Charles Shamash, Esq. (SBN 178110)
Caceres & Shamash, LLP
8200 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (310) 205-3400
Facsimile: (310) 878-8308

[Proposed] Reorganization Counsel for Debtor
and Debtor-In-Possession

# **DRAFT**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:09-bk-27368-KT |
| | |
| CHATSWORTH INDUSTRIAL PARK, LP, | Chapter 11 |
| | |
| | **[PROPOSED] ORDER GRANTING INTERIM USE OF CASH COLLATERAL AND SETTING FINAL HEARING THEREON** |
| | |
| | |
| | Date: |
| | Time: |
| | Ctrm: 301 |
| |     21041 Burbank Blvd. |
| Debtor and Debtor-In-Possession. |     Woodland Hills, CA 91367 |

_____

The above captioned Chapter 11 Debtor and Debtor-in-Possession's (hereinafter the "Debtor") Motion for Order Authorizing Use of Cash Collateral ("Motion") came to be heard before the Court on the above date and time pursuant to this Court's Order Shortening Time for Hearing thereon. Joseph E. Caceres, Esq. of Caceres & Shamash, LLP appeared on behalf of the Debtor. Other appearances, if any, were as noted on the record.

//

1    The Court having considered the Motion and all argument, with good

2    cause appearing therefore, **IT IS HEREBY ORDERED as follows:**

3    1.    The Motion is granted.

4    2.    The Debtor is authorized to immediately use all cash and

5    cash equivalents on hand and hereafter received ("Cash Collateral") to

6    pay ordinary and necessary operating expenses in accordance with the

7    budget attached to the Motion as Exhibit "1" (the "budget"), and

8    incorporated herein.

9    3.    The Debtor may exceed any line item in the budget by up to

10   ten percent (10%) in any one month, as long as the overage for all

11   items in the aggregate does not exceed ten percent (10%) of the total

12   budget for that month, with the budget savings from one month to be

13   carried over into subsequent months on an aggregate basis.

14   4.    As adequate protection for the use of purported cash

15   collateral, <u>Keybank, NA</u>, as purported holder of a first trust deed on

16   the Chatsworth Properties located at 21026-21040 Nordhoff Street, 9035

17   Independence Avenue., 21019 Osborne Street, 21025 Osborne Street, and

18   21045-51 Osborne Street, Chatsworth, CA 91304 and/or cash collateral

19   therefrom; and the <u>L.A. County Tax Collector</u>, as possible holder of a

20   lien for unpaid property taxes on the Chatsworth Properties and/or cash

21   collateral therefrom, shall retain their liens on the Chatsworth

22   Properties they allegedly now hold liens on, to the same extent that

23   they hold validly perfected, unavoidable, and enforceable prepetition

24   liens, and are granted replacement liens on newly acquired cash

25   collateral, to the same extent, validity and priority as they now hold,

26   with a value equal to the amount of the cash collateral expended by

27   Debtor (said liens shall <u>not</u> attach to any property or proceeds

28   acquired or generated by the Debtor through the use of funds that are

2

1  | not subject to such liens).

2  |  5.    As further adequate protection, the Debtor shall make

3  | ongoing cash payments to <u>Keybank, NA</u> in the form of regular monthly

4  | mortgage payments of <u>$67,126.99</u> per month (which includes an escrow

5  | amount of $19,775.57/ mth. intended to pay for items such as tenant

6  | improvements, property taxes, insurance, and broker commissions), as

7  | provided by its note; and by virtue of this payment to Keybank pay its

8  | ongoing property taxes to the L.A. County Tax Collector through the

9  | impound account.

10 |  6.    As further adequate protection, the Debtor shall provide

11 | copies of its U.S. Trustee financial reports on a monthly basis to any

12 | secured creditor upon request, concurrently with the filing of those

13 | reports with the Office of the United States Trustee.

14 |  7.    The authorization set forth herein is valid through the date

15 | of the final hearing on the Motion, which shall take place on

16 | _____, 2010 at _____ a.m. / p.m. in

17 | courtroom 301, 21041 Burbank Blvd., Woodland Hills, CA 91367.  The

18 | Debtor shall forthwith give notice of the final hearing to the U.S.

19 | Trustee and all creditors after entry of this Order.

20 |                                    ###

21 |

22 |

23 |                             **DRAFT**

24 |

25 |

26 |

27 |

28 |

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 8200 Wilshire Blvd., Suite 400, Beverly Hills, CA 90211

The foregoing document described   _Debtor's Motion for Order Authorizing Use of Cash Collateral; Memorandum of Points and Authorities and Declaration of Sharon Lynne Boyar and Exhibits in Support Thereof_   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ____01/13/10____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

⊠  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ____01/13/10____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

⊠  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____01/13/10____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

⊠  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 01/13/10 | Joseph E. Caceres | /s/ Joseph E. Caceres |
|----------|-------------------|------------------------|
| *Date*   | *Type Name*       | *Signature*            |

CHATSWORTH INDUSTRIAL PARK, L.P.
Ch. 11 Case No. 1:09-bk-27368-KT

## ADDITIONAL SERVICE INFORMATION:

### SERVICE VIA NEF:

Jennifer L Braun    jennifer.l.braun@usdoj.gov
Joseph Caceres    jec@locs.com, generalbox@locs.com
Charles Shamash    cs@locs.com, generalbox@locs.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

### SERVICE VIA U.S. MAIL:

United States Trustee:
United States Trustee (SV)
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

Debtor:
Chatsworth Industrial Park, LP
5101 Vanalden Avenue
Tarzana, CA 91356

Secured Creditors on Chatsworth Properties:
Key Bank
Bankruptcy Department
4910 Tiebeman Road 6th Floor
Brooklyn, OH 44144

Key Bank Real Estate Capital
P.O. Box 145404
Cincinnati, OH 45250

KeyBank
911 Main Street, Ste 1500
Kansas City, MO 64105

Sandi M. Colabianchi, Esq.
Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Los Angeles County Tax Collector
P.O. Box 54018
Los Angeles, CA 90054-0018

Other Creditors and/or Interested Parties:
Jalmar Properties, Inc.
12121 Wilshire Boulevard, Ste 301
Los Angeles, CA 90067

Eresidentagent, Inc.
Agent For Jalmar Properties, Inc.
1801 Century Park East, Ste 1250
Los Angeles, CA 90067

CBI Partners, Inc.
21243 Ventura Boulevard, Ste 117
Woodland Hills, CA 91364

Franchise Tax Board
P.O. Box 1673
Sacramento, CA 95812-1673

Franchise Tax Board Bankruptcy Unit
P.O. Box 2952
Sacramento, CA 95812-2952

Franchise Tax Board Chief Counsel S
P.O. Box 1720 MS: A-260
Rancho Cordova, CA 95741-1720

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19144

Ira Benjamin Katz, Esq.
1901 Avenue Of The Stars, Ste 1900
Los Angeles, CA 90067-6102

Mitchell J. Ezer, Esq.
Ezer Williamson LLP
21515 Hawthorne Boulevard, Ste 1150
Torrance, CA 90503

Piken Company
12725 Ventura Boulevard, Ste A
Studio City, CA 91604

US Attorney Civil Process Clerk
300 N. Los Angeles Rm 7516
Los Angeles, CA 90012

USDOJ Attorney General
P.O. Box 683 Ben Franklin Station
Washington, DC 20044


**<u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:</u>**

**<u>Personal Delivery:</u>**
The Honorable Kathleen Thompson, U.S. Bankruptcy Judge
United States Bankruptcy Court
21041 Burbank Blvd., Bin on 1st Floor outside entry to Clerk's Office
Woodland Hills, CA 91367-6606