| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Traci S. Lagasse, Esq. (SBN: 180976)<br>Andrews Lagasse Branch & Bell LLP<br>11232 El Camino Real, Suite 250<br>San Diego, California 92130<br>Telephone: (858) 345-5080<br>Facsimile: (858) 345-5025<br><br>☐ Individual appearing without counsel<br>☒ Attorney for: Jalmar Properties, Inc. | FILED<br><br>MAY 1 1 2010<br><br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: _____ Deputy Clerk |

|  |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** |  |
| In re<br>CHATSWORTH INDUSTRIAL PARK, LP,<br><br><br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NO.: 1:09-bk-27368-KT<br><br>DATE: 6/3/10<br>TIME: 9:30 a.m.<br>CTRM: 301<br>FLOOR: 3rd Floor |

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT: JALMAR PROPERTIES, INC. )
### (Action in Non-bankruptcy Forum)

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. **Hearing Location:**   ☐ 255 East Temple Street, Los Angeles          ☐ 411 West Fourth Street, Santa Ana
   ☒ 21041 Burbank Boulevard, Woodland Hills          ☐ 1415 State Street, Santa Barbara
   ☐ 3420 Twelfth Street, Riverside

3. a.   ☒   This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and must appear at the hearing of this Motion.

   b.   ☐   This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served:

      ☐ at the hearing          ☐ at least _____ court days before the hearing.

      (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

      (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court.

      (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time, and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response (Optional Court Form F 4001-1.RES), or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 2 of 9*    **F 4001-1M.NA**

| In re                           (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| CHATSWORTH INDUSTRIAL PARK, LP, |  |
| Debtor(s). | CASE NO.: 1:09-bk-27368-KT |

5.   If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your
     right to oppose the Motion and may grant the requested relief.

Dated: 5/4/10

ANDREWS LAGASSE BRANCH & BELL LLP
_____
*Print Law Firm Name (if applicable)*

TRACI S. LAGASSE
_____    _____
*Print Name of Individual Movant or Attorney for Movant*    *Signature of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                    **F 4001-1M.NA**

| In re (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| CHATSWORTH INDUSTRIAL PARK, LP | |
| Debtor(s). | CASE NO.: 1:09-bk-27368-KT |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (MOVANT:  JALMAR PROPERTIES, INC.                    )

1. **The Non-bankruptcy Action:** Movant moves for relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate with respect to the following pending lawsuit or administrative proceeding (the "Non-bankruptcy Action") in a non-bankruptcy forum:

    Case name: Jalmar Properties, Inc. v. Chatsworth Industrial Park, LP and Sharon Boyer
    Docket number: SC102362 (styled as Chatsworth Industrial Park, LP v. Jalmar Properties, Inc.)
    Court or agency where pending: Superior Court of the State of California, County of Los Angeles

2. **Case History:**
    a. ☐ A voluntary ☐ An involuntary   petition under Chapter   ☐ 7  ☒ 11 ☐ 12 ☐ 13 was filed on *(specify date)*:
    b. ☐ An Order of Conversion to Chapter    ☐ 7  ☐ 11 ☐ 12 ☐ 13 was entered on *(specify date)*:
    c. ☐ Plan was confirmed on *(specify date)*:
    d. ☐ Other bankruptcy cases affecting this action have been pending within the past two years. See attached Declarations.
    e. For additional case history, see attached continuation page.

3. **Grounds for Relief from Stay:** Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Non-bankruptcy Action to final judgment in the non-bankruptcy forum for the following reasons:
    a. ☐ The bankruptcy case was filed in bad faith specifically to delay, hinder or interfere with prosecution of the Non-bankruptcy Action.
    b. ☐ The claim is insured. Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor(s) or estate property.
    c. ☐ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.
    d. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.
    e. ☐ The claims are non-dischargeable in nature and can be most expeditiously resolved in the non-bankruptcy forum.
    f. ☒ The claims at issue arise under non-bankruptcy law and can be most expeditiously resolved in the non-bankruptcy forum.
    g. ☒ Other reasons to allow the Non-bankruptcy Action to proceed are set forth in an attached Declaration.

4. ☐ Movant also seeks annulment of the stay so that filing of the bankruptcy petition does not affect any and all of the enforcement actions that were taken after the filing of the bankruptcy petition in this case, as specified in the attached Declaration(s).

5. **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*
    a. ☒ Movant submits the attached Declaration(s) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.
    b. ☐ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims set forth in Debtor's(s') Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _____.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009                                                          **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 4 of 9*    **F 4001-1M.NA**

| In re                          (SHORT TITLE)<br>CHATSWORTH INDUSTRIAL PARK, LP,                              Debtor(s). | CHAPTER: 11<br><br>CASE NO.: 1:09-bk-27368-KT |
|---|---|

c.  ☐  Other evidence *(specify):*

6.  ☐  **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order granting the following:**

1.  Relief from the stay to Movant (and its successors and assigns, if any) *(check boxes re all applicable relief requested):*

　　a.  ☒  Terminating the stay as to Debtor(s) and Debtor's(s') bankruptcy estate.

　　b.  ☐  Annulling the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

　　c.  ☐  Modifying or conditioning the stay as set forth in the attached continuation page:

2.  Allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to proceed to final judgment in the non-bankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against Debtor(s) or estate property.

3.  ☐  Additional provisions requested:

　　a.  ☐  That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

　　b.  ☐  That the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

　　c.  ☐  That the Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER).*

　　d.  ☐  For other relief requested, see attached continuation page.

4.  If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: 5/4/10                                         Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　JALMAR PROPERTIES, INC.
　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　*Movant Name*

　　　　　　　　　　　　　　　　　　　　　　　　ANDREWS LAGASSE BRANCH & BELL LLP
　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　*Firm Name of Attorney for Movant (if applicable)*

　　　　　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　　*Signature*

　　　　　　　　　　　　　　　　　　　　Name:  TRACI S. LAGASSE
　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　*Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009                                                                                **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 5 of* 9 ___    **F 4001-1M.NA**

| In re | (SHORT TITLE) | CHAPTER: 11 |
|-------|---------------|-------------|
| CHATSWORTH INDUSTRIAL PARK, LP | Debtor(s). | CASE NO.: 1:09-bk-27368-KT |

## DECLARATION RE ACTION IN NON-BANKRUPTCY FORUM
### (MOVANT: JALMAR PROPERTIES, INC.                )

I, TRACI S. LAGASSE _____, declare as follows:
*(Print Name of Declarant)*

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding the state court lawsuit, administrative proceeding, or other action in a non-bankruptcy forum ("Non-bankruptcy Action") that is the subject of this Motion because:

    a. ☐  I am the Movant.

    b. ☑  I am the Movant's attorney of record in the Non-bankruptcy Action.

    c. ☐  I am employed by the Movant as *(state title and capacity)*:

    d. ☐  Other *(specify)*:

2.  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Non-bankruptcy Action. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3.  The Non-bankruptcy Action at issue is currently pending as:

    Case name: Jalmar Properties, Inc. v. Chatsworth Industrial Park, LP and Sharon Bover
    Docket number: SC102362 (styled as Chatsworth Industrial Park, LP v. Jalmar Properties, Inc.)
    Court or agency where pending: Superior Court of the State of California, County of Los Angeles

4.  **Procedural Status:**

    a.  The causes of action pleaded in the non-bankruptcy forum are *(list)*:


    True and correct copies of the pleadings filed before the non-bankruptcy forum are attached hereto as Exhibit 1 and 2 .

    b.  The Non-bankruptcy Action was filed on *(specify date)*:

    c.  Trial or hearing began/is scheduled to begin on *(specify date)*:

    d.  The trial or hearing is estimated to require the following number of court days *(specify)*:

    e.  Other defendants to the Non-bankruptcy Action are *(specify)*:

5.  **Grounds for relief from stay:**

    a. ☐  The claim is insured. The insurance carrier and policy number are *(specify)*:

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*    **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 6 of* 9    **F 4001-1M.NA**

| In re                           (SHORT TITLE) | CHAPTER:  11 |
|---|---|
| CHATSWORTH INDUSTRIAL PARK, LP,                        Debtor(s). | CASE NO.: 1:09-bk-27368-KT |

b.  ☒  The matter can be tried more expeditiously in the non-bankruptcy forum.

   (1)  ☐  It is currently set for trial on:

   (2)  ☒  It is in advanced stages of discovery and Movant believes that it will be set for trial by *(specify date)*:12/31/10
The basis for this belief is *(specify)*:
The action was originally filed in March 2009, and debtor's related affirmative Breach of Contract claim is not stayed.  The parties have conducted discovery and have a trial setting conference in June 2010.

   (3)  ☐  The matter involves non-debtor parties who are not subject to suit in the bankruptcy court.  A single trial in the non-bankruptcy forum is the most efficient use of judicial resources.

c.  ☐  The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Non-bankruptcy Action.

   (1)  ☐  Movant is the only creditor (or the only substantial creditor) scheduled by the Debtor(s).

   (2)  ☐  The timing of the petition filing shows that it was intended to delay or interfere with the Non-bankruptcy Action based upon the following facts *(specify)*:

   (3)  ☐  Debtor(s) does(do) not have a reasonable likelihood of reorganizing in this Chapter ☐ 11  ☐  13    bankruptcy case based upon the following facts *(specify)*:

d.  ☒  For other facts justifying relief from stay, see attached continuation page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on  May 4_____ , 2010 , at  San Diego, California_____  *(city, state)*.

TRACI S. LAGASSE_____

*Print Declarant's Name*

*Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 4001-1M.NA**

Continuation Page for Declaration Re: Action in Non-Bankruptcy Forum
(Movant: Jalmar Properties, Inc.)

Debtor Chatsworth Industrial Park LP ("Chatsworth") filed a First Amended Complaint for
Breach of Contract against Jalmar Properties, Inc. ("Jalmar") on June 18, 2009. Jalmar filed a
related Cross-Complaint against Chatsworth and its principal, Sharon Boyar, for Open Book
Account, Account Stated, and Breach of Contract on June 29, 2009. Jalmar's cross-claims have
been stayed pursuant to Chatsworth's Chapter 11 bankruptcy filing, but Chatsworth affirmative
First Amended Complaint has not been stayed and remains active. It will be more efficient and
expeditious for Jalmar's cross-claims to be litigated in the same Court and action as
Chatsworth's claim. There is a trial setting conference in the Chatsworth action scheduled for
June 22, 2010. I believe the Court will set the matter for trial for a date within this calendar year
based on the fact that the action was originally filed in March 2009 and the parties have
conducted discovery. The parties' claims are related and should be litigated in the same action
before the same Court.

| In re                          (SHORT TITLE) | CHAPTER:  11 |
|---|---|
| CHATSWORTH INDUSTRIAL PARK, LP | |
| Debtor(s). | CASE NO.: 1:09-bk-27368-KT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:


A true and correct copy of the foregoing document described as  Motion for Relief from Stay (Non-bankruptcy Action)  ____
_____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:


**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:


☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On  5/11/10 _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.


☑ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.


☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


| 5/11/10 | Lynn Clark | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Chatsworth Industrial Park, LP
US Bankruptcy Court, Case No. 1:09-bk-27368-KT
Service List

| | | |
|---|---|---|
| CSFB<br>c/o Gordon & Rees LLP<br>275 Battery Street, Suite 2000<br>San Francisco, CA 94111-3367 | Chatsworth Industrial Park<br>5101 Vanalden Avenue<br>Tarzana, CA 91356-3907 | CBI Partners, Inc.<br>21243 Ventura Blvd., Ste. 117<br>Woodland Hills, CA 91364-2100 |
| Eresidentagent, Inc.<br>Agent for Jalmar Properties, Inc.<br>1801 Century Park East,<br>Suite 1250<br>Los Angeles, CA 90067-2341 | Franchise Tax Board<br>P.O. Box 1673<br>Sacramento, CA 95812-1673 | Franchise Tax Board<br>Bankruptcy Unit<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 |
| Franchise Tax Board<br>Chief Counsel<br>P.O. Box 1720 MS: A-260<br>Rancho Cordova, CA 95741 | Internal Revenue Service<br>Central Insolvency Operations<br>P.O. Box 21126<br>Philadelphia, PA 19114-0326 | Ira Benjamin Katz, Esq.<br>1901 Avenue of the Stars<br>Suite 1900<br>Los Angeles, CA 90067-6020 |
| Jalmar Properties, Inc.<br>12121 Wilshire Blvd., Ste 301<br>Los Angeles, CA 90025-1166 | Key Bank<br>Bankruptcy Department<br>4910 Tiebeman Road, 6th Floor<br>Brooklyn, OH 4414-2338 | Key Bank<br>Real Estate Capital<br>P.O. Box 145404<br>Cincinnati, OH 45250-5405 |
| KeyBank<br>911 Main Street, Suite 1500<br>Kansas City, MO 64105-5344 | Los Angeles County<br>Tax Collector<br>P.O. Box 54018<br>Los Angeles, CA 90054-0018 | Mitchell J. Ezer, Esq.<br>Ezer Williamson LLP<br>21515 Hawthorne Blvd., #1150<br>Torrance, CA 90503-6516 |
| Piken Company<br>12725 Ventura Blvd., Ste A<br>Studio City, CA 91604-2437 | Sandi M. Colabianchi, Esq.<br>Gordon & Rees LLP<br>275 Battery Street, Ste. 2000<br>San Francisco, CA 94111-3361 | US Atty Civil Process Clerk<br>300 N. Los Angeles Rm. 7516<br>Los Angeles, CA 90012-3341 |
| USDOJ Attorney General<br>P.O. Box 683<br>Ben Franklin Station<br>Washington, DC 20044-0683 | United States Trustee (SV)<br>21051 Warner Center Lane, #115<br>Woodland Hills, CA 91367-6550 | Charles Shamash<br>Caceres & Shamash LLP<br>8200 Wilshire Blvd., Ste 400<br>Beverly Hills, CA 90211-2315 |
| Joseph Caceres<br>Caceres & Shamash LLP<br>8200 Wilshire Blvd., Ste 400<br>Beverly Hills, CA 90211-2315 | Katherine Bunker<br>21051 Warner Center Lane<br>Suite 115<br>Woodland Hills, CA 91367 | |

MITCHEL J. EZER, ESQ., SBN 30100
**EZER & WILLIAMSON LLP**
1900 Avenue of the Stars, #1900
Los Angeles, California  90067-4301
Telephone: (310) 277-7747
Facsimile:  (310) 277-2576

Attorneys for Plaintiff Chatsworth Industrial Park

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| CHATSWORTH INDUSTRIAL PARK LP, )<br>a California Limited Partnership, )<br> )<br>Plaintiff, )<br> )<br>vs. )<br> )<br>JALMAR PROPERTIES INC., a California )<br>corporation; DOE ONE to DOE TWENTY, )<br>both inclusive, )<br> )<br>Defendants. )<br>_____ ) | CASE NO.  SC 102362<br><br>**FIRST AMENDED COMPLAINT FOR<br>DAMAGES FOR BREACH OF<br>CONTRACT** |

Comes now the plaintiff above-named, and complains of the defendants above named,
and for cause of action alleges:

1.    Plaintiff Chatsworth Industrial Park LP is a limited partnership duly organized and
existing as such under and by virtue of the laws of the State of California.

2.    At all times herein mentioned, defendant Jalmar Properties Inc. ("Jalmar") was
and now is a corporation duly organized and existing as such and by virtue of the laws of the
State of California.

3.    The true names or capacities, whether individual, corporate, associate,
governmental, or otherwise, of the defendants named herein as Doe One to Doe Twenty, both
inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names,
and plaintiff will amend this First Amended Complaint to set forth their true names and

1    capacities when the same are ascertained.

2        4.    The real property (the "Property") underlying this action is an Industrial Park

3    consisting of seven (7) separate buildings with an aggregate rentable square footage of

4    approximately 153,156 square feet located at the following addresses:

5        21026    Nordhoff Street, Chatsworth, CA 91311

6        21040    Nordhoff Street, Chatsworth, CA 91311

7        9035     Independence Street, Chatsworth, CA 91311 .

8        21019    Osborne Street, Chatsworth, CA 91311

9        21021    Osborne Street, Chatsworth, CA 91311

10       21025    Osborne Street, Chatsworth, CA 91311

11       21029    Osborne Street, Chatsworth, CA 91311

12       21045    Osborne Street, Chatsworth, CA 91311

13       21051    Osborne Street, Chatsworth, CA 91311

14       5.    On or about September 16, 1997, a Property Management Agreement with respect

15   to the Property was entered into between Jalmar and plaintiff's predecessor in interest, Sharon

16   Boyar, Debtor in Possession in Bankruptcy Case No. SV-19054-KL. Said bankruptcy

17   reorganization proceeding was subsequently successfully terminated and is not involved in this

18   action.

19       A copy of the Property Management Agreement (the "Agreement") is attached hereto as

20   Exhibit 1 and by reference is incorporated herein.

21       6.    Plaintiff has performed all conditions, covenants and promises required on its part

22   to be performed in accordance with the terms and conditions of the Agreement.

23       7.    During the four year period prior to the March 27, 2009 filing date of this action,

24   Jalmar breached the Agreement as follows:

25           (a)    Receiving leasing commissions in violation of the Agreement, which does

26   not allow them;

27           (b)    Obtaining various persons to perform work at the Property and paying the

28   workers less than what Jalmar charged plaintiff for their time and keeping the difference;

1          (c)     Imposing inflated and unnecessary CAM (Common Area Maintenance)

2   charges on the tenants of the Property in order to increase Jalmar's management fees which were

3   based upon a percentage of the gross revenue;

4          (d)     Issuing approximately $45,000.00 in checks to vendors after its authority

5   to draw checks on the property management bank account was terminated;

6          (e)     Retaining and paying vendors for work which either was not performed at

7   all or was performed improperly or was performed negligently, without any supervision of the

8   work by Jalmar while it was being performed or inspection by Jalmar of the work site to

9   determine if the work had actually been performed and if so whether it had been properly

10  performed;

11         (f)     Alienating the tenants to a point where two of the nine tenants have

12  vacated the Property;

13         (g)     Failing to obtain bids for major tenants improvements on the property;

14  work was done on a pay-as-you-go basis with no ceiling on the costs.  Jobs were over $50,000 up

15  to over $100,000.

16         (h)     Refusing to even consider letting tenant CP Films have a roof beam

17  repaired at their own cost.  Delayed the work for one year and would not even look at lower bids

18  CP Films had obtained.  This resulted in Plaintiff paying 30% of the inflated cost.  Jalmar told

19  CP Films "we are married to Plamondin" (the contractor).

20         (i)     Charged Plaintiff for three different entities to clean the streets.

21         (j)     Charged Plaintiff $2000 a month for its employees to sweep roofs: Most

22  tenants reported the work was never done.

23         (k)     Charged Plaintiffs $2200 a month for Johnson Controls to check air

24  conditioners; Totally unnecessary as it is the tenants responsibility to care for them.  Also, it did

25  not include repairs – that was extra.

26         (l)     Signed a new lease with Viaquest in October 2008 and never did the work

27  promised in lease;

28         (m)     Spent $13,000 on an empty building to paint offices and clean.  Jalmar

1  paid its men up to $45 an hour for this work, even though there was no tenant. Plaintiff's policy

2  was not to paint until it was known whether new tenant want those offices.

3       (n)    Spent thousands of dollars with a new high-priced landscape company in

4  December 2008 at a time Jalmar told Plaintiff it had no money.

5       (o)    Claimed tenant Viaquest owed Jalmar $40,000 for paying their electrical

6  bill. Provided them no backup at all to substantiate this claim.

7       (p)    Painted the Advanced Powder Coat building after the new tenant already

8  ordered a matching sign. Work unnecessary.

9       (q)    Refused to paint CP Films building, tenant for over 20 years, which

10  needed painting.

11       (r)    Refusing to lease ½ of empty adjoining building to Viaquest. Told them it

12  was rented which it was not. Viaquest rented at another industrial park.

13       (s)    Allowed head of Jalmar's work crew to sign money request to Key Bank.

14       (t)    Allowed girl in office (Greenby) authority to sign request to Key Bank for

15  her own husband.

16       (u)    After overcharging tenants for CAM charges all year, Jalmar in December

17  2008 billed tenants amounts of $10,000 or more that it said they owed as additional CAM

18  charges without providing any back up at all. Told all tenants "if they didn't like it to move".

19       (v)    Told tenant CP Films to move if they did not like the fact that their roof

20  was not redone when the rest of the park was.

21       (w)    Charged Plaintiff $90,000 for remodeling 2 bathrooms at CP Films second

22  building. At the tenants original building the tenant remodeled four bathrooms at a cost of

23  $16,000.

24       (x)    various other actions which are still under investigation and which will be

25  added by amendment to this First Amended Complaint if it is determined that they constitute

26  breaches of contract.

27       8.    As the result of defendant's breaches of contract, plaintiff has been damaged in a

28  sum which has not as yet been quantified, but which substantially exceeds the $25,000 unlimited

JUN. 19. 2009   3:46PM        r & Williamson, LLP        NO. 5653    P. 6/28

1  jurisdiction floor of this Court, and plaintiff will amend this First Amended Complaint to set

2  forth the precise amount of its damages when the same are ascertained.

3      WHEREFORE, Plaintiff prays judgment as follows:

4      1.    For damages according to proof;

5      2.    For interest at the legal rate thereon from the filing date of this action;

6      3.    For reasonable attorneys fees;

7      4.    For costs of suit herein incurred; and

8      5.    For such other and further relief as the Court deems proper.

9

10  Dated:  June 15, 2009                                EZER & WILLIAMSON LLP

11

12      By: _____

13      Mitchel J. Ezer
    Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# JALMAR PROPERTIES, INC.
## PROPERTY MANAGEMENT AGREEMENT

This Property Management Agreement ("Agreement") is entered into as of September 16, 1997 by and between Sharon Boyar, Debtor in possession in Bankruptcy Case No. SV 97-19054-KL ("Debtor") and Jalmar Properties, Inc., a California corporation ("Agent").

### RECITALS

1. Whereas, Debtor owns the property commonly known as (see Exhibit "A"), and more particularly described in Exhibit "A" attached hereto and made a part hereof (the "Property"); and

2. Whereas, Agent is a property management company engaged in managing real property for the Owner's thereof; and

3. Whereas, Debtor desires to engage the services of Agent in connection with the management of the Property and Agent desires to render such services to Debtor.

NOW, THEREFORE, in consideration of the mutual obligations, agreements and other consideration set forth below, the parties agree as follows:

### I.    APPOINTMENT AND DUTIES OF AGENT

Debtor hereby appoints Agent and Agent hereby accepts appointment as exclusive agent and representative of Debtor for the sole purpose of managing the Property on the terms and conditions set forth below.  The authorities, powers, responsibilities, duties and limitations of Agent in connection with the management of the Property are as follows:

A.    Collection of Rent:  At Debtor's request Agent shall take reasonable steps to bill, collect and enforce the collection of all rental payments and other charges, including property tax and expense escalation, due to the Debtor from tenants of the Property in accordance with the terms of their tenancies, and may execute all receipts and/or other documents reflecting receipt of same on behalf of the Debtor.

1

B.   **Payment of Expenses:**  At the request of Debtor, Agent shall prepare checks for Debtor's signature covering the following items:

1.   All operating expenses incurred through renting, servicing, maintaining or repairing the Property, including without limitation, Agent's compensation as described in Section II, Paragraph 1 of this Agreement, and such other expenses in connection with the Property as may be authorized by Debtor.

2.   At Debtor's request, prepare checks to lenders as may be designated in writing by Debtor on loans secured by, or otherwise affecting, the Property.

3. At Debtor's request, prepare checks to pay real and personal property taxes and other taxes or assessments levied and assessed against the Property.

C.   **Marketing:**

Residential Property.  Agent shall use its best efforts to maintain 100% occupancy through retention efforts with existing tenants.

Commercial Property.  Agent shall make all reasonable efforts to assist leasing agents in marketing any vacant space.  In addition, Agent shall use its best efforts to retain all existing tenants.  Lease negotiations for either new or existing tenants are not included within Agent's duties under the scope of this Agreement.

D.   **Marketing of Property:**  Agent shall manage and maintain the Property in an efficient and professional manner.  Agent's management responsibilities shall include conducting periodic general visual inspections, supervising maintenance activities, and coordinating work for such ordinary repairs as may be required by Debtor.  In the event of an emergency, including a need for emergency repair work, Agent shall make a reasonable effort to secure Debtor's approval before expending funds, then expend funds as necessary and give prompt notice of any such emergency expenditures, including repairs, to Debtor.  All repairs, maintenance and any other expenditures described in this Paragraph shall be undertaken by Agent on behalf of Debtor as Debtor's authorized and designated representative and in Debtor's name, and shall be borne solely by Debtor as an expense of the Property.

**E.** **Contracts and Orders:** Subject to Debtor's prior written approval Agent shall negotiate service and labor contracts on behalf of Debtor which are required in the ordinary course of managing the Property, including contracts for utilities, security, landscaping, janitorial, telephone, refuse, vermin extermination and other necessary services. Agent shall also place orders for such equipment, tools, appliances, materials and supplies as are necessary to properly maintain the Property. All such contracts and orders shall be signed by the Debtor. The expenses for such services shall be borne solely by Debtor as an expense of the Property. When taking bids or issuing purchase orders, Agent shall be under duty to secure for and credit to the Debtor any discounts, commissions, or rebates reasonably obtainable as a result of such purchases.

**F.** **Hiring of Employees:** None.

**G.** **Maintenance of Records:** Agent shall maintain full and accurate books and records of the accounts of the Property, in accordance with generally accepted accounting standards which shall be open to the inspection of Debtor at the office of Agent after reasonable notice to Agent during regular business hours. Agent shall render to Debtor a monthly statement showing all receipts and disbursements, together with supporting vouchers, if requested, and reflecting the financial condition of the Property for the month immediately preceding. In addition, Agent shall prepare Interim Statements and Operating Reports as required by the Bankruptcy Court. Said monthly statement shall be deemed accurate and correct between the parties unless Debtor notifies Agent within thirty (30) days after the date of said statement of any claimed error or inaccuracy. In the event there is a deficit in the account of the Property, Agent shall notify Debtor as soon as possible. If funds are not received in a timely manner from Debtor, Agent will not be responsible for late charges, interest, etc. on delinquent accounts, all of which will be payable by Debtor.

**H.** **Cash on Hand:** Agent shall maintain cash of not less than $2,000.00 in the Management Account referred to in Paragraph I.D. below at all times. In the event cash is required to maintain this minimum balance, Agent shall notify Debtor and Debtor will provide funds within three business days.

3

I.   **Maintenance Personnel:** Agent may use its own maintenance personnel to perform various maintenance functions at the Property provided that the cost is competitive with alternative independent contractors doing business in the vicinity of the Property.

J.   **Inventory:** None.

K.   **Net Amount of Funds Collected:** Not applicable.

L.   **Management Account:** Agent shall maintain a petty cash amount for emergency or immediate payments required in the operation of the property. The Agent and the Debtor shall be signatories on the account and checks may be unilaterally signed by either Debtor or Agent.

M.   **Compliance:** To the best of its knowledge and ability, Agent shall comply with and abide by all laws, rules, codes, statutes, regulations, orders, notices, determinations, ordinances, and any other requirements of any federal, state or local authority which relate to the Property and the requirements of any insurance companies covering any of the risks against which the Property is insured.

N.   **Debtor's Records:** Agent agrees that all records, licenses, permits, files and other documentation in the possession of Agent pertaining to the Property shall at all times be the property of Debtor.

O.   **Duties:** Agent's authorities, powers, responsibilities and duties under this Agreement (collectively "Duties") are contingent upon and subject to the non-occurrence of an act of God or other force majeure event which would make agent's performance of its Duties under this Agreement either commercially unreasonable or otherwise impracticable.

P.   **Environmental Matters:** Debtor acknowledges that Agent is not an environmental consultant and does not possess expertise in this technical discipline. Therefore, with respect to any environmental conditions or issues relating to the Property, Debtor and Debtor's officers, directors, partners, shareholders, agents, employees and contractors agree and acknowledge that Agent and Agent's officers, directors, partners, shareholders, agents and employees are not "Operators" (or legally equivalent term) of either the Property or the tenant operations thereon and are not "Operators"

4

(or legally equivalent term) as defined by any current or pending federal, state or local laws having to do with environmental conditions or Hazardous Substances as that term is defined in Exhibit "B" hereto. Agent shall not be responsible for the action or inaction of any tenant concerning environmental conditions or issues relating to the Property. Furthermore, Agent shall not be responsible for the storage, transportation, disposal, abatement, clean-up or removal of any Hazardous Substances on, under, about or affecting the Property, except for those Hazardous Substances, if any, used by Agent in the ordinary course of its management activities, or as agreed in writing.

Q.    **Third Party Contractors:** Notwithstanding anything else contained in this Agreement, Agent may cause maintenance and repair work authorized under this Agreement to be performed by independent third parties engaged by Agent for such performance, and Agent shall not be in any way responsible to Debtor for the acts, omissions, defaults or negligence of any such independent third parties, provided Agent acted in good faith in engaging and supervising any such independent third parties.

## II.  DUTIES OF DEBTOR

A.    **Documents Provided to Agent:** Debtor agrees to promptly furnish Agent all documents and records to properly manage the Property, including but not limited to, leases, amendments and correspondence pertaining thereto, reports on the status of rental payments, loan payment information, copies of existing service contracts, copies of all insurance policies and any required endorsements which are carried by Debtor during the term of this Agreement.

B.    **Plans and Specifications:** Debtor shall furnish Agent with complete plans and specifications of the Property, equipment warranty agreements, and other agreements in Debtor's possession which relate to the operation and maintenance of the Property.

C.    **Indemnification of Agent:** Except for fraud, gross negligence, breach of fiduciary duty or willful misconduct, the Debtor shall indemnify and hold the Agent harmless from any and all costs, expenses, attorneys' fees, suits, liabilities, damages from or connected with the management of the Property by

5

Agent, or the performance of exercise of any of the
management of the Property by Agent or the
performance of exercise of any of the duties,
obligations, powers or authorities herein or
hereafter granted to Agent.

D.  **Insurance:** Debtor shall purchase and maintain
general liability insurance written on an occurrence
basis in an amount of not less than $1,000,000
bodily injury and personal injury, and $500,000
property damage insurance.  The liability insurance
shall be in a comprehensive or commercial general
liability form, covering bodily injury, property
damage, personal injury and advertising injury
arising out of premises operations of the Debtor,
and shall include blanket contractual liability
specifically covering liabilities assumed by Debtor
under this Agreement, products and completed
operations, independent contractors, broad form
property damage, including completed operation, and
premises medical payment.  Debtor agrees that at all
times during the continuance of this Agreement, all
bodily injury, property damage and personal injury,
property insurance and any other coverage and
endorsement of all policies evidencing such
insurance shall without cost to Agent, be extended
to insure and indemnify Agent, as well as Debtor as
follows:

"Jalmar Properties, Inc. is hereby named as an
additional insured and insurance company agrees this
policy shall be primary in respect to any coverage
carried by Jalmar Properties, Inc."

Debtor agrees to consider all reasonable
recommendations by Agent with respect to insurance
coverage to minimize the cost thereof, and the
possibility of bodily injury, property damage and
loss of rental income.

E.  **Waiver of Claims:** Debtor hereby waives all of its
rights and those of its insurers with respect to
recovery against the Agent on account of loss or
damage to any real or personal property comprising
the Property where such loss is caused by an
insurable peril and solely to the extent , if any,
where the loss is covered by insurance.  Debtor
shall give notice to the insurance carrier or
carriers, if any, that the foregoing waiver of
subrogation is contained in this Agreement.

F.  **Reimbursement of Agent:**  Debtor agrees to reimburse

6

Agent, upon demand, to the full extent of all monies advanced by Agent for Debtor's account in carrying out the purpose of this Agreement; provided, however, that nothing contained herein shall obligate Agent to make such advances.  Reimbursable items include, but are not limited to, copies, phone charges, postage, messenger service, UPS or Federal Express charges directly incurred in the management of the Property.

G.    **Residential Lead-Based Paint Disclosure:**

**Debtor's Responsibilities:**  Debtor shall meet all disclosure, certification and acknowledgement of disclosure requirements of a Lessor with respect to known lead-based paint and/or lead-based hazards under the statute and implementing regulations of the Residential Lead-Based Hazard Reduction Act ("Act").  Upon entering into this Agreement or immediately upon Debtor's receipt of such documentation, Debtor shall provide Agent with the following: (1) a statement that the Premises was constructed after 1977 or otherwise is not subject to the Act, or if the Debtor has obtained a certification meeting the Act's requirements that the Premises has been found to be free of lead-based paint, a copy of such certificate; or (2) a statement disclosing (a) the presence of, and any additional information available concerning, any known lead-based paint and/or lead-based paint hazards in the Premises, and (b) copies of any records or reports available to the Debtor pertaining to lead-based paint and/or lead-based paint hazards in the Premised or (3) a statement that no such records or reports are available. Debtor's obligation to provide such statements and information to Agent and in turn to tenants is a continuing obligation as new information becomes available to the Debtor.

**Agent's Responsibilities:**  If based upon the information provided by Debtor to Agent the Agent reasonably believes that the Act applies to the Premises, Agent shall provide each new tenant or renewing tenant, who has not previously received the information, as an attachment to his/her lease on behalf of Debtor (1) a Disclosure Statement on Lead-Based Paint Hazards in the Premises, which meets the requirements of the Act and provides the required disclosures, acknowledgement and certification of accuracy signatures by Debtor, tenant and Agent; (2) copies of any records or reports pertaining to lead-

7

based paint and/or lead-based paint hazards in the premises which Debtor has provided to Agent; and (3) an EPA-approved lead hazard information pamphlet. Agent shall retain a copy of each completed Disclosure Statement, including the required signatures relating to certification and acknowledgement, for no less than three years from the commencement of the leasing period. Agent shall not be liable for the failure to disclose to Tenant the presence of lead-based paint and/or lead-based paint hazards known by Debtor but not disclosed to Agent.

H. **Release of Agent:** In the event that any governmental agency, authority or department should order the repair, alteration or removal of any structure or matter on the Property, and if after written notice of same to Debtor by such body or Agent, Debtor fails to authorize Agent or others to make such repairs, alterations or removal, Agent is hereby indemnified from any responsibility in connection therewith, not caused by its intentional or negligent acts and only to the extent such liability arises from the Debtor's failure to make such repairs, alterations or removal.

I. **Compensation to Agent:** Debtor shall pay Agent for its property management services **four percent (4%)** of the gross monthly collections obtained from the Property during the term of Agent's management under this agreement. However, Agent shall not be entitled to receive compensation based on monies recovered from tenants who vacated the premises prior to the date of this agreement and still owe monies to Debtor. "Gross Revenues" shall mean and refer to all minimum rents and any additional rents or other sums which replace rent or are rent equivalents, including without limitation, common area maintenance payments, expense escalation charges, security deposits (when applied or forfeited), late charges, lease buy-out payments, cleaning fees, parking income, and any other monies or other valuable consideration collected each month from the management of the Property, including collections made by Debtor or others designated by Debtor.

J. **Capital Improvements:** Agent shall be entitled to a construction supervision fee equal to **five percent (5%)** of the aggregate cost of capital improvement, replacement and construction work over Five Thousand ($5,000), including without limitation, re-roofing,

8

limitation, re-roofing, paving, refurbishing,
rehabilitating and rebuilding after major casualty
and substantial exterior and common area repainting.
Normal day-to-day repair and painting pertaining to
usual turnover are not subject to this construction
supervision fee. This fee for capital improvements
will only be charged with prior Debtor approval.
Debtor shall have the option to coordinate and
supervise capital improvement directly.

## III. TERM

The term of this Agreement shall commence **September
16, 1997** and shall continue for a period of one (1)
year thereafter. This Agreement shall continue from
year to year in full force and effect unless and
until either party gives thirty (30) days written
notice of its intention to terminate, provided,
however, either party shall have the right to
terminate this Agreement at any time and for any
reason, but only by giving thirty (30) days written
notice to the other party.

## IV. REPRESENTATIONS AND WARRANTIES

A.   **Representations and Warranties of Debtor.**   Debtor
hereby represents and warrants the following to
Agent for the purpose of inducing Agent to enter
into this Agreement:

(1)   The Debtor has the full right, power and
authority to agree to execute, deliver and
carry out the provisions of this Agreement, and
no consent of any third party is required
therefor.   The execution and delivery of this
Agreement by Debtor is duly authorized and
thereupon this Agreement shall be a valid and
binding agreement of Debtor.

(2)   To the best knowledge of Debtor there are
no material violations of any rule, regulation,
code, resolution, ordinance, statute or law
involving the use, maintenance, operation or
condition of any of the Property, or any part
thereof, and to the best knowledge of Debtor
the Property fully and duly comply with all
material applicable statutes, laws, rules,
regulations, and codes of all governmental

units, authorities, and agencies having
jurisdiction over the Property.

(3)  Neither the execution nor delivery of this
Agreement, nor the consummation of the
transactions covered hereby, nor the
fulfillment of the terms hereof, nor compliance
with the terms and provisions hereof will
conflict with, or result in a breach of the
terms, conditions or provisions of, or
constitute a default under any agreement or
instrument, to which Debtor is a party, or any
restriction to which Debtor is subject, or, to
Debtor's knowledge, constitute a violation of
any applicable statute, regulation, rule,
judgment, decree or order, or result in
acceleration of any lien or encumbrance
pertaining to the Property, or result in the
creation of any lien, charge or encumbrance
upon the Property.

(4)  To Debtor's best knowledge, no litigation
is pending or proposed, threatened or
anticipated with respect to any matter
affecting the Property, other than disputes
between the Debtor and Roger Boyar, creditors
in the Debtor's Bankruptcy case and tenants.

(5)  Except as previously disclosed to Agent,
Debtor has no knowledge (i) that Hazardous
Substances exist on, under or about the
Property, or have been transported to or from
the Property or used, generated, manufactured,
stored or disposed of on or under the Property;
or (ii) that the Property is not in compliance
with any federal, state or local law, ordinance
or regulation relating to Hazardous Substances
on or under the Property.

(6)  Debtor is in default, and is not current
with respect to the payment of principal and
interest pursuant to trust deed encumbrances
against the Property.

B.  <u>Representations and Warranties of Agent</u>.  Agent
hereby represents and warrants the following to
Debtor for the purpose of inducing Seller to
enter into this Agreement:

(1)  Agent has the full right, power and
authority to execute, deliver and carry
out the provisions of this Agreement.  The

10

execution and delivery of this Agreement
by Agent is duly authorized, and thereupon
this Agreement shall be a valid and
binding agreement of Agent.

(2)    Neither the execution nor delivery
of this Agreement, nor the consummation of
the transactions covered hereby, nor the
fulfillment of the terms hereof, nor
compliance with the terms and provisions
hereof will conflict with, or result in a
breach of the terms, conditions or
provisions of, or constitute a default
under any agreement or instrument to which
Agent is a party, or any restriction to
which Buyer is subject.

## V.    MISCELLANEOUS

A.    **Accounting:** Agent shall, deliver to Debtor within
five (5) days after the expiration or termination of
this Agreement, the following: (a) an up-to-date
accounting reflecting the balance of income and
expenses on the Property as of the date of
termination; (b) copies of all leases, receipts for
deposits, insurance policies and unpaid bills which
are the property of Debtor.

B.    **Document Files:** Agent is required to maintain a
complete file of all documents associated with this
agreement, including all Property invoices for a
period of three years.   At the time of termination
of this Agreement, the cost of duplicating documents
shall be borne by the Debtor.

C.    **Entire Agreement:** This Agreement constitutes the
entire Agreement between the parties pertaining to
the subject matter contained in the Agreement and
supersedes all prior and contemporaneous agreements,
representations and understandings of the parties.

D.    **Amendment:** No supplement, modification or amendment
of this agreement shall be binding unless executed
in writing by all the parties.

E.    **Assignment:** This Agreement may not be assigned by
Agent.

F.    **Waiver:** No waiver of the provisions of this
agreement shall be deemed, or shall constitute a

11

waiver of any other provision, whether or not similar, nor shall any waiver constitute a

continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

G.  **Timelines:** Time is of the essence of this agreement and each and all of its provisions in which performance is a factor.

H.  **Notices:** Notices given under this Agreement shall be in writing and shall either be served personally or delivered by first class U.S. Mail, postage pre-paid, Federal Express or other express mail service. Notices may also effectively be given by transmittal over electronic transmitting systems such as facsimile or E-mail if the party to whom the notice is being sent has such a system in its office, provided a complete copy of any notice so transmitted shall also be mailed in the same manner as required for a mailed notice. Notices shall be deemed received at the earlier of actual receipt or three days following depositing the U.S. Mail, postage prepaid. Notice shall be directed to the parties at their current addresses, provided that a party may change his or its address for notice by giving written notice to all other parties in accordance with this Section. The addresses of the parties at the date of this Agreement are as follows:

|  |  |
|---|---|
| **"Debtor"** | **"Agent"** |
| Sharon Boyar<br>P.O. Box 11244<br>Palm Desert, CA 92255-1244<br>Telephone(760)346-7291<br>Fax      (760)341-1138 | Jalmar Properties, Inc.<br>12121 Wilshire Blvd.<br>Suite 200<br>Los Angeles, CA 90025<br>Telephone: (310)207-8481<br>Fax:      (310)207-3483 |

With copy to:

Ira B. Katz, Esq.
Law Offices of Ira Benjamin Katz, A Professional Corp.
1901 Avenue of the Stars
Suite 2000
Los Angeles, CA 90067
Telephone (310)282-8580
Fax      (310)282-8149

12

I.    **Governing Law and Venue:**  This Agreement shall be construed in accordance with, and governed by, the laws of the State of California, and any action or proceeding, including arbitration, brought by any party in which this agreement is a subject, shall be brought in California.  Notwithstanding the foregoing this Agreement and any action brought thereunder is subject to the jurisdiction of the Bankruptcy Court.

J.    **Effect of Headings:**  The heading of the sections of this Agreement are included for purposes of convenience only, and shall not affect the construction or interpretation of any of its provisions.

K.    **Invalidity:**  Any provision of this Agreement which is invalid, void, or illegal, shall not affect, impair or invalidate any other provision of this agreement, and such other provisions of this Agreement shall remain in full force and effect unless such invalidity has a material economic effect on the party for whose benefit the invalid provision was included and such party does not waive this exception.

L.    **Counterparts:**  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

M.    **Number and Gender:**  When required by the context of this Agreement, each number (singular and plural) shall include all numbers, and each gender shall include all genders.

N.    **Joint and Several Liability:**  In the event either party shall at any time consist of more than one person, firm, or corporation, then and in such event, all such persons, firms, or corporations shall be jointly and severally liable as parties under this Agreement.

O.    **Further Assurances:**  Each party to this Agreement agrees to execute such further instruments as may be necessary or desirable to carry out this Agreement, provided the party requesting such further action shall bear all related costs and expenses.

P.    **Advice of Professionals:**  Each party has had the opportunity to be advised by legal counsel and other professionals in connection with this agreement, and each party has obtained such advice as each party deems appropriate.

Q.    **Negotiated Terms:**  The parties agree that the terms and conditions of this Agreement are the result of negotiations between the parties and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or its professionals participates in the preparation of this Agreement.

R.    **Recitals and Exhibits:**  The recitals and contents of all Exhibits to this agreement are incorporated by reference and construed as a material part of this Agreement.

S.    **Professional Fees and Costs:**  If any legal or equitable action, arbitration, or other proceeding, whether on the merits or on motion, are brought or undertaken, or an attorney retained, to enforce this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, then the successful or prevailing party or parties in such undertaking shall be entitled to recover reasonable attorneys' and other professional fees and other costs incurred in such action, proceeding or discussions, in addition to any other relief to which such party may be entitled.  The parties intend this provision to be given the most liberal construction possible, and to apply to any circumstances in which such party reasonably incurs expenses.

14

JUN. 19. 2009  3:50PM   Y & Williamson, LLP   NO. 5653   P. 22/28

**T.**  **Force Majeure:**  The occurrence of any of the following events shall excuse such obligations of the parties as are rendered impossible or unreasonably impracticable for so long as such event continues; or the party who is not so obligated may elect to terminate this Agreement to complete its performance: strikes, lockouts, labor disputes; acts of God; inability to obtain labor, materials or reasonable substitute; governmental restrictions, regulations or controls; judicial order; enemy or hostile governmental action; civil commotion; fire or other casualty; and other causes beyond the reasonable control of the party obligated to perform.

**U.**  **Interested Parties:**  The terms and conditions of this Agreement shall be binding upon and inure to the benefit of each of the parties and their heirs, executors, successors and assigns.

**V.**  **Independent Contractor:**  For all purposes herein and in the performance of its duties and obligations under this Agreement, Agent is and shall remain an independent contractor. Nothing contained herein shall be deemed to create, or be construed as creating, a joint venture, partnership or principal and agent relationship between Agent and Debtor.

**W.**  **No Property Interest Created:**  Nothing herein contained shall be deemed to have created, or be construed as having created, any property interest in or to the Property in Agent.

**X.**  **Other Activity of Agent:**  Agent shall not be required to spend its full time and attention in the management and operation of the Property, but agent shall devote to the Property such portion of its time as may be reasonably necessary to discharge the duties of Agent set forth in this Agreement. Agent shall have the right to engage in any other activity for its own benefit or advantage, including any competitive real estate venture. Nothing contained herein shall preclude, prevent or be a limitation upon Agent being engaged in other real estate ventures, whether acting for itself or for others, or as a partner in a partnership or a stockholder in a corporation or otherwise.

15

**VI.** **BANKRUPTCY COURT:**

      Agent has been advised that a party in interest, U.S. Trustee, or creditor may object to Debtor's retention of Agent and may seek and potentially obtain order disapproving the contract.


**VII.** **ACKNOWLEDGEMENT:**

      Agent hereby acknowledges receipt of a copy of the Property Investigation report dated June 2, 1997, prepared by M.R. Chasse Company, Inc. and the Site Investigation Report dated April 16, 1997, prepared by Enviromental Waste Management Associates, LLC.


**IN WITNESS WHEREOF,** the parties have executed this Agreement, the day and year first above written.


"DEBTOR"

Sharon Boyar

By: _Sharon Boyar DIP_

Date: _9/16/97_

"AGENT"

Jalmar Properties, Inc.

By: _James H. Donell_
       James H. Donell
       President

Date: _9/16/97_

EXHIBIT "A"

PROPERTY DESCRIPTION

An Industrial Park consisting of seven (7) separate buildings
with an aggregate rentable square footage of approximately
153,156 square feet located at the following addresses:

| | |
|---|---|
| 21026 | Nordhoff Street, Chatsworth, CA 91311 |
| 21040 | Nordhoff Street, Chatsworth, CA 91311 |
| 9035 | Independence Street, Chatsworth, CA 91311 |
| 21019 | Osborne Street, Chatsworth, CA 91311 |
| 21021 | Osborne Street, Chatsworth, CA 91311 |
| 21025 | Osborne Street, Chatsworth, Ca 91311 |
| 21029 | Osborne Street, Chatsworth, CA 91311 |
| 21045 | Osborne Street, Chatsworth, CA 91311 |
| 21051 | Osborne Street, Chatsworth, CA 91311 |

## EXHIBIT "B"

The term "Hazardous Substance" as used in this Agreement shall include, without limitation, any substance, chemical, compound or mixture which is (or which contains or is the decomposition product of any substance, chemical compound, or mixture which is):

(i)  a "Hazardous Substance", "Hazardous Material", "Hazardous Waste", or "Toxic Substance" under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C, Section 9601, et seq. (1983, Supp. I 1987), the Hazardous Material Transportation Act, 49 U.S.C. Section 1801, et seq.; or the Resource, Conservation and Recovery Act, as amended, 42 U.S.C. Section 6901, et seq. (1983, Supp. I 1987);

(ii)  an "Extremely Hazardous Waste", a "Hazardous Waste", or a "Restricted Hazardous Waste", under Section 25115, 25117 or 25122.7 of the California Health and Safety Code, or is listed or identified pursuant to Sections 25140 or 44321 of the California Health and Safety Code;

(iii)  a "Hazardous Material", "Hazardous Substance", "Hazardous Waste", "Toxic Air Contamination" or "Medical Waste" under Section 25281, 24316, 25501, 25023.2 or 39655 of the California Health and Safety Code;

(iv)  "Oil" or a "Hazardous Substance" under Section 311 of the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1321, as well as any other hydrocarbonic substance or by-product;

(v)  listed or defined as a "Hazardous Waste", "Extremely Hazardous Waste" or an "Acutely Hazardous Waste" pursuant to Chapter 11 of Title 22 of the Code of Regulations;

(vi)  listed by the State of California as a chemical known by the State to cause cancer or reproductive toxicity pursuant to Section 25249.8(a) of the California Health and Safety Code;

(vii)  a material which due to its characteristics or interaction with one or more other substances, chemical compounds, or mixtures, damages or threatens to damage health, safety, or the environment and because thereof is required by any law or public agency to be remediated, including remediation which such law or public agency requires in order for the property to be put to any lawful purpose;

18

(viii)  any material the presence of which would require remediation pursuant to the guidelines set forth in the State of California Leaking Underground Fuel Tank Field Manual, whether or not the presence of such material resulted from a leaking underground fuel tank;

(ix)  pesticides regulated under the Federal Insecticide, Fungicide and Rodenticide Act, as amended, 7 U.S.C. Section 136 et seq;

(x)  asbestos, PCBs, and other substances regulated under the Toxic Substances Control Act, as amended, 15 U.S.C. Section 2601 et seq;

(xi)  any radioactive material, including, without limitation, any "source material", "special nuclear material", "by-product", "material", "low-level wastes", "high-level radioactive waste", "spent nuclear fuel" or "transuranic waste" and any other radioactive materials or radioactive wastes, however produced, regulated under the Atomic Energy Act, as amended, 42 U.S.C. Section 2011 et seq. or the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. Section 10101 et seq; or pursuant to the California Radiation Control Law, California Health & Safety Code Section 15800 et seq;

(xii)  industrial process and pollution control wastes whether or not hazardous within the meaning of the Resource Conservation and Recovery Act, as amended, 42 U.S.C. Section 6901, et seq (1983, Supp. I 1987);

(xiii)  regulated under the Occupational Safety and Health act, as amended, 29 U.S.C. Section 651 et seq, or the California Occupational Safety and Health Act, California Labor Code Section 6300 et seq; and/or

(xiv)  regulated under the Clean Air Act, as amended, 42 U.S.C. Section 7401 et seq.

1                          **PROOF OF SERVICE**
                          1013A (3) CCP Revised 5/1/88
2          STATE OF CALIFORNIA            )
                                          } ss.
3          COUNTY OF LOS ANGELES          )

4          I am employed in the county of Los Angeles, State of California. I am over the age of 18
   and not a party to the within action; my business address is 1900 Avenue of the Stars, #1900, Los
5  Angeles, California 90067-4301.

6          On June 18, 2009, I served the foregoing document described as **FIRST AMENDED
   COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT** on the interested parties
7  in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

8  Andrews, Lagasse, Brach & Bell LLP
   11232 El Camino Real, #250
9  San Diego, CA 92130
   Fax No.: (858) 356-6539
10

11 [X]    **BY U.S. MAIL** (1013a CCP) - I am readily familiar with EZER & WILLIAMSON
          LLP's practice for collection and processing of correspondence for mailing with the
12        United States Postal Service. In the ordinary course of business, correspondence would
          be served by placing a true copy thereof in a sealed envelope and deposited with the
13        United States Postal Service on this date.

14 [X ]   **BY FACSIMILE** (CRC 2008) - I caused a facsimile transmission to the facsimile
          number(s) indicated above. Upon completion of the said facsimile transmission, the
15        machine issued a report showing the transmission was complete and without error.

16 [ ]    **BY FEDERAL EXPRESS** (1013(c) CCP) - I caused delivery by Federal Express. In
          the ordinary course of business, a true copy would be placed in a sealed envelope and
17        deposited with Federal Express.

18 [ ]    **BY MESSENGER SERVICE** (1011 CCP) - I caused the aforementioned document(s)
          to be served by messenger upon the addressee as indicated above.
19
   [ ]    **BY HAND-DELIVERY** (1011 CCP) - I caused the aforementioned document(s) to be
20        served by hand-delivery upon the addressee as indicated above

21         I declare under penalty of perjury that the foregoing is true and correct.

22 Executed on June 18, 2009 at Los Angeles, California.

23
                                   Veronica Bach
24

25

26

27

28

---

U:\Boyn\James\Pkgs\1st AmendComp.wpd                6                          1ˢᵗ AMENDED COMPLAINT

JUN.19.2009  3:51PM              & Williamson, LLP              NO.5653   P. 28/28

                                                                            P.  1

* * * COMMUNICATION RESULT REPORT ( JUN. 18. 2009  5:05PM ) * * *

                                            FAX HEADER 1:  Ezer & Williamson, LLP
                                            FAX HEADER 2:  310-277-2576

TRANSMITTED/STORED : JUN. 18. 2009  4:59PM
FILE MODE       OPTION          ADDRESS              RESULT      PAGE

5636 MEMORY TX                      03  :Appia aFax      OK         27/27

REASON FOR ERROR
 E-1) HANG UP OR LINE FAIL              E-2) BUSY
 E-2) NO ANSWER                        E-4) NO FACSIMILE CONNECTION
 E-3) MAIL SIZE OVER

---

## EZER & WILLIAMSON LLP
### *Attorneys at Law*
1900 AVENUE OF THE STARS, #1900
LOS ANGELES, CALIFORNIA 90067-4301
TELEPHONE: (310) 277-7747
FACSIMILE: (310) 277-2576

## PLEASE DELIVER THE FOLLOWING MATERIAL AS SOON AS POSSIBLE

TO:            Andrews, Lagasse, Branh & Bell LLP

FAX NO.        (858) 356-6539

FROM:          Mitchel J. Ezer

RE:            Chatsworth Industries LP

NUMBER PAGES: 27 (including this cover page)

DATE SENT:     June 18, 2009

OPERATOR:      Veronica

## MESSAGE TO RECIPIENT:

Please see attached.

*************************************************************************************
PLEASE NOTIFY OPERATOR AT (310) 277-7747 IMMEDIATELY IF NOT RECEIVED PROPERLY.  TO
TELEFAX RESPONSE, DIAL (310) 277-2576
*************************************************************************************
CLIENT NAME AND MATTER NUMBER:

ORIGINAL:   VIA U.S. MAIL _____ ; FED EX/OVERNIGHT_____ ;
            MESSENGER _____ ;  NOT MAILED ___x___ .

### CONFIDENTIALITY NOTICE

THE DOCUMENTS ACCOMPANYING THIS TELECOPY TRANSMISSION CONTAIN CONFIDENTIAL INFORMATION BELONGING TO
THE SENDER WHICH IS LEGALLY PRIVILEGED. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR
ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE,
COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS TELECOPIED INFORMATION
IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TELECOPY IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY
TELEPHONE TO ARRANGE FOR RETURN OF THE ORIGINAL DOCUMENTS TO US.