SANDI M. COLABIANCHI (SBN 193872)
VALERIE L. SMITH (SBN 135837)
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

Attorneys for Secured Creditor
CSFB 2003-C4 NORDHOFF LIMITED PARTNERSHIP

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>CHATSWORTH INDUSTRIAL PARK, LP,<br><br>Debtor. | CASE NO. 1:09-BK-27368-MT<br><br>CHAPTER 11<br><br>**CSFB 2003-C4 NORDHOFF LIMITED PARTNERSHIP'S OPPOSITION TO DEBTOR'S DISCLOSURE STATEMENT**<br><br>Date: September 30, 2010<br>Time: 11:00 a.m.<br>Judge: Maureen Tighe |

Secured Creditor CSFB 2003-C4 NORDHOFF LIMITED PARTNERSHIP ("Secured Creditor") is the holder of a senior secured interest in the real property commonly referred to as the Chatsworth Industrial Park ("Property"), and hereby submits its opposition to the Debtor's disclosure statement.

Secured Creditor recognizes that there are aspects of each of its disclosure statement objections that will require additional briefing in connection with confirmation of Debtor's proposed plan if Secured Creditor's objections are not resolved prior to the confirmation hearing. Secured Creditor reserves all right to raise such objections and raise additional objections more fully in connection with Debtor's proposed plan but believes that creditors, and this Court, are entitled to additional disclosure before the disclosure statement is approved and the plan process moves forward.

-1-

1   Secured Creditor has serious concerns regarding the adequacy of the disclosure contained
2   in the disclosures statement and believes that Debtor's proposed plan is fatally flawed. For
3   example, the disclosure statement does not provide any financial projections, including
4   anticipated repairs or vacancies, rendering any feasibility analysis impossible. Further, the
5   disclosure statement and the proposed plan contain inaccuracies such that the proposed plan
6   contains a fatal violation of the absolute priority rule and several other material confirmation
7   issues. For these reasons and the ones set forth below, Debtor should be made to amend the
8   disclosure statement to provide adequate information, which would satisfy the requirements of
9   11 U.S.C. § 1125.

## I. STANDARDS FOR APPROVAL OF DISCLOSURE STATEMENT

A debtor must demonstrate that its disclosure statement includes "adequate information" for creditors and other parties in interest to make an informed judgment about the plan. 11 U.S.C. § 1125(a)(1). The general function of a disclosure statement is to place upon the debtor the responsibility of providing adequate information as determined by the Court before soliciting approval of a proposed plan of reorganization. *In re Georgetown of Kettering*, 17 B.R. 73 (Bankr. S.D. Ohio 1981). A disclosure statement can not be approved if it is considered misleading and any omissions of material information can cause a disclosure statement to be misleading. *In re Sierra*, 210 B.R. 168, 176 (Bankr. E.D. Cal. 1997); *In re Applegate Prop.*, 133 B.R. 827, 831 (Bankr. W.D. Tex. 1991). And where, as here, a plan of reorganization cannot be confirmed as a matter of law, a disclosure statement should not be approved. *See In re Main St. AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1991); *In re 266 Washington Associates*, 141 B.R. 275 (Bankr. E.D.N.Y. 1992).

## II. OBJECTIONS

### A. The Proposed Plan Does Not Cure The Defaults Owed To Secured Creditor.

The cure amount provided for in the Debtor's disclosure statement and proposed plan is inaccurate in that it does not include unpaid principal and escrow and reserve account payments that are part of the monthly payments under the loan with the Secured Creditor. The Debtor indicates in its disclosure statement and proposed plan that it is curing the defaults in the debt

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

owed to Secured Creditor by making payment of arrears in the amount of $293,281.57 in 32 equal monthly installments of $9,165.05 per month beginning on the Effective Date. (Disclosure Statement, p. 16, Proposed Plan, p. 5.) This amount consists of only unpaid pre-petition interest at the non-default rate and does not include principal and escrow payments that were required as part of the monthly payments under the loan documents. Secured Creditor is also entitled to additional charges such as title company fees and legal fees incurred as part of any cure.

In addition, the Debtor failed to make the payment due to Secured Creditor on May 1, 2009, and all subsequent payments to Secured Creditor due under the terms of the Note, with the exception of one payment in the amount of $70,483.34 made on or about September 4, 2009. The monthly payment amount was $67,126.99 and consisted of principal and interest payments of $47,451.42, and escrow and reserve payments totaling $19,775.57. The Debtor filed its petition on December 23, 2009 leaving seven months of pre-petition payments unpaid totaling $469,888.93. At a minimum, any cure is required to include this amount and not just unpaid interest. And Secured Creditor is entitled pursuant to the underlying loan agreement with the Debtor to attorneys fees and other costs incurred in connection with the enforcement of the loan. As discussed further below, the Debtor's disclosure statement provides that the it can not even pay the full amounts currently proposed in the plan, much less any additional amounts.

Secured Creditor also disputes that the Debtor's proposed plan can be confirmed if the "cure" of arrears is not made on the Effective Date or shortly thereafter, but instead is to be paid over nearly three years. Moreover, Secured Creditor disputes treatment of Secured Creditor's claim as being reinstated and that no default exists upon the Effective Date when the Debtor is not going to actually pay the amount of past-due interest for nearly three years. (Disclosure Statement, p. 16, Proposed Plan p. 5.) In *In re Entz White Lumber and Supply, Inc.,* 850 F.2d 1338 (9th Cir. 1988), the debtor paid to the secured creditor the full principal balance as well as interest at the non-default rate shortly following the confirmation date. Here, the Debtor not only seeks to avoid the payment of default interest, but also seeks to force the Secured Creditor to essentially provide an additional loan for the interest amount to be paid over time and without any compensation to Secured Creditor.

1    The Debtor should be required to revise its disclosure statement and proposed plan to address these issues and provide for the full cure amount owed to Secured Creditor. And, since the Debtor is not proposing to actually cure the debt on the Effective Date, Secured Creditor's claim should continue to be considered to be in default and should not be reinstated until the cure payments are actually paid in full.

### B. The Proposed Plan Is Not Feasible.

The Debtor's proposed plan is not feasible. Section 1129(a)(11) requires as a condition of confirmation that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." This section requires "the plan proponent to show concrete evidence of sufficient cash flow to fund and maintain both its operations and obligations under the plan." *See* 7 COLLIER ON BANKRUPTCY ¶ 1129.03[11], *citing S & P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. Ind. 1995) (quoting *In re SM 104 Ltd.*, 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993).

The Debtor does not have sufficient cash flow to make even the proposed plan payments, much less the additional amounts that are required to actually cure the defaults owed to Secured Creditor. The proposed plan provides for payments of $10,757.75, yet the excess cash flow only averages approximately $10,000, leaving a shortfall of nearly $1,000 per month.[1] (Disclosure Statement, pp. 31-32). The proposed plan payments also do not include the amounts discussed above to cure the past due principal and reserve payments owed to Secured Creditor, which when corrected will leave even a larger shortfall. The disclosure statement recognizes that if the Debtor lost tenants and was unable to replace them quickly enough, it may not be able to make payments. In any large real property, costs associated with repairs to roofs, air conditioning systems and other parts of the property can be significant. If the Debtor can not even pay the proposed plan payments out of the projected cash flow, it is unreasonable to assume that the

---

[1] Secured Creditor notes that Debtor states in the disclosure statement that it is entitled to reimbursement from Secured Creditor for certain repairs out of its escrow accounts. However, the loan documents provide that there is no obligation for payments to be made from the escrow accounts while the loan is in default. Due to the several payments in default, these accounts are not sufficiently funded as allowed under the loan documents. Notwithstanding this, Secured Creditor has made payments for property taxes.

-4-

OPPOSITION TO DEBTOR'S DISCLOSURE STATEMENT                    CASE NO. 1:09-BK-27368-MT

1 Debtor will be able to make the proposed plan payments when there is a vacancy or repair
2 required. Accordingly, it is more than likely that the Debtor will be unable to make all of its
3 payments under the proposed plan and that liquidation of the Property or further reorganization
4 will be needed.

### C. The Disclosure Statement Does Not Provide Adequate Information Of The Reorganized Debtor's Financial Projections.

The disclosure statement provides that Debtor's proposed plan "will be funded by the cash generated from the rents collected by the Debtor." (Disclosure Statement p. 16). However, there are no projected financial statements attached to the disclosure statement. The Debtor provides that they will be provided. Without a review of these projected financial statements, a determination of the sufficiency of these statements can not be made and a creditor does not have sufficient information to analyze the ability of the Debtor to perform under the proposed plan. As stated above, in any rental property it must be anticipated that from time to time there will be vacancies and that there will be repairs needed. The Debtor should be required to include projections for vacancies and repairs and how it will be able to pay its expenses when a vacancy or repair inevitably arises. Here, the Debtor does not provide projection information and the disclosure statement cannot be found to satisfy 11 U.S.C. § 1124 without that information.

### D. The Proposed Plan Provides Less To Creditors Than In a Chapter 7 Liquidation.

Section 1129(a)(7) of the Bankruptcy Code requires that each impaired class either accept the plan or "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date. . ."

As discussed further below, there is sufficient equity in the Property to pay Secured Creditor and unsecured creditors in full, and with interest. (Disclosure Statement p. 18). The Debtor proposes to pay unsecured creditors the full amount of their claims over the course of 5 years. However, there is no proposed interest or other compensation for the potential risk that the Property may depreciate in value or for the delay in payment. The Debtor proposes to pay

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Secured Creditor only past due interest, not including any default interest, over the course of 32 months, along with regular monthly payments. The Debtor does not propose to bring current the past due principal payments and escrow payments, and does not propose to pay late fees, default interest, and other charges that have accrued. All of this is objectionable.

1. <u>The Debtor's Liquidation Analysis is Flawed.</u>

The Debtor is a limited partnership ("LP"). The Debtor provides in its liquidation analysis that if the case were converted to Chapter 7 and the bankruptcy trustee sold the Property the unsecured creditors would receive $0. The analysis provides that there would be a $2.275 million capital gains tax liability and that the value of the Property is $12 million plus cash on hand of $45,504. The balance for unsecured claims was estimated to be [$690,496]. The unsecured claims in this case total $95,562. (Disclosure Statement, p. 29).

A problem with this analysis is that the Debtor is likely not liable for any capital gains tax on the sale of the Property. LPs are treated as pass-through entities for federal and state income tax purposes. As a result of this tax treatment, all of the income and expenses of the LP "pass-through" to the members for income tax purposes on a Schedule K-1 Partner's Share of Income, Deductions, Credits, etc. As such, the tax liability may not be charged to the bankruptcy estate and may not be included in the liquidation analysis. Once the $2.275 million capital gains tax is deleted from the liquidation analysis, the amount available to unsecured creditors exceeds $1.5 million.

2. <u>The Disclosure Statement Should Provide Information To Unsecured Creditors That They Would Receive A Greater Amount In A Chapter 7 Liquidation Than Under The Plan.</u>

The unsecured claims in the case total only $95,562. With over $1.5 million available to pay unsecured creditors if the debtor were liquidated under chapter 7, unsecured creditors would receive not only payment in full, but would also receive interest and would not be forced to bear the risk of depreciation or other risks to the value of the Property over time. The disclosure statement should inform unsecured creditors that they would receive more in a chapter 7 liquidation. This is essential for a reasonable investor to make a decision on the proposed plan.

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

-6-

OPPOSITION TO DEBTOR'S DISCLOSURE STATEMENT                                CASE NO. 1:09-BK-27368-MT

3.  *The Disclosure Statement Should Also Provide That The Secured Creditor Would Be Paid A Greater Amount In A Chapter 7 Liquidation.*

Not only would the liquidation of the Property allow for the unsecured creditors to receive a more favorable distribution, but Secured Creditor would receive more in a liquidation. In a chapter 7 case, the Secured Creditor would be entitled to payment of its full debt from the sale of the Property. This includes allowed amounts for default interest, a prepayment premium and other charges that are included in the agreement with the Debtor. Liquidation would allow for the payment of the full amount of Secured Creditor's debt, not just past-due interest as provided in the proposed plan and would also allow for a more timely payment that would not force Secured Creditor to bear the risk that the Property may depreciate or that there may be other losses to the value of the Property. In addition, the proposed plan requires Secured Creditor to effectively extend additional credit to the Debtor for the payment of the "cure" amount for pre-petition interest over 32 months without any compensation. This information should be disclosed in the disclosure statement as material to a decision by a reasonable investor.

**E.    The Proposed Plan Violates The Absolute Priority Rule.**

Under Debtor's proposed plan, the current equity or "interest" holders would retain its interest in the Debtor, despite the fact that, as discussed above, there is sufficient equity in the Property to pay Secured Creditor and unsecured creditors in full, and with interest. (Disclosure Statement p. 18). Debtor's proposed plan violates the absolute priority rule and Debtor owes creditors an explanation of how it expects to deal with the problem the plan structure creates. The need to address absolute priority issues is especially acute here as Secured Creditor is being paid over time, thereby exposing Secured Creditors to potential depreciation on its secured claim. The Court should require Debtor to address the absolute priority issue, as well as the other plan confirmation issues raised above, at the disclosure statement stage rather than later during plan confirmation, since they are fatal flaws in Debtor's proposed plan. Creditors should not be forced to spend their money addressing an unconfirmable plan. As noted, where a plan of reorganization cannot be confirmed as a matter of law, a disclosure statement should not be approved. *In re 266 Washington Associates*, 141 B.R. 275 (Bankr. E.D.N.Y. 1992).

**III.    Conclusion**

Secured Creditor requests this Court not to approve the disclosure statement as it currently stands and to require Debtor to amend its disclosure statement to address the above objections, plus such other and further objections as the Court deems appropriate.

Dated:  September 16, 2010          GORDON & REES LLP


By    /s/ Sandi M. Colabianchi
         Sandi M. Colabianchi
Attorneys for Secured Creditor
CSFB 2003-C4 NORDHOFF LIMITED
PARTNERSHIP

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

LNRP/1059446/8476144v.1

-8-

| In re: CHATSWORTH INDUSTRIAL PARK, LP | Chapter 11 |
|---|---|
| | Case Number 1:09-bk-27368-MT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:        275 Battery Street, Suite 2000, San Francisco, CA  94111

A true and correct copy of the foregoing document described as **CSFB 2003-C4 NORDHOFF LIMITED PARTNERSHIP'S OPPOSITION TO DEBTOR'S DISCLOSURE STATEMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 16, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒    Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On *September 16, 2010,* I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***Fill in Date Document is Filed,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

 September 16, 2010    Dyanne Hammerquist        /s/ Dyanne Hammerquist

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*August 2010*                                FORM 9013-3.1 PROOF OF SERVICE

| In re: CHATSWORTH INDUSTRIAL PARK, LP | Chapter 11 |
|---|---|
|  | Case Number 1:09-bk-27368-MT |

ADDITIONAL SERVICE INFORMATION:

**SERVICE VIA NEF:**

Katherine Bunker     kate.bunker@usdoj.gov
Joseph Ceceres    jec@locs.com; generalbox@locs.com
Sandi M. Colabianchi    scolabianchi@gordonrees.com
Charles Shamash    cs@locs.com; generalbox@locs.com
United States Trustee   ustregion16.wh.ecf@usdoj.gov


**SERVICE VIA FED EX:**

The Honorable Maureen A. Tighe, U.S. Bankruptcy Judge
United States Bankruptcy Court
21041 Burbank Blvd.
Woodland Hills, CA  91367
        Attn:  Intake, CHAMBERS COPY

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

LNRP/1059446/8501662v.1
*August 2010*                    FORM 9013-3.1 PROOF OF SERVICE