ANDREW GOODMAN (State Bar No. 115685)
JEREMY W. FAITH (State Bar No. 190647)
GOODMAN FAITH, LLP
21550 Oxnard Street, Suite 830
Woodland Hills, California 91367
Telephone: (818) 887-2500
Facsimile:  (818) 887-2501

Attorneys for Administrative Creditor
CBI Partners, Inc.

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re | Case No.: 1:09-bk-27368-MT |
| CHATSWORTH INDUSTRIAL PARK, LP, | Chapter:  11 |
| Debtor-in-Possession. | **OBJECTION OF CBI PARTNERSHIP, INC. TO DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION; DECLARATION IN SUPPORT THEREOF** |

Date:        April 28, 2011
Time:        1:00 p.m.
Place:       Courtroom 302
             United States Bankruptcy Court
             21041 Burbank Boulevard
             Woodland Hills, CA 91367

**TO THE HONORABLE MAUREEN TIGHE, UNITED STATES BANKRUPTCY JUDGE,**

**THE DEBTORS, THE OFFICE OF THE UNITED STATES TRUSTEE AND OTHER**

**PARTIES IN INTEREST:**

CBI Partners, Inc. ("CBI"), by and through its attorneys, Goodman Faith, LLP,

objects to confirmation of Debtor's Second Amended Plan.

1.      On or about May 21, 2010, Chatsworth Industrial Park, LP ("Debtor") filed

and served its Application of Debtor and Debtor-In-Possession To Employ CBI Partners, Inc. As

Leasing Broker for the Estate (the "Application"). A true and correct copy of the Application is

attached hereto as Exhibit "A".

2.      Pursuant to the Application, (¶ 2) CBI was to lease vacant units located at 21029 Osborne Street and 9035 Independence Avenue, Canoga Park, California.

3.      CBI agreed to a total of 6% commission of rents payable upon entry of a leasing agreement or agreements with new tenants, from funds paid by the tenants at the inception of and following entry into such leases, without further order of the Court (Application, ¶ 5).

4.      On June 10, 2010, the Court approved CBI's employment. A true and correct copy of the Order is attached hereto as Exhibit "B".

5.      CBI performed the work required of it under the terms of the Application by leasing out the Osborne Property (the Independence Property was taken off the market). The lease was signed yet, to date, no payments have been made by Debtor to CBI.

6.      The Plan lists CBI as an administrative creditor but states that no monies are or will be owed as of the Effective Date. This statement is false.

7.      Pursuant to the Debtor's own Plan (Section II.B.1) all administrative claims must be paid in full on the Effective Date unless the Administrative Creditor agrees to alternative treatment. CBI does NOT agree to alternative treatment.

8.      Without a modification to the Plan to pay CBI's administrative claim, the Plan cannot be confirmed.

DATED: March 24, 2010                    GOODMAN FAITH, LLP


                                         By: ____/S/ ANDREW GOODMAN_____
                                                    ANDREW GOODMAN
                                              Attorneys for CBI Partners, Inc.

## **DECLARATION OF JOEL KATZ**

I, Joel Katz, declare as follows:

1.　　I am a principal of CBI Partners, Inc. ("CBI").　In this capacity, I have overseen all aspects of the work and services performed by CBI pursuant to the Application to Employ filed by Debtor in this Bankruptcy Case.　I have read the foregoing Motion for Allowance and Payment of Administrative Expense (the "Motion") and know the contents thereof, and that the same is true of my own knowledge.　Defined terms in the Motion shall have the same meaning herein.

2.　　Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code on December 23, 2009.

3.　　On May 21, 2010 Debtor filed an Application to Employ CBI as its Leasing Broker for the purposes of leasing vacant units located at 21029 Osborne Street and 9035 Independence Avenue, Canoga Park, California.　CBI was selected as it was familiar with the Debtor's property, having assisted the Debtor in leasing its approximately 17,000 square foot property at 21040 Nordhoff Street in approximately July 2009 and assisted the Debtor with property management issues.

4.　　Pursuant to the Application (Exhibit "A" hereto), Debtor agreed to pay a total commission to CBI of 6% of rents, payable upon entry into a leasing agreement or agreements with new tenants, from funds paid by the tenants at the inception of and following entry into such leases, without further order of the Court.

5.　　On June 10, 2010, this Court entered an Order approving the Application.

6.　　CBI performed its services under the terms of the Application and leased the property located on Osborne Street.　The Independence Avenue Property was taken off the market at the request of the Debtor.　However, to date, despite requests and demands, no monies have been paid to CBI.

7.　　Attached hereto as Exhibit "C" is a true and correct copy of an invoice from CBI to the Debtor (c/o their counsel) in which we itemize the amounts owing to CBI. As of the date of this declaration, CBI is owed the sum of $30,992.94.

1         I declare under penalty of perjury pursuant to the laws of the United States of

2    America that the foregoing is true and correct and that this declaration was executed on March

3    24, 2011 at 3:00 P.m , California.

4

5    _____
                                    JOEL KATZ

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Joseph E. Caceres, Esq. (SBN 169164)
   Charles Shamash, Esq. (SBN 178110)
2  Caceres & Shamash, LLP
   8200 Wilshire Boulevard, Suite 400
3  Beverly Hills, California 90211
   Telephone: (310) 205-3400
4  Facsimile: (310) 878-8308

5  Reorganization Counsel for Debtor and
   Debtor-In-Possession

6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                 SAN FERNANDO VALLEY DIVISION

11

12  In re                          ) Case No. 1:09-bk-27368-MT
                                    )
13  CHATSWORTH INDUSTRIAL           ) Chapter 11
    PARK, LP,                       )
14                                  ) APPLICATION OF DEBTOR AND
                                    ) DEBTOR-IN-POSSESSION TO EMPLOY
15                                  ) CBI PARTNERS, INC. AS LEASING
                                    ) BROKER FOR THE ESTATE;
16                                  ) DECLARATION OF DAVID KATZ IN
                                    ) SUPPORT THEREOF
17                                  )
                                    )
18                                  ) [11 U.S.C. § 327(a);
                                    ) FED.R.BANKR.PROC. 2014; LOCAL
19                                  ) BANKRUPTCY RULES 2014-1 &
             Debtor and Debtor-     ) 9013-1(o)]
20           In-Possession.         )
                                    ) [No Hearing Required]
21  _____)

22  **TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY**

23  **JUDGE, THE UNITED STATES TRUSTEE, AND OTHER INTERESTED PARTIES:**

24       CHATSWORTH INDUSTRIAL PARK, LP ("Applicant," "Debtor," or

25  "Debtor-in Possession"), hereby applies for authority to employ

26  CBI PARTNERS, INC. ("CBI") as Leasing Broker for the estate.  In

27  support thereof, Applicant respectfully represents as follows:

28  //

                              1

1.    Applicant filed for relief under Chapter 11 of the United States Bankruptcy Code on December 23, 2009.

2.    Applicant proposes to employ CBI as Leasing Broker for the estate under 11 U.S.C. § 327(a), for purposes of leasing vacant units located at 21029 Osborne Street and 9035 Independence Avenue., Canoga Park, CA.

3.    The basis for the selection of CBI is that CBI and its agents handling this matter, Principals David Katz and Joel Katz, have extensive experience in commercial and industrial real estate matters of this nature and Applicant believes that CBI is well qualified to represent the estate as leasing broker in this proceeding.  Moreover, CBI is familiar with the Debtor's property, having assisted the Debtor in leasing its approximately 17,000 square foot property at 21040 Nordhoff Street in approximately July 2009.  Thereafter, CBI assisted the Debtor with property management issues, although it has not sought compensation for such assistance, and first listed the 21029 Osborne Street property in approximately September 2009.  The qualifications of CBI and its Principals handling this engagement are set forth in Exhibit "1" hereto.

4.    Applicant wishes to employ CBI for the leasing of the above properties pursuant to the terms and conditions of the two (2) listing agreements attached hereto as Exhibit "2," dated April 20, 2010 (as extended from the initial listing agreement dated September 5, 2009), and May 3, 2010.  As set forth therein, CBI has agreed to a total commission of 6% of rents (i.e., not to apply to any CAM or other charges that may be payable to the Debtor beyond the basic rent), payable pursuant to the Schedule

2

1  of Commissions attached hereto as Exhibit "3."  Applicant

2  requests authority to pay such commissions upon entry into a

3  leasing agreement or agreements with new tenants, from funds paid

4  by the tenants at the inception of and following entry into such

5  leases, without further order of the Court.

6        5.    The Listing Agreements reflect initial (asking) lease

7  rates of $9,901.50 (21029 Osborne St.) and $12,350.00 (9035

8  Independence Ave.), respectively.  See Exhibit "2."  CBI and the

9  Debtor request authority to reduce or increase these rental

10  rates, and/or extend the term of either or both Listing

11  Agreements, by mutual agreement without further court order,

12  should they deem it advisable during the term of the listings.

13        6.    To the best of the Applicant's knowledge, CBI and its

14  agents handling this matter have no conflict of interest and are

15  a "disinterested persons" as defined by 11 U.S.C. Section 101(14)

16  with respect to this case, as more fully set forth in the

17  attached Declaration of Disinterestedness for Employment of

18  Professional Person Under F.R.B.P. 2014 (drafted in conformity

19  with the Court's Form F 2014-1).

20        7.    Notice of this Application is being provided in

21  accordance with Local Bankruptcy Rule 2014-1.  A true and correct

22  copy of such Notice is attached hereto as Exhibit "4."

23  //

24  //

25  //

26  //

27  //

28  //

1     **WHEREFORE,** Applicant respectfully requests that this Court

2 authorize it to employ CBI as Leasing Broker for the estate in

3 this Chapter 11 proceeding, in accordance with the terms and

4 conditions of this Application.

5

6 DATED: May 19, 2010        CHATSWORTH INDUSTRIAL PARK, L.P.,
                           Debtor and Debtor-in Possession

7

8

9                           By: Sharon Boyar, President of Boyar
                          Management Corp., Debtor's General Partner

10

11

12 **Presented by:**

13 CACERES & SHAMASH, LLP

14

15       /s/ Joseph E. Caceres
  By: _____

16       Joseph E. Caceres, Esq.
      Charles Shamash, Esq.
      Reorganization Counsel for
17       Debtor and Debtor-in-Possession

18

19

20

21

22

23

24

25

26

27

28

<center>4</center>

**DECLARATION OF DISINTERESTEDNESS FOR EMPLOYMENT OF
PROFESSIONAL PERSON UNDER F.R.B.P. 2014**
[Drafted to Conform With Court Form F 2014-1]

1. **Name, address and telephone number of the professional ("the Professional") submitting this Statement:**

    David Katz
    CBI Partners, Inc.
    21243 Ventura Blvd., Suite 117
    Woodland Hills, CA 91364
    Phone: (818) 961-1003
    Fax: (818) 316-0307

2. **The services to be rendered by the Professional in this case are** *(specify):*

    CBI Partners, Inc.("CBI") will act as Leasing Broker for the estate under 11 U.S.C. § 327(a), for purposes of leasing vacant units located at 21029 Osborne Street and 9035 Independence Avenue., Canoga Park, CA.  CBI and its agents handling this matter, Principals David Katz and Joel Katz, have extensive experience in commercial and industrial real estate matters of this nature.  Moreover, CBI is familiar with the Debtor's property, having assisted the Debtor in leasing its approximately 17,000 square foot property at 21040 Nordhoff Street in approximately July 2009.  Thereafter, CBI assisted the Debtor with property management issues, although we have not sought compensation for such assistance, and we first listed the 21029 Osborne Street property in approximately September 2009.  The qualifications of CBI and its agents are set forth in Exhibit "1" hereto, a true and correct copy of the information appearing on our website.

3. **The terms and source of the proposed compensation and reimbursement of the Professional are** *(specify):*

    Applicant wishes to employ CBI for the leasing of the above properties pursuant to the terms and conditions of its two (2) listing agreements, true and correct copies of which are attached hereto as Exhibit "2," dated April 20, 2010 (as extended from the initial listing agreement dated September 5, 2009), and May 3, 2010.  As set forth therein, CBI has agreed to a total commission of 6% of rents (i.e., not to apply to any CAM or other charges that may be payable to the Debtor beyond the basic rent), payable pursuant to its Schedule of Commissions, a true and correct copy of which is attached hereto as Exhibit "3."  Applicant and CBI request authority for such commissions to be paid upon entry into a leasing agreement or agreements with new tenants, from funds paid by the tenants at the inception of such leases, without further order of the Court.

//

1    **4.    The nature and terms of the retainer (i.e., nonrefundable**
2    **versus an advance against fees) held by the Professional are**
     **(specify):**

3    The Professional has not and will not receive a retainer.

4    **5.    The investigation of disinterestedness made by the**
5    **Professional prior to submitting this Statement consisted of**
     **(specify):**

6    The Professional cross-referenced the debtor's name against
     the firm's client data base.  In addition, the Professional
7    reviewed the debtor's creditor list.

8    **6.    The following is a complete description of all of the**
     **Professional's connections with the debtor, principals of**
9    **the debtor, insiders, the debtor's creditors, any other**
     **parties in interest, and their respective attorneys and**
10   **accountants, or any person employed in the Office of the**
     **United States Trustee (specify):**
11

12   As set forth above, the professional assisted the Debtor in
     leasing its approximately 17,000 square foot property at
     21040 Nordhoff Street in approximately July 2009.
13   Thereafter, CBI assisted the Debtor with property management
     issues, although we have not sought compensation for such
14   assistance, and CBI may continue to assist the debtor on
     such issues at its discretion, and we first listed the 21029
15   Osborne Street property in approximately September 2009.  To
     the best of my knowledge, the Professional does not
16   represent any of the debtor's creditors or other interested
     parties in any matter whether related to the debtor's case
17   or not.

18   **7.    The Professional is not a creditor, an equity security**
     **holder or an insider of the debtor, except as follows**
19   **(specify):**

20   None.

21   **8.    The Professional is not and was not an investment banker for**
     **any outstanding security of the debtor.**
22

23   **9.    The Professional has not been within three (3) years before**
     **the date of the filing of the petition herein, an investment**
     **banker for a security of the debtor, or an attorney for such**
24   **an investment banker in connection with the offer, sale or**
     **issuance of any security of the debtor.**
25

26   **10.   The Professional is not and was not, within two (2) years**
     **before the date of the filing of the petition herein, a**
     **director, officer or employee of the debtor or of any**
27   **investment banker for any security of the debtor.**

28   **11.   The Professional neither holds nor represents any interest**
     **materially adverse to the interest of the estate or of any**

6

1      class of creditors or equity security holders, by reason of
any direct or indirect relationship to, connection with, or
2      interest in, the debtor or an investment banker for any
security of the debtor, or for any other reason, except as
3      follows *(specify)*:

4      N/A.

5  12.  Name, address, and telephone number of the person signing
this Statement on behalf of the Professional and the
6      relationship of such person to the Professional *(specify)*:

7      David Katz, a Principal of CBI, is signing on the
Professional's behalf. Mr. Katz' address and phone number
8      are the same as that of the Professional (<u>see</u> Paragraph 1
above).

9

10  13.  The Professional is not a relative or employee of the United
States Trustee or a Bankruptcy Judge, except as follows
11      *(specify)*:

12      N/A.

13  14.  Total number of attached pages of supporting documentation:

14        __13__ (Resume, Listing Agreements & Schedule of Commissions,
Exh.'s "1"-"3").

15  15.  After conducting the investigation described in Paragraph 5
above, I declare under penalty of perjury under the laws of
16      the United States of America, that the foregoing is true and
correct except that I declare that Paragraphs 6 through 11
17      are stated on information and belief.

18

Executed on May __19__, 2010 at Woodland Hills, California.

19

20

21                    David Katz

22

23

24

25

26

27

28

7

# EXHIBIT 1



## FEATURED LISTINGS



**Industrial - For Sale or Lease**
3559 Old Conejo Road, Bldg. 2
Newbury Park, CA
Master Planned Business Park
8,808 sq. ft. (incl. 1,120 sq. ft. of office)
1 – 12X14 ground level door
Lease price - $8,720. per month, 3-5 year
lease
**Sale price - $1,805,640.00**
**Call David Katz (818) 316-0303**



**Beautiful New Warehouse – For Lease**
21107 Center Pointe Parkway
Santa Clarita, CA
12,000 sq ft (incl. 2000 sq ft of office)
Double truck high well
1 – 12X14 ground level loading door
**Lease rate - $9,060 per month (NNN), 3-5 year lease**
**Call Richard Sollman (818)316-0304**



**Industrial – Building for Sale or Lease**
12823 Foothill Boulevard
Sylmar, CA
19,020 sq. ft. (includes 10,443 sf of office)
**Sale Price - $3,100,000.**
Lease Price - $12,745 per month NNN, 5
year term
**Call Joel Katz (818) 316-0302**

## CUSTOMER TESTIMONIALS

# HOME

CBI Partners is a boutique firm which has been providing commercial real estate solutions including office, warehouse, manufacturing and land requirements to clients in the Los Angeles area since 1978.   The current owners, David Katz, Joel Katz and Richard Sollman took over the firm in 1994.  We have helped small and large companies including Familian Pipe and Supply, Atlantic Optical, Delta Tau, Jasin Company, The Video Store Shopper, Senior Flex Aerospace and Eltron.

Our Brokerage Team is composed of industry experts that represent landlords and tenants with all forms of commercial and industrial sales, leasing and property management needs. Our indepth knowledge of market areas and commercial lease structures enables us to negotiate the best terms possible for our clients. On occasion, our Brokerage Team also works with unlisted properties to acquire locations that are otherwise unobtainable by the general public. Our lender partnerships permit us to finance many transactions seamlessly.

Our full service Property Management Division provides unmatched support to ensure buildings stay leased and are properly managed to maximize tenant satisfaction and financial performance.

Our expertise is in the San Fernando Valley and Ventura Counties.  Additionally we handle assets on the Westside and in the South Bay.  Currently, CBI Partners' handle listings and manage property in Moorpark, Simi Valley, Chatsworth, Van Nuys, North Hollywood, Sun Valley, Valencia, Marina del Rey and Carson.

Contact us today and our team of professionals can begin to work for you tomorrow.

## LATEST NEWS

CoStar's Deals of Note for Wednesday

Lease Up (May 16-22): Major Relocations in Manhattan

In The Pipeline: CoStar Development and Construction News for May 16 - 22

Hanley Group Promotes McChesney

Actex Trading Buys Orange Industrial for $1.8M



### ABOUT US

**OUR TEAM**

**Our Team**

   David Katz
   Joel Katz
   Richard Sollman
   Donna Manders

**Our Reviews**

### MISSION STATEMENT

*Our Operating Philosophy, "We build trust by making and delivering on commitments."*

### ABOUT US

**OUR TEAM**

**DAVID KATZ**
**Principal**
Mr. Katz, co-owner of CBI Partners Inc., has been an industrial Real Estate Broker for over 20 years. He has consulted in many sales and lease transactions through out the San Fernando Valley and surrounding areas. He has worked with Institutional clients as well as Individual clients. During his 20 years of professional experience, he has sold and leased over 4 million square feet of Commercial properties.

In addition, Mr. Katz has an extensive background in Property Management.

Mr. Katz is the Broker for CBI PARTNERS, INC. since 1994. Prior to that he worked for CBI PROPERTIES for 6 years. He started his career in 1987 for SCHNEIDER COMMERCIAL REAL ESTATE.

Mr. Katz has a Bachelor Degree in Business Administration with the Option in Finance from Cal State University of Northridge. He has been a member of The American Industrial Real Estate Association for over 20 years.

A complete list of referrals and companies David has worked with is available upon request

**(818) 316-0303**
cbipartners2@aol.com

**JOEL KATZ**
**Principal**
Co-Owner of CBI Partners, Inc., Joel Katz has been in the Commercial Real Estate Management and Brokerage industry since 1984. In 1994 Joel Katz, David Katz and Richard Sollmon founded CBI Partners Inc., a full service commercial real estate brokerage and property management firm. Some of his clients include Atlantic Optical, Famillian Pipe and Supply, Fergueson Plumbing, The Coleman Trust, The Nahmias Trust, FB Productions and Sandhill Management.

Joel is a graduate of California State University Northridge with a Bachelor of Science in Business Administration with options in Finance and Real Estate.

In addition to commercial real estate sales and leasing, Joel is currently over seeing the management of industrial parks in North Hollywood, Chatsworth, Van Nuys and Canoga Park. In addition, he is overseeing the management of retail shopping centers in Central California. Joel is also the listing agent for the properties he manages.

A complete list of referrals and companies Joel has worked with is available upon request

**(818) 316-0302**
cbipartner@aol.com



⬥ CUSTOMER TESTIMONIALS

"Thank you very much for the excellent job you have done in securing new space for our operation. You were given short notice to help us find a new space, but you showed us several locations from which to choose and, in the end, made our move easier. We are now settled into a quality space that is perfect for its needs. We appreciate having the opportunity to work with you and CBI Partners. Your organization has proven to be dependable and thorough. I would recommend your services highly to others seeking quality space."

Nate Nahmias
Metropolitian Adjustment Insurance

## PROPERTY MANAGEMENT

**"We manage your property, save you time, money and headaches!"**

Our services include: Sales & Leasing, Tenant Screening, Marketing, Property Repositioning, Insurance, Tax Preparation, Lease Administration, Financing, Property Inspections, Tenant Improvements, Preventative Maintenance and Emergency Services.

We provide streamlined management for property owners that preserve asset value and enhance returns through cost savings and outstanding customer service. This benefits both owners and occupants, and builds long-term profitable tenant relationships. We are equipped to handle all property related issues such as leasing, tenant management and maintenance. Our full service management division handles all property related issues in the daily management of the following commercial properties;

- **Industrial** - single and multi-tenant buildings
- **Retail**
- **Office**
- **Automotive**

Our management division offers unsurpassed custom services including:

- **Maintenance** - We conduct detailed preventive maintenance inspections and custom engineered solutions for any tenant requirement. We have a proven and extensive list of tradesman including roofers, plumbers, electricians, painters, etc., gathered over 20 years of research and development.
- **Tenant Relations** - Day to day communications including problems/concerns, rent collections, rent increases, etc.
- **Insurance** - Counsel, guidance and recommendation for all insurance needs
- **Emergency Services** - 24 hour emergency service
- **Bookkeeping** - Full-service custom bookkeeping services based on individual needs
- **Legal Coordination** - rent collections, evictions
- **Leasing/Marketing** - Listings are submitted to the Industrial/Commercial Multiple, Co-Star and Loop-Net
- **Reduced Tenant Turnover** - Extensive background checks, detailed tenant screening, credit profiles, tenant surveys

CBI Partners Management Division prides itself on the ability to provide "full-service" support for all client needs.

Home      About Us      Property Management      Brokerage      Contact Us

**Main: (818) 961-1003 - Fax (818) 316-0307**

© 2008 CBIPartners.com, All Rights Reserved.

EXHIBIT A                                                                              Page 15





HOME PAGE CONTACT US

Partners, Inc.
Commercial Real Estate Services

HOME ABOUT US PROPERTY MANAGEMENT BROKERAGE CONTACT US

CUSTOMER TESTIMONIALS

"My company has over 20 tenants in two separate business parks. It is welcome to have CBI Partners dealing with all the problems and headaches inherent with managing these buildings. Having CBI Partners act as a buffer between me and my tenants as well as handling the day to day tasks brings me a great deal of "Peace of Mind".

John Basso
Managing Partner of West Coast, Inc.

## BROKERAGE

CBI Partners Inc. is a full service real estate services company specializing in Sales and Leasing of industrial, office, retail and investment properties. Our company is a unique boutique firm which has established itself as one of the most active commercial real estate companies operating throughout Southern California. CBI Partners is committed to integrity, superior effort and dedication to providing our clients the finest commercial real estate service. Employing the latest sales support and marketing strategies, it has earned a reputation for its aggressive, professional manner of marketing a variety of commercial properties throughout Southern California.

Home About Us Property Management Brokerage Contact Us

**Main: (818) 961-1003 - Fax (818) 316-0307**

© 2008 CBIPartners.com, All Rights Reserved.

HOME PAGE | CONTACT US

Partners, Inc.
Commercial Real Estate Services

HOME | ABOUT US | PROPERTY MANAGEMENT | BROKERAGE | CONTACT US

**CUSTOMER TESTIMONIALS**

"CBI Partners truly offer a full service, professional and extremely responsive management service. They offer a consistent excellent service for my portfolio of industrial and retail buildings. I highly recommend their company."

Dr. Karlheinz Falkenbach
Principal

## CONTACT US

**CBI Partners, Inc.**

21243 Ventura Boulevard, Suite 117
Woodland Hills, CA 91364

**Main Line (818) 961-1003**

Direct Fax: (818) 316-0307

**David Katz:** (818) 316-0303
cbipartners2@aol.com

**Richard Sollman:** (818) 316-0304
richard@cbi-partners.com

**Joel Katz:** (818) 316-0302
cbipartner@aol.com

**Donna Manders**: (310) 890-3881
djmanders@ca.rr.com

Home | About Us | Property Management | Brokerage | Contact Us

**Main: (818) 961-1003 - Fax (818) 316-0307**

© 2008 CBIPartners.com, All Rights Reserved.

# EXHIBIT 2



# Listing Extension, Modification or Withdrawal
### This form must be TYPED.

MULTIPLE Listing # : __1221220__   One Listing Number per Form

Square Footage: __14,350__

Address: __21029 Osborne St__ Unit/Lot/Suite No. _____

City: __Canoga Park   Ca__ Zip: __91304__

| | | |
|---|---|---|
| ☐ | *Expiration Date Extended to: (Must be signed **prior** to expiration) | __October 31, 2010__ |
| ☐ | *Extension of **Expired** Listing to: (If signed more than 30 days after expiration, this listing must be submitted for publication as a new listing, with a term of at least 90 days) | |
| ☐ | *Rental changed From $ _____ /mo. To $ _____ /mo. | |
| ☐ | *Sales Price $ _____ Changed to $ _____ | |
| ☐ | *Withdrawal of Listing Effective: _____ (Date) | |
| ☐ | *Change in Terms and/or Availability: _____ | |

* OWNER'S/ (SUB) LESSOR'S AND AGENT'S SIGNATURE REQUIRED

☐ **Other Changes for Publication
(Only Corrections of Address, Physical Specifications, Commission Code, etc. DO NOT enter extensions, price changes, off market, leased or sold in escrow information here.)

** THESE CHANGES REQUIRE AGENT'S SIGNATURE ONLY

I/We hereby authorize the above changes in terms of the original Listing Agreement, dated _____
All other terms and conditions are to remain unchanged. Receipt of a copy of this authorization is hereby acknowledged.

ALL CHANGES ARE TO BE SUBMITTED TO THE MULTIPLE WITHIN 10 BUSINESS DAYS FROM THE FOLLOWING
DATE OF SIGNATURE:

Dated: __April 20, 2010__

__CBE Partners__
Listing Firm

Agent __David Katz__

__Sharon Boya__
*Owner/ (Sub) Lessor

_____
*Owner/ (Sub) Lessor

MOD-11
(Rev. -5-03)

The MULTIPLE
A Service of the AIR Commercial Real Estate Association
700 South Flower Street, Suite 600  Los Angeles, California 90017
(213)687-8777  FAX (213) 229-8681

EXHIBIT A                          Page 19



# EXCLUSIVE RIGHT TO REPRESENT OWNER
# FOR SALE OR LEASE OF REAL PROPERTY
*(Non-Residential)*
### AIR COMMERCIAL REAL ESTATE ASSOCIATION

**1. BASIC PROVISIONS ("BASIC PROVISIONS").**

1.1 **Parties:** This agency Agreement (**"Agreement"**), dated for reference purposes only September 5, 2009
is made by and between CHATSWORTH INDUSTRIAL PARK, LP a California Limited Partnership
whose address is 21040 Nordhoff Street Chatsworth, Ca. 91311
telephone number (760) 625-4904 , Fax No. (   )
("**Owner**"), and CBI PARTNERS, INC.
whose address is 21243 Ventura Blvd. Ste.117 Woodland Hills, Ca. 91364
telephone number (818) 316-0303 , Fax No. (818) 316-0307
("**Agent**").

1.2 **Property/Premises:** The real property, or a portion thereof, which is the subject of this Agreement is commonly known by the street address
of 21029 Osborne Street
located in the City of Canoga Park , County of Los Angeles , State of California , and
generally described as (describe briefly the nature of the property): Approximately 14,350 square feet of an industrial
building zoned MR2,1.
("**Property**"). (See also Paragraph 3).

1.3 **Term of Agreement:** The term of this Agreement shall commence on September 5, 2009
and expire at 5:00 p.m. on March 4, 2010 , except as it may be extended ("**Term**"). (See also paragraph 4)

1.4 **Transaction:** The nature of the transaction concerning the Property for which Agent is employed ("**Transaction**") is
(check the appropriate box(es)):

(a) ☐ A sale for the following sale price and terms: _____

and other additional standard terms reasonably similar to those contained in the "STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTIONS
FOR THE PURCHASE OF REAL ESTATE" published by the AIR Commercial Real Estate Association ("AIR"), or for such other price and terms
agreeable to Owner;

(b) ☑ A lease or other tenancy for the following rent and terms: The monthly lease rate shall be $9,901.50
Gross ($.69 per square ft)

and other additional standard terms reasonably similar to those contained in the appropriate AIR lease form or for such other rent and terms agreeable
to Owner.

**2. EXCLUSIVE EMPLOYMENT AND RIGHTS.**

2.1 Owner hereby employs Agent as Owner's sole and exclusive agent to represent Owner in the Transaction and to find buyers or
lessees/tenants ("**lessees**"), as the case may be, for the Property. Agent shall use reasonably diligent efforts to find such buyers or lessees. All
negotiations and discussions for a Transaction shall be conducted by Agent on behalf of Owner. Owner shall promptly disclose and refer to Agent all
written or oral inquiries or contacts received by Owner from any source regarding a possible Transaction.

2.2 Owner authorizes Agent to:
(a) Place advertising signs on the Property;
(b) Place a lock box on the Property if vacant;
(c) Accept deposits from potential buyers or lessees; and
(d) Distribute information regarding the Property to participants in THE MULTIPLE ("**MULTIPLE**") of the AIR and/or any other appropriate
local commercial multiple listing service, to other brokers, and to potential buyers or lessees of the Property. Owner shall identify as "confidential" any
information provided to Agent that Owner considers confidential and does not want disclosed. All other information provided by Owner may be
disclosed as Agent may deem appropriate or necessary. After consummation of a Transaction, Agent may publicize the terms of such Transaction.

2.3 Agent shall comply with the Rules of Professional Conduct of the AIR, if a member of it not, the Rules of Professional Conduct of the Society
of Industrial and Office Realtors, and shall submit the Property to the MULTIPLE. Agent shall cooperate with participants in the MULTIPLE and may, at
Agent's election, cooperate with other real estate brokers (collectively "**Cooperating Broker**"). A Cooperating Broker may, as a third-party beneficiary
hereof, enforce the terms of this Agreement against Owner or Agent.

2.4 If the Transaction is a sale and Agent finds a prospective buyer for the Property, or if the Transaction is a lease and Agent finds a prospective
lessee for the Property, Owner hereby authorizes Agent also to represent and act as the agent for such buyer or lessee, and Owner consents to such
dual agency. If a Cooperating Broker finds such a buyer or lessee, then Agent shall act as agent for Owner only, the Cooperating Broker shall act as
agent for the buyer or lessee only, and the Cooperating Broker shall not be Owner's agent, even though the Cooperating Broker may share in the
commission paid by Owner to Agent. A Cooperating Broker shall not be an agent or subagent of Owner or Agent.

2.5 Owner agrees that Agent may, during the ordinary and normal course of marketing the Property, respond to inquiries on the Property by
showing and providing information on the Property, as well as on other competing properties, to prospective buyers and lessees and that such activities
may result in the payment of a commission to Agent by a third party.

**3. PROPERTY.**

3.1 The term "**Property**" shall include all of the following which are currently located on the Property and owned by Owner: permanent
improvements, electrical distribution systems (power panels, buss ducting, conduits, disconnects, lighting fixtures, etc.), telephone distribution systems
(lines, jacks and connections), space heaters, air conditioning equipment, air lines, carpets, window coverings, wall coverings, partitions, doors,
suspended ceilings, built-ins such as cabinets, and _____

(If there are no additional items write "NONE"). If the Transaction is a sale, the term "Property" shall additionally include, to the extent owned by Owner,
oil and mineral rights, leases and other agreements which will continue in effect after Owner's transfer of title to the Property.

PAGE 1 OF 3

INITIALS _____

INITIALS _____

©1997 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

EXHIBIT A

FORM OA-3-5/07E

3.2   Within five business days after the commencement of the Term hereof, Owner shall provide Agent with the following:
    (a)   A duly completed and fully executed Property Information Sheet on the most current form published by the AIR;
    (b)   Copies of all leases, subleases, rental agreements, option rights, rights of first refusal, rights of first offer, or other documents containing any other limitations on Owner's right, ability and capacity to consummate a Transaction, and
    (c)   If available to Owner, copies of building plans, and if the Transaction is a sale, title reports, boundary surveys, and existing notes and trust deeds which will continue to affect the Property after consummation of a sale.

3.3   Agent shall have no responsibility for maintenance, repair, replacement, operation, or security of the Property, all of which shall be Owner's sole responsibility.  Unless caused by Agent's gross negligence, Agent shall not be liable for any loss, damage, or injury to the person or property of Owner, any lessees of the Property, any buyer, prospective buyer, lessee, or prospective lessee, including, but not limited to, those which may occur as a result of Agent's use of a lock box.

**4.    EXTENSION OF TERM.**          If the Transaction is a sale, and a sale is not consummated for any reason after Owner accepts an offer to purchase the Property (**"Sale Agreement"**), then the expiration date of the Term of this Agreement shall be extended by the number of days that elapsed between the date Owner entered into the Sale Agreement and the later of the date on which the Sale Agreement is terminated or the date Owner is able to convey title to a new buyer free and clear of any claims by the prior buyer of the Property; provided, however, in no event shall the Term be so extended beyond one year from the date the Term would have otherwise expired.

**5.    COMMISSION.**

5.1   Owner shall pay Agent a commission ☐ in the amount of _____

☒   in accordance with the commission schedule attached hereto (**"Agreed Commission"**), for a Transaction, whether such Transaction is consummated as a result of the efforts of Agent, Owner, or some other person or entity. Agent shall also be entitled to the Agreed Commission if any of the Owner's representations and warranties described in paragraph 8 are shown to be false. Such Agreed Commission is payable:
    (a)   If the Transaction is a sale, (i) a buyer is procured who is ready, willing and able to buy the Property at the price and on the terms stated herein, or on any other price and terms agreeable to Owner; (ii) Owner breaches or repudiates any Sale Agreement, escrow instructions or other documents executed by Owner regarding the sale of the Property; (iii) the Property or any interest therein is voluntarily or involuntarily sold, conveyed, contributed or transferred; (iv) the Property or any interest therein is taken under the power of Eminent Domain or sold under threat of condemnation, or (v) if Owner is a partnership, joint venture, limited liability company, corporation, trust or other entity, and any interest in Owner is voluntarily or involuntarily sold, contributed, conveyed or transferred to another person or entity that, as of the date hereof, does not have any ownership interest in Owner;
    (b)   If the Transaction is a lease, (i) a lease of the Property, or a portion thereof is executed; or (ii) a lessee is procured who is ready, willing and able to lease the Property on the terms stated herein, or on any other rent and/or terms agreeable to Owner; or
    (c)   If Owner (i) removes or withdraws the Property from a Transaction or the market; (ii) acts as if the Property is not available for a Transaction; (iii) treats the Property as not available for a Transaction; (iv) breaches, terminates, cancels or repudiates this Agreement; (v) renders the Property unmarketable; or (vi) changes the status of the Property's title, leases, agreements, physical condition or other aspects thereof, which such change adversely impacts the value, use, desirability or marketability of the Property.

5.2   If the Transaction is a sale, the purchase agreement and/or escrow instructions to be entered into by and between Owner and a buyer of the Property shall provide that:
    (a)   Owner irrevocably instructs the escrow holder to pay from Owner's proceeds accruing to the account of Owner at the close of escrow the Agreed Commission to Agent;
    (b)   A contingency to the consummation of the sale shall be the payment of the Agreed Commission to Agent at or prior to close of the escrow; and
    (c)   No change shall be made by Owner or buyer with respect to the time of, amount of, or the conditions to payment of the Agreed Commission, without Agent's written consent.

**6.    ALTERNATIVE TRANSACTION.**   If the Transaction changes to any other transaction, including, but not limited to, a sale, exchange, option to buy, right of first refusal, ground lease, lease, sublease or assignment of lease (collectively **"Alternative Transaction"**), then Agent shall automatically be Owner's sole and exclusive Agent for such Alternative Transaction and represent Owner in such Alternative Transaction, under the terms and conditions of this Agreement.  If, during the Term hereof, an Alternative Transaction is entered into, then Owner shall pay Agent the Agreed Commission.

**7.    EXCLUDED AND REGISTERED PERSONS.**

7.1   Owner shall, within 5 business days after the date hereof, provide Agent, in writing, with the names of those persons or entities registered with Owner by any other broker under any prior agreement concerning the Property (**"Excluded Persons", see paragraph 7.5**).  Owner shall also specify for each Excluded Person the type of transaction the consummation of which during the Term of this Agreement entitles such other broker to any compensation (**"Excluded Transaction"**).  Agent may within 10 days of receiving such written list, either (a) accept the Excluded Persons and Excluded Transactions, (b) cancel this Agreement, or (c) attempt to renegotiate this portion of the Agreement with Owner. Once accepted by Agent, the written list shall automatically become an exhibit to this Agreement.  If Owner timely provides Agent with the names of the Excluded Persons and specifies the Excluded Transaction for each Excluded Person, then the Agreed Commission paid to Agent with respect to consummation of such an Excluded Transaction with an Excluded Person shall be limited as follows:  if such Excluded Transaction is concluded within the first 30 days of the commencement of the Term hereof, then Agent shall be paid a commission equal to the reasonable out-of-pocket expenses incurred by Agent in the marketing of the Property during said 30 days; or if such Excluded Transaction is concluded during the remainder of the Term hereof, then Agent shall be entitled to a commission equal to one-half of the Agreed Commission.  If the specified information concerning Excluded Persons and Transactions is not provided as set forth herein, then it shall be conclusively deemed that there are no Excluded Persons.

7.2   Agent shall, within 5 business days after the expiration of the Term hereof, provide Owner, in writing, with the name of those persons or entities with whom Agent either directly or through another broker had negotiated during the Term hereof (**"Registered Persons", see paragraph 7.5**), and specify the type of transaction of the Property for which such negotiations were conducted (**"Registered Transaction"**).  Those persons or entities who submitted written offers or letters of intent shall, however, automatically be deemed to be Registered Persons for the type of transaction which was the subject of such offer or letter of intent.  If Agent fails to timely notify Owner of the existence of any other Registered Persons, then it shall be conclusively deemed that there are no other Registered Persons.  A person or entity shall not be a Registered Person if Agent fails to timely specify a Registered Transaction for such person or entity.  If Agent wishes to register the client of a Cooperating Broker, Agent must obtain and submit to Owner written approval of such registration signed by such Cooperating Broker.  The parties are aware that the registration of certain individuals and/or entities might create a Dual Agency, and Owner hereby consents to any such Dual Agency.

7.3   If, within 180 days after the expiration of the Term hereof, Owner enters into a contract with a Registered Person for consummation of a Registered Transaction, then Owner shall, upon consummation of such Registered Transaction, pay Agent the Agreed Commission for the Registered Transaction.

7.4   If, within 180 days after the expiration of the Term hereof, Owner enters into another owner-agency or listing agreement with a broker other than Agent for any transaction concerning the Property, then Owner shall provide to Owner's new broker the names of the Registered Persons and the Registered Transaction for each Registered Person, and provide in such new agreement that the new broker shall not be entitled to receive any of the compensation payable to Agent hereunder for consummation of a Registered Transaction with a Registered Person.

7.5   In order to qualify to be an Excluded Person or a Registered Person the individual or entity must have; toured the Property, submitted a letter of interest or intent, and/or made an offer to buy or lease the Property.  In addition, Excluded Persons may only be registered by a broker who previously had a valid listing agreement covering the Property, and such broker may only register individuals and entities actually procured by such listing broker.

**8.    OWNER'S REPRESENTATIONS.**

Owner represents and warrants that:
    (a)   Each person executing this Agreement on behalf of Owner has the full right, power and authority to execute this Agreement as or on behalf of Owner;
    (b)   Owner owns the Property and/or has the full right, power and authority to execute this Agreement and to consummate a Transaction as provided herein, and to perform Owner's obligations hereunder;
    (c)   Neither Owner nor the Property is the subject of a bankruptcy, insolvency, probate or conservatorship proceeding;
    (d)   Owner has no notice or knowledge that any lessee or sublessee of the Property, if any, is the subject of a bankruptcy or insolvency proceeding;
    (e)   There are no effective, valid or enforceable option rights, rights of first refusal, rights of first offer or any other restrictions, impediments

PAGE 2 OF 3

EXHIBIT A

©1997 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                              FORM OA-3-6/07E

or limitations on Owner's right, ability and capacity to consummate a Transaction, except as disclosed in writing pursuant to Paragraph 3.2(b).

**9. OWNER'S ACKNOWLEDGMENTS.** Owner acknowledges that it has been advised by Agent to consult and retain experts to advise and represent it concerning the legal and tax effects of this Agreement and consummation of a Transaction or Alternative Transaction, as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements, equipment, soil, tenancies, title and environmental aspects. Agent shall have no obligation to investigate any such matters unless expressly otherwise agreed to in writing by Owner and Agent. Owner further acknowledges that in determining the financial soundness of any prospective buyer, lessee or security offered, Owner will rely solely upon Owner's own investigation, notwithstanding Agent's assistance in gathering such information.

**10. MISCELLANEOUS.**
10.1 This Agreement shall not be construed either for or against Owner or Agent, but shall be interpreted, construed and enforced in accordance with the mutual intent of the parties ascertainable from the language of this Agreement.
10.2 All payments by Owner to Agent shall be made in lawful United States currency. If Owner fails to pay to Agent any amount when due under this Agreement, then such amount shall bear interest at the rate of 15% per annum or the maximum rate allowed by law, whichever is less.
10.3 In the event of litigation or arbitration between or among Owner, Agent, a Cooperating Broker, a buyer, prospective buyer, lessee, or prospective lessee of the Property, or any of them, arising under or relating to this Agreement or the Property, the prevailing party shall be paid its attorney's fees and costs by the losing party. The term, "Prevailing Party" shall include, without limitation, one who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other party of its claim or defense. The attorney's fees award shall not be computed in accordance with any court fee schedule, but shall be in an amount to fully reimburse all attorney's fees reasonably incurred in good faith.
10.4 Owner agrees to indemnify, defend (with counsel reasonably acceptable to Agent), and hold Agent harmless from and against any claim or liability asserted against Agent as a result of the failure of Owner to make a full and complete disclosure pursuant to law and paragraph 3.2(a) or as a result of the fact that any of the representations made by Owner (see paragraph 8) were not true at the time that the Agreement was signed.
10.5 Owner hereby releases and relieves Agent, and waives Owner's entire right of recovery against Agent, for direct or consequential loss or damage arising out of or incident to the perils covered by insurance carried by Owner, whether or not due to the negligence of Agent.
10.6 In the event that the Transaction is not paid the Agreed Compensation provided for herein within thirty days of the date due, that Agent shall have a lien in the amount of such commission, and may record a notice of such lien, against the Property.
10.7 Owner agrees that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to the services to be performed by Agent pursuant to this Agreement may be brought against Agent more than one year after the expiration of the Term of this Agreement (see paragraph 1.3) and that the liability (including court costs and attorney's fees) of Agent with respect to any such lawsuit and/or legal proceeding shall not exceed any fee received by Agent pursuant to this Agreement; provided, however, that the foregoing limitation on liability shall not be applicable to any gross negligence or willful misconduct of Agent.

**11. ARBITRATION OF DISPUTES.**
11.1 ANY CONTROVERSY ARISING UNDER OR RELATING TO THIS AGREEMENT SHALL BE DETERMINED BY BINDING ARBITRATION TO BE CONDUCTED BY: ☒ THE AMERICAN ARBITRATION ASSOCIATION OR ☐ _____
USING THE COMMERCIAL RULES ESTABLISHED BY SUCH ORGANIZATION OR IF NONE THE AMERICAN ARBITRATION ASSOCIATION'S COMMERCIAL RULES. ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED.
11.2 NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.
11.3 WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

_____      _____
Owner's Initials                      Agent's Initials

11.4 THE PROVISIONS OF THE ABOVE ARBITRATION CLAUSE SHALL NOT BE BINDING ON EITHER PARTY UNLESS BOTH PARTIES HAVE PLACED THEIR INITIALS UNDER PARAGRAPH 11.3.

**12. Additional Provisions:** Additional provisions of this Agreement are set forth in the following blank lines or in an addendum attached hereto and made a part hereof consisting of paragraphs _____ through _____ (if there are no additional provisions write "NONE"):

**13. Disclosures Regarding The Nature of a Real Estate Agency Relationship.** When entering into an agreement with a real estate agent an Owner should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction.
   (i)      *Owner's Agent.* An Owner's agent may act as an agent for the Owner only. An Owner's agent or subagent has the following affirmative obligations: *To the Owner:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings. *To a potential buyer/lessee and the Owner:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.
   (ii)     *Agent Representing Both Parties.* A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both Parties in a transaction, but only with the knowledge and consent of the Parties. In a dual agency situation, the agent has the following affirmative obligations to both Parties: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Party. b. Other duties to the Owner as stated above in subparagraph (i). When representing both Parties, an agent may not without the express permission of the respective Party, disclose to the other Party that the Owner will accept rent/purchase price in an amount less than that indicated in the listing or that the buyer/lessee is willing to pay a higher rent/purchase price than that offered.

The above duties of the Agent do not relieve Owner from the responsibility to protect its own interests. Owner should carefully read all agreements to assure that they adequately express its understanding of the transaction.

| **"OWNER"** | **"AGENT"** |
|---|---|
| CHATSWORTH INDUSTRIAL PARK, LP a California | CBI PARTNERS, INC. |
| Limited Partnership | |
| By: X _____ | By: _____ _____ |
| Name Printed: Sharon Boyar | Name Printed: David Katz    Joel Katz |
| Title: President | Title: Agents |
| Date: September 5, 2009 | Date: 9-5-09 |
| | Agent DRE License #: 00924747 |

**NOTICE:** These forms are often modified to meet changing requirements of law and industry needs. Always write or call to make sure you are utilizing the most current form: AIR Commercial Real Estate Association, 800 W 6th Street, Suite 800, Los Angeles, CA 90017.

PAGE 3 OF 3

**AIR**
COMMERCIAL
REAL ESTATE
ASSOCIATION

## EXCLUSIVE RIGHT TO REPRESENT OWNER
## FOR SALE OR LEASE OF REAL PROPERTY
### *(Non-Residential)*
AIR COMMERCIAL REAL ESTATE ASSOCIATION

1. **BASIC PROVISIONS ("BASIC PROVISIONS").**
   1.1 **Parties:** This agency Agreement ("Agreement"), dated for reference purposes only May 3, 2010
is made by and between CHATSWORTH INDUSTRIAL PARK, LP a California Limited Partnership
whose address is 21040 Nordhoff Street Chatsworth, Ca. 91311
telephone number (760) 625-4904 , Fax No. (   )
("Owner"), and CBI PARTNERS, INC.
whose address is 21243 Ventura Blvd. Ste.117  Woodland Hills, Ca. 91364
telephone number (818) 316-0303 , Fax No. (818) 316-0307
("Agent").

   1.2 **Property/Premises:** The real property, or a portion thereof, which is the subject of this Agreement is commonly known by the street address
of 9035 Independence Ave.
located in the City of Canoga Park , County of Los Angeles , State of California , and
generally described as (describe briefly the nature of the property): Approximately 17,642 square feet of an industrial
building zoned MR2,1.
("Property"). (See also Paragraph 3).

   1.3 **Term of Agreement:** The term of this Agreement shall commence on May 3, 2010
and expire at 5:00 p.m. on November 28, 2010 , except as it may be extended ("Term"). (See also paragraph 4)

   1.4 **Transaction:** The nature of the transaction concerning the Property for which Agent is employed ("Transaction") is
(check the appropriate box(es)):
   (a) ☐ A sale for the following sale price and terms:

and other additional standard terms reasonably similar to those contained in the "STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTIONS
FOR THE PURCHASE OF REAL ESTATE" published by the AIR Commercial Real Estate Association ("AIR"), or for such other price and terms
agreeable to Owner.
   (b) ☑ A lease or other tenancy for the following rent and terms: *The monthly rent shall be*
*$ 12,350.00 triple net*

and other additional standard terms reasonably similar to those contained in the appropriate AIR lease form or for such other rent and terms agreeable
to Owner.

2. **EXCLUSIVE EMPLOYMENT AND RIGHTS.**
   2.1 Owner hereby employs Agent as Owner's sole and exclusive agent to represent Owner in the Transaction and to find buyers or
lessees/tenants ("lessees"), as the case may be, for the Property. Agent shall use reasonably diligent efforts to find such buyers or lessees. All
negotiations and discussions for a Transaction shall be conducted by Agent on behalf of Owner. Owner shall promptly disclose and refer to Agent all
written or oral inquiries or contacts received by Owner from any source regarding a possible Transaction.
   2.2 Owner authorizes Agent to:
   (a) Place advertising signs on the Property;
   (b) Place a lock box on the Property if vacant;
   (c) Accept deposits from potential buyers or lessees; and
   (d) Distribute information regarding the Property to participants in THE MULTIPLE ("MULTIPLE") of the AIR and/or any other appropriate
local commercial multiple listing service, to other brokers, and to potential buyers or lessees of the Property. Owner shall identify as "confidential" any
information provided to Agent that Owner considers confidential and does not want disclosed. All other information provided by Owner may be
disclosed as Agent may deem appropriate or necessary. After consummation of a Transaction, Agent may publicize the terms of such Transaction.
   2.3 Agent shall comply with the Rules of Professional Conduct of the AIR, if a member or if not, the Rules of Professional Conduct of the Society
of Industrial and Office Realtors, and shall submit the Property to the MULTIPLE. Agent shall cooperate with participants in the MULTIPLE and may, at
Agent's election, cooperate with other real estate brokers (collectively "**Cooperating Broker**"). A Cooperating Broker may, as a third-party beneficiary
hereof, enforce the terms of this Agreement against Owner or Agent.
   2.4 If the Transaction is a sale and Agent finds a prospective buyer for the Property, or if the Transaction is a lease and Agent finds a prospective
lessee for the Property, Owner hereby authorizes Agent also to represent and act as the agent for such buyer or lessee, and Owner consents to such
dual agency. If a Cooperating Broker finds such a buyer or lessee, then Agent shall act as agent for Owner only, the Cooperating Broker shall act as
agent for the buyer or lessee only, and the Cooperating Broker shall not be Owner's agent, even though the Cooperating Broker may share in the
commission paid by Owner to Agent. A Cooperating Broker shall not be an agent or subagent of Owner or Agent.
   2.5 Owner agrees that Agent may, during the ordinary and normal course of marketing the Property, respond to inquiries on the Property by
showing and providing information on the Property, as well as on other competing properties, to prospective buyers and lessees and that such activities
may result in the payment of a commission to Agent by a third party.

3. **PROPERTY.**
   3.1 The term "Property" shall include all of the following which are currently located on the Property and owned by Owner: permanent
improvements, electrical distribution systems (power panels, buss ducting, conduits, disconnects, lighting fixtures, etc.), telephone distribution systems
(lines, jacks and connections), space heaters, air conditioning equipment, air lines, carpets, window coverings, wall coverings, partitions, doors,
suspended ceilings, built-ins such as cabinets, and

(if there are no additional items write "NONE"). If the Transaction is a sale, the term "Property" shall additionally include, to the extent owned by Owner,
oil and mineral rights, leases and other agreements which will continue in effect after Owner's transfer of title to the Property.

PAGE 1 OF 3

INITIALS

INITIALS

3.2  Within five business days after the commencement of the Term hereof, Owner shall provide Agent with the following:

(a)  A duly completed and fully executed Property Information Sheet on the most current form published by the AIR;

(b)  Copies of all leases, subleases, rental agreements, option rights, rights of first refusal, rights of first offer, or other documents containing any other limitations on Owner's right, ability and capacity to consummate a Transaction, and

(c)  If available to Owner, copies of building plans, and if the Transaction is a sale, title reports, boundary surveys, and existing notes and trust deeds which will continue to affect the Property after consummation of a sale.

3.3  Agent shall have no responsibility for maintenance, repair, replacement, operation, or security of the Property, all of which shall be Owner's sole responsibility.  Unless caused by Agent's gross negligence, Agent shall not be liable for any loss, damage, or injury to the person or property of Owner, any lessees of the Property, any buyer, prospective buyer, lessee, or prospective lessee, including, but not limited to, those which may occur as a result of Agent's use of a lock box.

**4.    EXTENSION OF TERM.**        If the Transaction is a sale, and a sale is not consummated for any reason after Owner accepts an offer to purchase the Property (**"Sale Agreement"**), then the expiration date of the Term of this Agreement shall be extended by the number of days that elapsed between the date Owner entered into the Sale Agreement and the later of the date on which the Sale Agreement is terminated or the date Owner is able to convey title to a new buyer free and clear of any claims by the prior buyer of the Property; provided, however, in no event shall the Term be so extended beyond one year from the date the Term would have otherwise expired.

**5.    COMMISSION.**

5.1  Owner shall pay Agent a commission ☐ in the amount of    6%

☐ in accordance with the commission schedule attached hereto (**"Agreed Commission"**), for a Transaction, whether such Transaction is consummated as a result of the efforts of Agent, Owner, or some other person or entity. Agent shall also be entitled to the Agreed Commission if any of the Owner's representations and warranties described in paragraph 8 are shown to be false. Such Agreed Commission is payable:

(a)  If the Transaction is a sale, (i) a buyer is procured who is ready, willing and able to buy the Property at the price and on the terms stated herein, or on any other price and terms agreeable to Owner; (ii) Owner breaches or repudiates any Sale Agreement, escrow instructions or other documents executed by Owner regarding the sale of the Property; (iii) the Property or any interest therein is voluntarily or involuntarily sold, conveyed, contributed or transferred; (iv) the Property or any interest therein is taken under the power of Eminent Domain or sold under threat of condemnation, or (v) if Owner is a partnership, joint venture, limited liability company, corporation, trust or other entity, and any interest in Owner is voluntarily or involuntarily sold, contributed, conveyed or transferred to another person or entity that, as of the date hereof, does not have any ownership interest in Owner;

(b)  If the Transaction is a lease, (i) a lease of the Property, or a portion thereof is executed; or (ii) a lessee is procured who is ready, willing and able to lease the Property on the terms stated herein, or on any other rent and/or terms agreeable to Owner; or

(c)  If Owner (i) removes or withdraws the Property from a Transaction or the market; (ii) acts as if the Property is not available for a Transaction; (iii) treats the Property as not available for a Transaction; (iv) breaches, terminates, cancels or repudiates this Agreement; (v) renders the Property unmarketable; or (vi) changes the status of the Property's title, leases, agreements, physical condition or other aspects thereof, which such change adversely impacts the value, use, desirability or marketability of the Property.

5.2  If the Transaction is a sale, the purchase agreement and/or escrow instructions to be entered into by and between Owner and a buyer of the Property shall provide that:

(a)  Owner irrevocably instructs the escrow holder to pay from Owner's proceeds accruing to the account of Owner at the close of escrow the Agreed Commission to Agent;

(b)  A contingency to the consummation of the sale shall be the payment of the Agreed Commission to Agent at or prior to close of the escrow; and

(c)  No change shall be made by Owner or buyer with respect to the time of, amount of, or the conditions to payment of the Agreed Commission, without Agent's written consent.

**6.    ALTERNATIVE TRANSACTION.**  If the Transaction changes to any other transaction, including, but not limited to, a sale, exchange, option to buy, right of first refusal, ground lease, lease, sublease or assignment of lease (collectively **"Alternative Transaction"**), then Agent shall automatically be Owner's sole and exclusive Agent for such Alternative Transaction and represent Owner in such Alternative Transaction, under the terms and conditions of this Agreement. If, during the Term hereof, an Alternative Transaction is entered into, then Owner shall pay Agent the Agreed Commission.

**7.    EXCLUDED AND REGISTERED PERSONS.**

7.1  Owner shall, within 5 business days after the date hereof, provide Agent, in writing, with the names of those persons or entities registered with Owner by any other broker under any prior agreement concerning the Property (**"Excluded Persons"**, see paragraph 7.5).  Owner shall also specify for each Excluded Person the type of transaction the consummation of which during the Term of this Agreement entitles such other broker to any compensation (**"Excluded Transactions"**).  Agent may, within 10 days of receiving such written list, either (a) accept the Excluded Persons and Excluded Transactions, (b) cancel this Agreement, or (c) attempt to renegotiate this portion of the Agreement with Owner. Once accepted by Agent, the written list shall automatically become an exhibit to this Agreement. If Owner timely provides Agent with the names of the Excluded Persons and specifies the Excluded Transaction for each Excluded Person, then the Agreed Commission paid to Agent with respect to consummation of such an Excluded Transaction with an Excluded Person shall be limited as follows:  if such Excluded Transaction is concluded within the first 30 days of the commencement of the Term hereof, Agent shall be paid a commission equal to the reasonable out-of-pocket expenses incurred by Agent in the marketing of the Property during said 30 days; or if such Excluded Transaction is concluded during the remainder of the Term hereof, then Agent shall be entitled to a commission equal to one-half of the Agreed Commission. If the specified information concerning Excluded Persons and Transactions is not provided as set forth herein, then it shall be conclusively deemed that there are no Excluded Persons.

7.2  Agent shall, within 5 business days after the expiration of the Term hereof, provide Owner, in writing, with the name of those persons or entities with whom Agent either directly or through another broker had negotiated during the Term (**"Registered Persons"**, see paragraph 7.5), and specify the type of transaction of the Property for which such negotiations were conducted (**"Registered Transaction"**).  Those persons or entities who submitted written offers or letters of intent shall, however, automatically be deemed to be Registered Persons for the type of transaction which was the subject of such offer or letter of intent.  If Agent fails to timely notify Owner of the existence of any other Registered Persons, then it shall be conclusively deemed that there are no other Registered Persons. A person or entity shall not be a Registered Person if Agent fails to timely specify a Registered Transaction for such person or entity. If Agent wishes to register the client of a Cooperating Broker, Agent must obtain and submit to Owner written approval of such registration signed by such Cooperating Broker. The parties are aware that the registration of certain individuals and/or entities might create a Dual Agency, and Owner hereby consents to any such Dual Agency.

7.3  If, within 180 days after the expiration of the Term hereof, Owner enters into a contract with a Registered Person for consummation of a Registered Transaction, then Owner shall, upon consummation of such Registered Transaction, pay Agent the Agreed Commission for the Registered Transaction.

7.4  If, within 180 days after the expiration of the Term hereof, Owner enters into another owner-agency or listing agreement with a broker other than Agent for any transaction concerning the Property, then Owner shall provide to Owner's new broker the names of the Registered Persons and the Registered Transaction for each Registered Person, and provide in such new agreement that the new broker shall not be entitled to receive any of the compensation payable to Agent hereunder for consummation of a Registered Transaction with a Registered Person.

7.5  In order to qualify to be an Excluded Person or a Registered Person the individual or entity must have toured the Property, submitted a letter of interest or intent, and/or made an offer to buy or lease the Property. In addition, Excluded Persons may only be registered by a broker who previously had a valid listing agreement covering the Property, and such broker may only register individuals and entities actually procured by such listing broker.

**8.    OWNER'S REPRESENTATIONS.**

Owner represents and warrants that:

(a)  Each person executing this Agreement on behalf of Owner has the full right, power and authority to execute this Agreement as or on behalf of Owner;

(b)  Owner owns the Property and/or has the full right, power and authority to execute this Agreement and to consummate a Transaction as provided herein, and to perform Owner's obligations hereunder;

(c)  Neither Owner nor the Property is the subject of a bankruptcy, insolvency, probate or conservatorship proceeding;

(d)  Owner has no notice or knowledge that any lessee or sublessee of the Property, if any, is the subject of a bankruptcy or insolvency proceeding;

(e)  There are no effective, valid or enforceable option rights, rights of first refusal, rights of first offer or any other restrictions, impediments

PAGE 2 OF 3

©1997 - AIR COMMERCIAL REAL ESTATE ASSOCIATION        EXHIBIT A                    FORM OA-3-6/97E

or limitations on Owner's right, ability and capacity to consummate a Transaction, except as disclosed in writing pursuant to Paragraph 3.2(b).

**9. OWNER'S ACKNOWLEDGMENTS.** Owner acknowledges that it has been advised by Agent to consult and retain experts to advise and represent it concerning the legal and tax effects of this Agreement and consummation of a Transaction or Alternative Transaction, as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements, equipment, soil, tenancies, title and environmental aspects. Agent shall have no obligation to investigate any such matters unless expressly otherwise agreed to in writing by Owner and Agent. Owner further acknowledges that in determining the financial soundness of any prospective buyer, lessee or security offered, Owner will rely solely upon Owner's own investigation, notwithstanding Agent's assistance in gathering such information.

**10. MISCELLANEOUS.**
10.1 This Agreement shall not be construed either for or against Owner or Agent, but shall be interpreted, construed and enforced in accordance with the mutual intent of the parties ascertainable from the language of this Agreement.
10.2 All payments by Owner to Agent shall be made in lawful United States currency. If Owner fails to pay to Agent any amount when due under this Agreement, then such amount shall bear interest at the rate of 15% per annum or the maximum rate allowed by law, whichever is less.
10.3 In the event of litigation or arbitration between or among Owner, Agent, a Cooperating Broker, a buyer, prospective buyer, lessee, or prospective lessee of the Property, or any of them, arising under or relating to this Agreement or the Property, the prevailing party shall be paid its attorney's fees and costs by the losing party. The term, "Prevailing Party" shall include, without limitation, one who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other party of its claim or defense. The attorney's fees award shall not be computed in accordance with any court fee schedule, but shall be in an amount to fully reimburse all attorney's fees reasonably incurred in good faith.
10.4 Owner agrees to indemnify, defend (with counsel reasonably acceptable to Agent), and hold Agent harmless from and against any claim or liability asserted against Agent as a result of the failure of Owner to make a full and complete disclosure pursuant to law and paragraph 3.2(a) or as a result of the fact that any of the representations made by Owner (see paragraph 8) were not true at the time that this Agreement was signed.
10.5 Owner hereby releases and relieves Agent, and waives Owner's entire right of recovery against Agent, for direct or consequential loss or damage arising out of or incident to the perils covered by insurance carried by Owner, whether or not due to the negligence of Agent.
10.6 In the event that the Transaction is not an outright sale, Owner agrees that if Agent is not paid the Agreed Commission provided for herein within thirty days of the date due, that Agent shall have a lien in the amount of such commission, and may record a notice of such lien, against the Property.
10.7 Owner agrees that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to the services to be performed by Agent pursuant to this Agreement may be brought against Agent more than one year after the expiration of the Term of this Agreement (see paragraph 1.3) and that the liability (including court costs and attorney's fees) of Agent with respect to any such lawsuit and/or legal proceeding shall not exceed any fee received by Agent pursuant to this Agreement; provided, however, that the foregoing limitation on liability shall not be applicable to any gross negligence or willful misconduct of Agent.

**11. ARBITRATION OF DISPUTES.**
11.1 ANY CONTROVERSY ARISING UNDER OR RELATING TO THIS AGREEMENT SHALL BE DETERMINED BY BINDING ARBITRATION TO BE CONDUCTED BY: ☒ THE AMERICAN ARBITRATION ASSOCIATION OR ☐
USING THE COMMERCIAL RULES ESTABLISHED BY SUCH ORGANIZATION OR IF NONE THE AMERICAN ARBITRATION ASSOCIATION'S COMMERCIAL RULES.  ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED
11.2 NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL.  BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION.  IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE.  YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.
11.3 WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

_____  _____
Owner's Initials          Agent's Initials

11.4 THE PROVISIONS OF THE ABOVE ARBITRATION CLAUSE SHALL NOT BE BINDING ON EITHER PARTY UNLESS BOTH PARTIES HAVE PLACED THEIR INITIALS UNDER PARAGRAPH 11.3.

**12. Additional Provisions:** Additional provisions of this Agreement are set forth in the following blank lines or in an addendum attached hereto and made a part hereof consisting of paragraphs _____ through _____ (if there are no additional provisions write "NONE"):

**13. Disclosures Regarding The Nature of a Real Estate Agency Relationship.** When entering into an agreement with a real estate agent an Owner should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction.
   (i)     *Owner's Agent.* An Owner's agent may act as an agent for the Owner only. An Owner's agent or subagent has the following affirmative obligations: *To the Owner:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings. *To a potential buyer/lessee and the Owner:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.
   (ii)    *Agent Representing Both Parties.* A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both Parties in a transaction, but only with the knowledge and consent of the Parties. In a dual agency situation, the agent has the following affirmative obligations to both Parties: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Party. b. Other duties to the Owner as stated above in subparagraph (i). When representing both Parties, an agent may not without the express permission of the respective Party. disclose to the other Party that the Owner will accept rent/purchase price in an amount less than that indicated in the listing or that the buyer/lessee is willing to pay a higher rent/purchase price than that offered.

The above duties of the Agent do not relieve Owner from the responsibility to protect its own interests. Owner should carefully read all agreements to assure that they adequately express its understanding of the transaction.

| "OWNER" | "AGENT" |
|---|---|
| CHATSWORTH INDUSTRIAL PARK,LP a California | CBI PARTNERS, INC. |
| Limited Partnership | |
| By: Sharon Boyer | By: (signature) (signature) |
| Name Printed: Sharon Boyar | Name Printed: David Katz    Joel Katz |
| Title: President | Title: Agents |
| Date: May 3, 2010 | Date: May 3, 2010 |
| | Agent DRE License #: 00924747 |

NOTICE: These forms are often modified to meet changing requirements of law and industry needs. Always write or call to make sure you are utilizing the most current form: AIR Commercial Real Estate Association, 800 W 6th Street, Suite 800, Los Angeles, CA 90017.

_____
INITIALS

PAGE 3 OF 3

_____
INITIALS

©1997 - AIR COMMERCIAL REAL ESTATE ASSOCIATION       EXHIBIT A       FORM OA-3-8/07E

# EXHIBIT 3



# SCHEDULE OF COMMISSIONS

**LEASE COMMISSIONS** are due and payable upon execution of the Lease or Sublease according to the following schedule:

| NET LEASES | GROSS LEASES |
|---|---|
| 8% of total rental for 1st year, plus | ~~10%~~ of total rental for 1st year, plus |
| 7% of total rental for 2nd year, plus | 6% of total rental for 2nd year, plus |
| 6% of total rental for 3rd year, plus | ~~9%~~ of total rental for 3rd year, plus |
| 5% of total rental for 4th year, plus | ~~10%~~ of total rental for 4th year, plus |
| 4% of total rental for 5th year, plus | ~~8%~~ of total rental for 5th year, plus |
| 4% of total rental for balance of term | 3% of total rental for balance of term |
| **Average for 5-year lease is 6%** | **Average for 5-year lease is 6%** |

2. **MONTH-TO-MONTH LEASES:** The commission due on a Lease less than twelve months will be 50% of the first month's rental, plus 15% per month thereafter. In the event the tenant subsequently executes a Lease for a period extending beyond the initial twelve-month occupancy, then a leasing commission will be paid according to the schedule herein contained.

3. **LEASE RENEWALS OR EXTENSIONS OR EXPANSIONS:** Should the lease term be extended, the lease renewed or a new lease entered into between Landlord and Tenant upon expiration or termination of the original lease, or should the Tenant lease additional space from Landlord, then the regular leasing commission as computed from this Schedule shall be paid to the Broker at the time of such extension, renewal, new lease and/or leasing additional space, using the commission rates applicable as if the initial term of the lease included such extension, renewal or new lease, or the premises originally leased had included such additional space.

4. **OPTIONS TO PURCHASE:** Should the Tenant, his successors, nominee or assignee, purchase or enter into a contract to purchase the leased property or any portion thereof during the term of the lease, any renewals or extensions thereof or within 180 days after the expiration of the lease or of any renewals or extensions of the lease, then a sales commission shall be paid at such time as the purchase is consummated. Said sales commission shall be according to this Schedule, less previously paid lease commissions on any portion of the lease term extending beyond consummation of the purchase, but in no event less than the previously paid lease commission.

5. **ADDITIONAL PAYMENTS:** Commission shall be paid for any rental increases paid by tenant for any reason, such as, but not limited to leasehold improvement construction or rent escalation due to cost of living increases. Such additional commission shall be due in full at time such rental increases takes effect during the lease term or extensions.

6. **PAYMENT OF SALES COMMISSIONS:** A six (6%) percent commission shall be paid at the close of escrow or, if there is no escrow, then upon execution and delivery of the deed or other conveyance. If the transaction calls for a contract for deed, then the commission is payable upon execution of said contract. In the event of an exchange or if a joint venture agreement is effected in lieu of a sale, then the commission shall be calculated on the basis of the fair market value of the property which is being exchanged or which is conveyed to the new joint partners and the commission in these events shall be paid upon execution of the deed or upon execution of the joint venture agreement.

The undersigned hereby acknowledges receipt of a copy of this Schedule and agrees to pay a commission(s) as provided herein. This Agreement shall be binding upon the heirs, successors and assigns of the undersigned.

ACCEPTED:                                          AGREED:
CBI Partners, Inc. X _David Katz_  _Joel Katz_     by: X _Sharon Boyar_

# EXHIBIT 4

1 Joseph E. Caceres, Esq. (SBN 169164)
Charles Shamash, Esq. (SBN 178110)
2 Caceres & Shamash, LLP
8200 Wilshire Boulevard, Suite 400
3 Beverly Hills, California 90211
Telephone: (310) 205-3400
4 Facsimile: (310) 878-8308

5 Reorganization Counsel for Debtor and
Debtor-In-Possession
6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                    SAN FERNANDO VALLEY DIVISION

11

12 In re                          ) Case No. 1:09-bk-27368-MT
                                  )
13 CHATSWORTH INDUSTRIAL          ) Chapter 11
PARK, LP,                         )
14                                ) **NOTICE OF**:
                                  )
15                                ) APPLICATION OF DEBTOR AND
                                  ) DEBTOR-IN-POSSESSION TO EMPLOY
16                                ) CBI PARTNERS, INC. AS LEASING
                                  ) BROKER FOR THE ESTATE
17                                )
                                  ) [11 U.S.C. § 327(a);
18                                ) FED.R.BANKR.PROC. 2014; LOCAL
                                  ) BANKRUPTCY RULES 2014-1 &
19           Debtor and Debtor-   ) 9013-1(o)]
             In-Possession.       )
20                                ) [No Hearing Required]
   _____ )
21

22 **TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY**

23 **JUDGE, THE UNITED STATES TRUSTEE, AND OTHER INTERESTED PARTIES:**

24      **PLEASE TAKE NOTICE** that CHATSWORTH INDUSTRIAL PARK, LP

25 ("Applicant," "Debtor," or "Debtor-in Possession"), is submitting

26 its Application to the Bankruptcy Court for authority to employ

27 CBI PARTNERS, INC. ("CBI") as Leasing Broker for the estate,

28 concurrently with the filing and service of this Notice, under 11

1  U.S.C. § 327(a).  As more fully set forth in the Application:

2      1.    Applicant proposes to employ CBI as Leasing Broker for

3  the estate under 11 U.S.C. § 327(a), for purposes of leasing

4  vacant units located at 21029 Osborne Street and 9035

5  Independence Avenue., Canoga Park, CA.

6      2.    The basis for the selection of CBI is that CBI and its

7  agents handling this matter, Principals David Katz and Joel Katz,

8  have extensive experience in commercial and industrial real

9  estate matters of this nature and Applicant believes that CBI is

10 well qualified to represent the estate as leasing broker in this

11 proceeding.  Moreover, CBI is familiar with the Debtor's

12 property, having assisted the Debtor in leasing its approximately

13 17,000 square foot property at 21040 Nordhoff Street in

14 approximately July 2009.  Thereafter, CBI assisted the Debtor

15 with property management issues, although it has not sought

16 compensation for such assistance, and first listed the 21029

17 Osborne Street property in approximately September 2009.  The

18 qualifications of CBI and its Principals handling this engagement

19 are set forth in the resumes attached as Exhibit "1" to the

20 Application.

21     3.    Applicant wishes to employ CBI for the leasing of the

22 above properties pursuant to the terms and conditions of the two

23 (2) listing agreements attached to the Application as Exhibit

24 "2," dated April 20, 2010 (as extended from the initial listing

25 agreement dated September 5, 2009), and May 3, 2010.  As set

26 forth therein, CBI has agreed to a total commission of 6% of

27 rents (i.e., not to apply to any CAM or other charges that may be

28 payable to the Debtor beyond the basic rent), payable pursuant to

2

1 | the Schedule of Commissions attached to the Application as

2 | Exhibit "3."  Applicant requests authority to pay such

3 | commissions upon entry into a leasing agreement or agreements

4 | with new tenants, from funds paid by the tenants at the inception

5 | of and following entry into such leases, without further order of

6 | the Court.

7 |     4.    The Listing Agreements reflect initial (asking) lease

8 | rates of $9,901.50 (21029 Osborne St.) and $12,350.00 (9035

9 | Independence Ave.), respectively.  CBI and the Debtor request

10 | authority to reduce or increase these rental rates, and/or extend

11 | the term of either or both Listing Agreements, by mutual

12 | agreement without further court order, should they deem it

13 | advisable during the term of the listings.

14 |     5.    To the best of the Applicant's knowledge, CBI and its

15 | agents handling this matter have no conflict of interest and are

16 | a "disinterested persons" as defined by 11 U.S.C. Section 101(14)

17 | with respect to this case, as more fully set forth in the

18 | attached Declaration of Disinterestedness for Employment of

19 | Professional Person Under F.R.B.P. 2014 (drafted in conformity

20 | with the Court's Form F 2014-1).

21 |     6.    This Notice is being provided in accordance with Local

22 | Bankruptcy Rule 2014-1(b)(2).

23 |     **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-

24 | 1(f)(1) requires that any response and request for hearing on the

25 | Application must be filed with the Court and served on the

26 | Debtor, Debtor's General Counsel, Debtor's [Proposed] Leasing

27 | Broker, and the United States Trustee no later than fourteen (14)

28 | days from the date of service of this Notice.  If you wish to

1  receive a copy of the Application you may contact Joseph E.

2  Caceres, Esq. or Charles Shamash, Esq. of C & S at the address,

3  phone, and fax numbers set forth in the upper left hand corner of

4  the face page of this Notice.

5

6  DATED: May 19, 2010              CACERES & SHAMASH, LLP

7
                                        /s/ Joseph E. Caceres
8                                   By:_____
                                    Joseph E. Caceres, Esq.
9                                   Charles Shamash, Esq.
                                    Reorganization Counsel for Debtor
10                                  and Debtor-in-Possession

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 8200 Wilshire Blvd., Suite 400, Beverly Hills, CA 90211

The foregoing document described ___Notice of Application of Debtor and Debtor-in-Possession to Employ CBI Partners, Inc. as Leasing Broker for the Estate__ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ___05/21/10___ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Katherine Bunker    kate.bunker@usdoj.gov
Joseph Caceres    jec@locs.com, generalbox@locs.com
Sandi M Colabianchi    scolabianchi@gordonrees.com
Charles Shamash    cs@locs.com, generalbox@locs.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On ___05/21/10___ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

*All on attached list served via U.S. Mail, with the exception of anyone served via NEF as set forth above*

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ___05/21/10___ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**Personal Delivery:**
The Honorable Maureen A. Tighe, U.S. Bankruptcy Judge
United States Bankruptcy Court
21041 Burbank Blvd., Bin on 1st Floor outside entry to Clerk's Office
Woodland Hills, CA 91367-6606

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| 05/21/10 | Joseph E. Caceres | /s/ Joseph E. Caceres |
| *Date* | *Type Name* | *Signature* |

Label Matrix for local noticing
0973-1
Case 1:09-bk-27368-MT
Central District Of California
San Fernando Valley
Fri May 21 11:17:53 PDT 2010

CSFB 2003-C4 Nordhoff Limited Partnership
c/o Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111-3367

Chatsworth Industrial Park, LP
5101 Vanalden Avenue
Tarzana, CA 91356-3907

San Fernando Valley Division
21041 Burbank Blvd,
Woodland Hills, CA 91367-6606

CBI Partners, Inc.
21243 Ventura Boulevard, Ste 117
Woodland Hills, CA 91364-2100

CSFB 2003-C4 Nordhoff Limited Partnership
c/o Gordon & Rees LLP
275 Battery Street, Ste. 2000
San Francisco, CA 94111-3367

Eresidentagent, Inc.
Agent For Jalmar Properties, Inc.
1801 Century Park East, Ste 1250
Los Angeles, CA 90067-2341

Franchise Tax Board
P.O. Box 1673
Sacramento, CA 95812-1673

Franchise Tax Board Bankruptcy Unit
P.O. Box 2952
Sacramento, CA 95812-2952

Franchise Tax Board Chief Counsel S
P.O. Box 1720 MS: A-260
Rancho Cordova, CA 95741-1720

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Ira Benjamin Katz, Esq.
1901 Avenue Of The Stars, Ste 1900
Los Angeles, CA 90067-6020

JOHNSON CONTROLS INC
ATTN: Brian Wilderman M-72
507 E Michigan St
Milwaukee WI 53202-5211

Jalmar Properties, Inc.
12121 Wilshire Boulevard, Ste 301
Los Angeles, CA 90025-1166

Key Bank
Bankruptcy Department
4910 Tiebeman Road 6th Floor
Brooklyn, OH 44144-2338

Key Bank Real Estate Capital
P.O. Box 145404
Cincinnati, OH 45250-5404

KeyBank
911 Main Street, Ste 1500
Kansas City, MO 64105-5344

Law Offices of Ira Benjamin Katz, APC
1901 Avenue of the stars, Ste. 1900
Los Angeles, CA 90067-6020

Los Angeles County Tax Collector
P.O. Box 54018
Los Angeles, CA 90054-0018

Mitchell J Ezer Esq
Ezer Williamson LLP
21515 Hawthorne bl Ste 1150
Torrance CA 90503-6516

Mitchell J. Ezer, Esq.
Ezer Williamson LLP
21515 Hawthorne Boulevard, Ste 1150
Torrance, CA 90503-6516

Piken Company
12725 Ventura Boulevard, Ste A
Studio City, CA 91604-2437

Sandi M. Colabianchi, Esq.
Gordon & Rees LLP
275 Battery Stret, Suite 2000
San Francisco, CA 94111-3361

TAXING AUTHORITY CONSULTING SVCS PC
BANKRUPTCY COUNSEL
POB 2156
Richmond VA 23218-2156

THE PIKEN CO
12725 VENTURA BLVD STE A
STUDIO CITY CA 91604-2437

US Attorney Civil Process Clerk
300 N. Los Angeles Rm 7516
Los Angeles, CA 90012-3341

USDOJ Attorney General
P.O. Box 683 Ben Franklin Station
Washington, DC 20044-0683

United States Trustee (SV)
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367-6550

Charles Shamash
Caceres & Shamash LLP
8200 Wilshire Blvd Ste 400
Beverly Hills, CA 90211-2315

Joseph Caceres
Caceres & Shamash LLP
8200 Wilshire Blvd Ste 400
Beverly Hills, CA 90211-2315

EXHIBIT A

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19144




The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Caceres & Shamash, LLP                    (u)Jalmar Properties Inc              (u)Sanders Accountancy Corp.




End of Label Matrix
Mailable recipients    29
Bypassed recipients     3
Total                  32

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 8200 Wilshire Blvd., Suite 400, Beverly Hills, CA 90211

The foregoing document described ___Application of Debtor and Debtor-in-Possession to Employ CBI Partners, Inc. as Leasing Broker for the Estate; Declaration of David Katz in Support Thereof___ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ___05/21/10___ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Katherine Bunker    kate.bunker@usdoj.gov
Joseph Caceres    jec@locs.com, generalbox@locs.com
Sandi M Colabianchi    scolabianchi@gordonrees.com
Charles Shamash    cs@locs.com, generalbox@locs.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ___05/21/10___ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**Personal Delivery:**
The Honorable Maureen A. Tighe, U.S. Bankruptcy Judge
United States Bankruptcy Court
21041 Burbank Blvd., Bin on 1st Floor outside entry to Clerk's Office
Woodland Hills, CA 91367-6606

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 05/21/10 | Joseph E. Caceres | /s/ Joseph E. Caceres |
|----------|-------------------|------------------------|
| *Date* | *Type Name* | *Signature* |

Joseph E. Caceres, Esq. (SBN 169164)
Charles Shamash, Esq. (SBN 178110)
Caceres & Shamash, LLP
8200 Wilshire Blvd., Suite 400
Beverly Hills, CA 90211
Tel: (310) 205-3400
Fax: (310) 878-8308

FILED & ENTERED

JUN 10 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY natan       DEPUTY CLERK

Attorneys for Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>CHATSWORTH INDUSTRIAL PARK, LP,<br><br><br><br><br><br><br><br><br><br><br><br>Debtor(s). | Case No. 1:09-bk-27368-MT<br><br>Chapter 11<br><br>**[PROPOSED] ORDER GRANTING APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION TO EMPLOY CBI PARTNERS, INC. AS LEASING BROKER FOR THE ESTATE**<br><br>[11 U.S.C. § 327(a); FED.R.BANKR. PROC. 2014; LOCAL BANKRUPTCY RULES 2014-1 & 9013-1(o)]<br><br>[No Hearing Set] |

Having considered CHATSWORTH INDUSTRIAL PARK, LP's Application to employ

CBI PARTNERS, INC. as Leasing Broker for the Estate, together with the Declaration of

Disinterestedness for Employment of Professional Person Under F.R.B.P. 2014 attached thereto,

and having considered the concurrently filed Declaration Re: Entry of Order Without Hearing

setting forth the lack of any objections to the Application, and the Court being satisfied that CBI

PARTNERS, INC. represents no interest adverse to the estate herein and is a disinterested person

as that term is defined in 11 U.S.C. § 101(14), and it appearing that employment of CBI

PARTNERS, INC.  would be in the best interest of the bankruptcy estate,

**IT IS HEREBY ORDERED** that the Debtor and Debtor-in-Possession is authorized to

employ CBI PARTNERS, INC. as Leasing Broker for the Estate in accordance with the terms of

the Application, with compensation to be paid as set forth therein.

<div align="center">###</div>

DATED: June 10, 2010

_____
United States Bankruptcy Judge

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 8200 Wilshire Blvd., Suite 400, Beverly Hills, CA 90211

The foregoing document described   [Proposed] Order Granting Application of Debtor and Debtor in Possession to Employ CBI Partners, Inc. as Leasing Broker for the Estate   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ____06/07/10**_____I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

***\*\*Note – This Proposed Order served to the following NEF service list via attachment to "Declaration re Entry of Order Without Hearing" to Which this Order Pertains:***
Katherine Bunker     kate.bunker@usdoj.gov
Joseph Caceres    jec@locs.com, generalbox@locs.com
Sandi M Colabianchi    scolabianchi@gordonrees.com
Charles Shamash     cs@locs.com, generalbox@locs.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge __will be__ completed no later than 24 hours after the document is filed.*

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____06/07/10____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge __will be__ completed no later than 24 hours after the document is filed.*

**Personal Delivery:**
The Honorable Maureen A. Tighe, U.S. Bankruptcy Judge
United States Bankruptcy Court
21041 Burbank Blvd., Bin on 1st Floor outside entry to Clerk's Office
Woodland Hills, CA 91367-6606

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| 06/07/10 | Joseph E. Caceres | /s/ Joseph E. Caceres |

| _Date_ | _Type Name_ | _Signature_ |
| --- | --- | --- |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

– 4 –
EXHIBIT B

CHATSWORTH INDUSTRIAL PARK, LP
Ch. 11 Case No. 1:09-bk-27368-MT

**NOTE TO USERS OF THIS FORM**:

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*)  Order Granting Application of Debtor and Debtor in Possession to Employ CBI Partners, Inc. as Leasing Broker for the Estate  was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of  06/07/10 , the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☒  Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

☒  Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐  Service information continued on attached page

**SERVICE LIST FOR ENTERED ORDER**

| SERVED ELECTRONICALLY | SERVED BY U.S. MAIL |
|---|---|
| Katherine Bunker    kate.bunker@usdoj.gov<br>Joseph Caceres    jec@locs.com, generalbox@locs.com<br>Sandi M Colabianchi    scolabianchi@gordonrees.com<br>Charles Shamash    cs@locs.com, generalbox@locs.com<br>United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov | **Debtor:**<br>Chatsworth Industrial Park, LP<br>5101 Vanalden Avenue<br>Tarzana, CA 91356 |

 **Partners, Inc.**
Commercial Real Estate Services

David Katz
Partner

Woodland Hills                    Since 1978                    Santa Monica

## FEE STATEMENT

**To:**  Sharon Boyar C/0                        **Date:** January 6, 2011
Caceres and Shamash, LLP
8200 Wilshire Blvd. Ste. 400
Beverly Hills, Ca. 90211

Brokerage services due for the leasing of 21029 Osborne Street, Ca. 91304
with SOLUTIA INC. as Lessee and CHATSWORTH INDUSTRIAL PARK L.P. as Lessor.

**BROKERAGE:**                        **$ 30,992.94 due CBI PARTNERS INC.**

Year 1)  $ 8,000.00 x  7  Months x 6% =      $ 3,360.00

Year 2)  $ 8,240.00 x 12  Months x 6% =      $ 5,932.80

Year 3)  $ 8,487.00 x 12  Months x 6% =      $ 6,110.64

Year 4)  $ 8,741.00 x 11  Months x 6% =      $ 5,769.06

Year 5)  $ 9,003.00 x 12  Months x 6% =      $ 6,482.16

Year 6)  $ 9,273.00 x  6  Months x 6% =      $ 3,338.28

60  Months                $ 30,992.94

Thank You,

David Katz
CBI Partners, Inc.

21243 Ventura Boulevard, Suite 117 Woodland Hills, CA 91364 • direct line: 818.316.0303 • fax: 818.316.0307
e-mail: cbipartners2@aol.com • web: www.cbi-partners.com • License #00924747

EXHIBIT C                        Page 43

| | |
|---|---|
| In re:  CHATSWORTH INDUSTRIAL PARK, LP | CHAPTER  11 |
| Debtor(s). | CASE NUMBER   1:09-bk-27368-MT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21550 Oxnard Street, Suite 830, Woodland Hills, CA  91367**

A true and correct copy of the foregoing document described as **OBJECTION OF CBI PARTNERSHIP, INC. TO DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION; DECLARATION IN SUPPORT THEREOF**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  March 24, 2011  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Katherine Bunker     kate.bunker@usdoj.gov
Joseph Caceres     jec@locs.com, generalbox@locs.com
Sandi M Colabianchi     scolabianchi@gordonrees.com
Ira Benjamin Katz     lkatz@katzlaw.net
Charles Shamash     cs@locs.com, generalbox@locs.com
Valerie L Smith     vsmith@gordonrees.com
United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

II.  **SERVED BY ☒U.S. MAIL OR ☐OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On  March 25, 2011          I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*
Honorable Maureen Tighe, 21041 Burbank Blvd., Suite 325, Woodland Hills, CA  91367
☐ Service information continued on attached page

III.   **SERVED BY ☐PERSONAL DELIVERY, ☐FACSIMILE TRANSMISSION OR ☐EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page
I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| March 25, 2011 | Lee Dowding | /S/ LEE DOWDING |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**