SANDI M. COLABIANCHI (SBN 193872)
VALERIE L. SMITH (SBN 135837)
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

Attorneys for Secured Creditor
CSFB 2003-C4 NORDHOFF LIMITED PARTNERSHIP

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>CHATSWORTH INDUSTRIAL PARK, LP,<br><br>                Debtor. | CASE NO. 1:09-BK-27368-MT<br><br>CHAPTER 11<br><br>**CSFB 2003-C4 NORDHOFF LIMITED PARTNERSHIP'S OPPOSITION TO DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN**<br><br>Date: April 28, 2011<br>Time: 1:00 p.m.<br>Judge: Maureen Tighe |

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 2 |
| | A. | Underlying Loan Documents and Debtor's Default | 2 |
| | B. | Proposed Modifications | 3 |
| | C. | Solvency of Estate | 3 |
| III. | STANDARDS FOR APPROVAL OF the plan | | 4 |
| IV. | OBJECTIONS | | 4 |
| | A. | The Plan Is Not Fair And Equitable (11 U.S.C. § 1129(b)(1) | 4 |
| | B. | The Plan Is Not Fair And Equitable As To The Secured Class | 5 |
| | C. | The Plan Is Not Fair And Equitable As To The Unsecured Class | 6 |
| | D. | The Plan Is Not Proposed In Good Faith (11 U.S.C. § 1129(a)(3) | 7 |
| | E. | The Plan Provides Less To Creditors Than In a Chapter 7 Liquidation (11 U.S.C. § 1129(a)(7)) | 9 |
| | F. | The Proposed Plan Is Not Feasible (11 U.S.C. § 1129(a)(11) | 10 |
| V. | CONCLUSION | | 11 |

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aetna Realty Inv., Inc. v. Monarch Beach Venture, Ltd.*,
  166 B.R. 428 (Dist. C.D. Cal. 1993) .................................................................. 5

*Bank of America Trust and Savings Assoc. v. 203 North LaSalle Street Partnership*,
  526 U.S. 434, 143 L.Ed.2d 607, 119 S.Ct. 1411 (1998) ..................................... 7

*In re 2712 Mission Partners, L.P.*,
  2010 Bankr. LEXIS 333, 52 Bankr. Ct. Dec. 193 (Bankr. N.D. Cal. 2010) ............. 5

*In re Ambanc La Mesa Ltd. P'ship*,
  115 F.3d 650 (9th Cir. 1997) ............................................................................ 4

*In re Consul Restaurant Corp.*,
  146 B.R. 979, 989 (Bankr. D. Minn. 1992) ....................................................... 5

*In re D & F Const. Inc.*,
  865 F.2d 673 (5th Cir. 1989) ............................................................................ 5

*In re Heartland Federal Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II)*,
  994 F.2d 1160 (5th Cir.), *cert denied*, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993) ... 6

*In re Liberty National Enterprises v. Ambanc La Mesa Ltd. Partnership (In re Ambanc La Mesa Ltd. Partnership)*,
  115 F.3d 650 (9th Cir. 1997) ............................................................................ 6

*In re Made in Detroit, Inc.*,
  299 B.R. 170, 182 (Bankr. E.D. Mich. 2003) ..................................................... 6

*In re Madison Hotel Assocs.*,
  749 F.2d 410 (7th Cir. 1989) ............................................................................ 8

*In re SM 104 Ltd.*,
  160 B.R. 202 (Bankr. S.D. Fla. 1993) .............................................................. 10

*In re Sylmar Plaza, L.P.*,
  314 F.3d 1070 (9th Cir. 2002) .......................................................................... 8

*In re Westwood Plaza Apartments, Ltd.*,
  192 B.R. 693 (Dist. E.D. Tex. 1996) ................................................................. 6

*Louisville Trust Co. v. Louisville, N.A. & C.R. Co.*,
  174 U.S. 674, 3 L.Ed. 1130, 19 S.Ct. 827 (1899) .............................................. 7

*Ryan v. Loui (In re Corey)*,
  892 F.2d 829 (9th Cir. 1989) ............................................................................ 8

*S & P, Inc. v. Pfeifer*,
  189 B.R. 173 (N.D. Ind. 1995) ........................................................................ 10

## TABLE OF AUTHORITIES
Continued

**Page**

*Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (Matter of Sandy Ridge Dev. Cor.)*,
  881 F.2d 1346 (5th Cir. 1989) .................................................................................. 5

*Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*,
  84 B.R. 167 (9th Cir. BAP 1988) .................................................................................. 8

**Statutes**

11 U.S.C. § 726(a)(5) ........................................................................................................ 9

**Other Authorities**

7 COLLIER ON BANKRUPTCY ¶ 1129.03 ........................................................................ 10

7 COLLIER ON BANKRUPTCY ¶ 1129.05 .......................................................................... 6

Secured Creditor CSFB 2003-C4 NORDHOFF LIMITED PARTNERSHIP ("Secured Creditor") is the holder of a senior secured interest in the real property commonly referred to as the Chatsworth Industrial Park ("Property") and of two general unsecured claims, and hereby submits its opposition to the Debtor's Second Amended Chapter 11 Plan ("Plan").[1]

## I.    INTRODUCTION

The Property is an industrial park with approximately nine tenants. The principal of the Debtor, Sharon Boyar ("Boyar"), is the property manager. The only other employee is Boyar's son who assists with landscape and maintenance.

The Debtor's estate is solvent. There is sufficient equity in the Property to pay all secured and unsecured creditors in full with interest. Notwithstanding the ability to pay creditors promptly in full and with interest, Debtor proposes to not only modify Secured Creditor's lien but to pay unsecured claims over five years with only .37% interest. *Plan,* p. 7. Further, the Plan does not contain any provision or safeguards requiring excess rents to be held for the benefit of the Property or paid to creditors. Therefore, the approximately $14,000 per month that would remain after payment of the Property's expenses and the Plan payments, rather than being available to the creditors of the estate, is available for distribution to the Debtor's principal, effectively a distribution to the equity holder prior to the payment of creditors. Any payment on account of equity interests prior to creditors being paid in full is not only contrary to the purpose of the Bankruptcy Code, but places the burden on the creditors of loss due to depreciation, mismanagement or other risk, and leaves insufficient funds available for maintenance and major repairs.

The Plan is unconfirmable and objectionable on many levels. First, the Plan fails to pay unsecured claims the market rate of interest while allowing the equity holder to retain her interest without putting any new value into the estate. Second, the Plan forces the Secured Creditor to

---

[1] There are only two impaired classes of claims under the Plan: Class 1 (secured creditors) with one member and Class 2 (general unsecured creditors) with four members (Debtor's Disclosure Statement discloses that the fifth member's claim, filed by Jalmar Properties, Inc., has been settled and its claim is being withdrawn). Secured Creditor has cast its Class 1 (secured) ballot and its two Class 2 (general unsecured) ballots rejecting the Debtor's Plan. Secured Creditor is the only member of Class 1; thus, Class 1 has rejected the Plan. Secured Creditor holds two of the four ballots in Class 2; thus, two of the four Class 2 creditors have rejected the Plan. Under the circumstances, Secured Creditor contends the Debtor does not have the requisite votes to confirm its Plan.

1

OPPOSITION TO DEBTOR'S SECOND AMENDED PLAN                         CASE NO. 1:09-BK-27368-MT

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

extend essentially a new loan to Debtor on unacceptable terms and at an increased risk to the Secured Creditor. This harm to the creditors could be avoided by the sale or refinance of the Property, something the Debtor simply does not want to do. Instead, the Debtor would rather collect the rents that belong to the Secured Creditor with no provision for safeguarding the $14,000 per month in excess rents and let creditors bear the risk. The Debtor has had over a year to sell or refinance and the fact that it has not done so makes it clear that the Debtor's principal who has total control over the Debtor, is acting solely in her own interest and not for the benefit of the creditors of the estate. The Plan is not fair and equitable and Secured Creditor in its standing as *both* a Class 1 secured creditor and a Class 2 general unsecured creditor, requests that the Court deny confirmation.

## II.    FACTUAL BACKGROUND

### A.    Underlying Loan Documents and Debtor's Default

Secured Creditor is the holder of a promissory note with a principal balance of approximately $7,045,060 ("Note"). Under the terms of the Note, Borrower promised to pay monthly interest installments on the interest owed under the Note, property taxes on a monthly basis and insurance payments on a monthly basis. The Note further provides for a Prepayment Consideration, Late Charge, and Default Interest Rate in the case of non-payment or other "Events of Default," as set forth in the Deed of Trust. In connection with the Note, Borrower granted a first priority, senior security interest in the Property to Secured Creditor or its predecessor in interest.

Under the terms of the Note, Debtor promised to pay, among other things, monthly interest installments on the principal owed under the Note, property taxes on a monthly basis and insurance payments on a monthly basis. The monthly payments due under the Note are $47,351.42 for principal and interest and $19,775.57 for escrow for property taxes, property insurance and certain reserves.

The Note has been in default since May 1, 2009 when the Debtor failed to make the monthly payment due. The Debtor failed to make subsequent payments to Secured Creditor due under the terms of the Note, with the exception of one payment in the amount of $70,483.34

2

made on or about September 4, 2009. Despite requests to do so, the Debtor has failed to cure the defaults.[2]

### B. Proposed Modifications

The Plan proposes to modify the Secured Claim as follows: 1) extend the maturity date nearly three years from August 1, 2013 to April 1, 2016; 2) roll all arrears estimated to be $799,572.31 into the existing loan and reamortize over a hypothetical 30 years from the Effective Date at the existing contract rate of interest of 6.3%, which increases the principal and interest payment to Secured Creditor by approximately $1,000, from $47,351.42 to $48,302.55; and 3) for the Note as modified to be deemed fully reinstated on the Effective Date. *Plan*, p. 5.

The Debtor proposes to pay general unsecured claims in equal monthly payments for 60 months. The payment will total for all unsecured claims up to $1,431.08 per month. Debtor proposes to pay interest from the effective date in the amount of .37%, the Federal Judgment Rate on the petition date. *Plan*, p. 7. Secured Creditor is the holder of two general unsecured claims, Claim Numbers 4 and 5. *See Joint Notices of Transfer of Claim filed as Docket Nos. 98 and 99.*

### C. Solvency of Estate

Secured Creditor does not agree with the Debtor's liquidation analysis and asserts that the estate is solvent. The Debtor is a limited partnership ("LP"). The Debtor provides in its liquidation analysis that if the case were converted to Chapter 7 and the bankruptcy trustee sold the Property the unsecured creditors would receive nothing. Debtor's Second Amended Disclosure Statement Describing Debtor's Second Amended Chapter 11 Plan ("Disclosure Statement") *Disclosure Statement*, p. 28. Two pages later, the Debtor's liquidation analysis states that general unsecured creditors would receive or retain 0% or 100% in a chapter 7 liquidation, explaining in a footnote that there is a contention that the Debtor itself would have no tax liability. *Disclosure Statement*, p. 30. According to the amounts provided in the Debtor's liquidation analysis, if there is no capital gains tax liability, there would be over $1.5 million

---

[2] Secured Creditor requests that the Court take Judicial Notice of the Declaration of D'Juan E. O'Donald in Support of Opposition to Debtor's Motion for Use of Cash Collateral filed on January 25, 2010 as Docket No. 25 which contains copies of the loan documents.

available to pay only $85,062 in general unsecured claims, even after payment of Secured Creditor's entire claim. *Disclosure Statement,* p. 30.

The Debtor is not liable for any capital gains tax on the sale of the Property. LPs are treated as pass-through entities for federal and state income tax purposes. As a result of this tax treatment, all of the income and expenses of the LP "pass-through" to the members for income tax purposes on a Schedule K-1 Partner's Share of Income, Deductions, Credits, etc. As such, the tax liability may not be charged to the bankruptcy estate and may not be included in the liquidation analysis. Once the $2.275 million capital gains tax is deleted from the liquidation analysis, the amount available to unsecured creditors exceeds $1.5 million.

### III.    STANDARDS FOR APPROVAL OF THE PLAN

Section 1129 of the Bankruptcy Code sets forth the conditions that must be met for the Debtor's plan to be confirmed. Among other things, the plan must be proposed in good faith and not by any means forbidden by law and the Plan must be fair and equitable and not unfairly discriminate. The Debtor, as the plan proponent, bears the burden of proof by a preponderance of the evidence to satisfy the court that the requirements of section 1129 are met. *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 653 (9th Cir. 1997).

### IV.    OBJECTIONS

#### A.    The Plan Is Not Fair And Equitable (11 U.S.C. § 1129(b)(1)

Section 1129(b)(1) of the Bankruptcy Code requires that the Plan be fair and equitable with respect to each class of claims that is impaired under and has not accepted the Plan. The Plan is not "fair and equitable" to either the secured claim or the unsecured claims. The Plan modifies the secured claim in a detrimental manner and pays unsecured claims over five years at a below-market interest rate. The delay in full payment unfairly shifts the burden to the creditors while allowing the equity interests to retain the benefit of any appreciation in the Property. Further, the Plan allows the equity interests to receive distributions of rents (which are subject to the Secured Creditor's lien) collected in excess of the expenses and minimal monthly payments proposed to the creditors. The Plan is contrary to the intent and purpose of the Bankruptcy Code and should not be confirmed.

4

"Section 1129(b) only states the minimal requirements that must be satisfied for a plan to be fair and equitable. A plan may fail to be fair and equitable in a more general sense even if it satisfies the requirements of section 1129(b)." *In re 2712 Mission Partners, L.P.*, 2010 Bankr. LEXIS 333, 52 Bankr. Ct. Dec. 193 (Bankr. N.D. Cal. 2010), *citing In re D & F Const. Inc.*, 865 F.2d 673 (5th Cir. 1989). The Court must consider the entire plan in the context of the particular facts and circumstances of the case in determining whether the plan is fair and equitable under § 1129(b)(2). *Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (Matter of Sandy Ridge Dev. Cor.)*, 881 F.2d 1346, 1352 (5th Cir. 1989) ("Technical compliance with the requirements of section 1129(b)(2) does not assure that the plan is fair and equitable. Instead, this section merely sets minimal standards. . .").

### B. The Plan Is Not Fair And Equitable As To The Secured Class

As stated above, the Plan extends the maturity date by nearly three years and also adds the arrearages of approximately $800,000 to the principal balance. The Property has sufficient equity according to the Debtor's valuation to pay secured and unsecured claims in full. The proposed modification is for the sole benefit of the Debtor's principal and unfairly shifts the risk of depreciation or other loss from the Property to the creditors. "The concept of fair and equitable involves more than an application of a mechanical calculation of absolute priority based on distribution of property valued abstractly. When the proposed distribution would substantially shift the risk of failure of the plan from a junior class to a senior dissenting class for no legitimate purpose, the plan is not fair and equitable to the dissenting class." *Aetna Realty Inv., Inc. v. Monarch Beach Venture, Ltd.*, 166 B.R. 428, 436 (Dist. C.D. Cal. 1993) (*quoting In re Consul Restaurant Corp.*, 146 B.R. 979, 989 (Bankr. D. Minn. 1992). Further, the Plan modifies contractually agreed upon rights, when there is sufficient equity to pay creditors in full.

The Plan only authorizes a creditor to bring a motion to convert or dismiss the case under § 1112(b) if there is a default in performing the Plan. *Plan, p. 12.* To the extent that the Plan limits the Secured Creditor's right to foreclose if the Debtor fails to timely make any post-confirmation payment, the Plan is not "fair and equitable" and effectively limits Secured Creditor's lien. The Secured Creditor retains its lien under the Plan. If the Debtor fails to make

a payment to Secured Creditor, the Secured Creditor should have all rights under its prepetition security agreement with the Debtor. This includes the right to foreclose. *See In re Heartland Federal Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1169 (5th Cir.), *cert denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993) ("We interpret the plan as ensuring [retention of a lien] if the debtor fails to comply with its debt service obligations, [the secured creditor] would have the right to foreclose."). The Plan must allow the Secured Creditor to retain its right to foreclose, as well as its other rights under the deed of trust upon any default by the Debtor. Any other result would not satisfy the requirement under § 1129(b)(2)(A)(i)(1) that the Secured Creditor retain its lien.

### C. The Plan Is Not Fair And Equitable As To The Unsecured Class

The Plan provides for unsecured claims to be paid in monthly payments over five years at an interest rate of .37%. The Debtor's principals retain their equity interests without providing any new value. An interest rate of .37% is grossly below the market rate of interest for an unsecured note to be paid over five years. The prime rate is 3.25%. *See Declaration of Valerie Smith,* ¶ 2 and Exhibit A thereto. A search of average rates for credit cards, which are similar to the loan the Debtor is asking the unsecured creditors to make as an unsecured loan, shows an average variable rate of 14.43%. *Id.* ¶ 3 and Exhibit B thereto. The Plan must provide a market rate of interest. *See* 7 COLLIER ON BANKRUPTCY ¶ 1129.05 [3][a] (The interest rate provided for in the plan must be at least a market rate of interest to be "fair and equitable"), *citing In re Westwood Plaza Apartments, Ltd.,* 192 B.R. 693 (Dist. E.D. Tex. 1996); *In re Liberty National Enterprises v. Ambanc La Mesa Ltd. Partnership (In re Ambanc La Mesa Ltd. Partnership),* 115 F.3d 650 (9th Cir. 1997) (the court held that failure to pay interest post confirmation and before the effective date on claims violated the absolute priority rule); *see also In re Made in Detroit, Inc.,* 299 B.R. 170, 182 (Bankr. E.D. Mich. 2003) ("Because the Plan fails to provide for the full payment with interest to the unsecured creditors while at the same time preserving in full the shareholders' equity, the Plan violates the absolute priority rule.") The Plan is in violation of the absolute priority rule and may not be confirmed since it provides a below market rate of interest and the equity holders are not contributing anything to retain their interests.

6

OPPOSITION TO DEBTOR'S SECOND AMENDED PLAN                    CASE NO. 1:09-BK-27368-MT

Further, among the reasons for the "absolute priority rule" is "the danger inherent in any reorganization plan proposed by a debtor, then and now, that the plan will simply turn out to be too good a deal for the debtor's owners. *Bank of America Trust and Savings Assoc. v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 444, 143 L.Ed.2d 607, 119 S.Ct. 1411 (1998), *citing* H.R. Doc. No. 93-137, pt. I, p. 255 (1973) (discussing concern with "the ability of a few insiders, whether representatives of management or major creditors, to use the reorganization process to gain an unfair advantage"); *ibid.* ("It was believed that creditors, because of management's position of dominance, were not able to bargain effectively without a clear standard of fairness and judicial control"). See also *Louisville Trust Co. v. Louisville, N.A. & C.R. Co.*, 174 U.S. 674, 684, 3 L.Ed. 1130, 19 S.Ct. 827 (1899) (reciting "the familiar rule that the stockholder's interest in the property is subordinate to the rights of creditors; first of secured and then of unsecured creditors" and concluding that "any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expenses of the prior rights of either class of creditors comes within judicial denunciation.").

Even if the Debtor proposed to pay the market rate of interest, Secured Creditor believes that the proposal to pay unsecured claims over five years while the equity interests retain their interests and are even entitled to receive distributions before creditors are paid in full is not "fair and equitable." Under Debtor's proposed plan, the current equity or "interest" holders would retain their interest in the Debtor and would even be able to receive distributions, despite the fact that, as discussed above, there is sufficient equity in the Property to pay Secured Creditor and unsecured creditors in full, and with interest. *Disclosure Statement*, p. 19.

### D. The Plan Is Not Proposed In Good Faith (11 U.S.C. § 1129(a)(3)

The Plan is not proposed in good faith as is indicated by the proposed treatment of secured and unsecured claims and the ability of equity interests to receive distributions in advance of creditors being paid in full – particularly since the distributions would come from rents subject to Secured Creditor's lien. The Ninth Circuit set forth the following standard for evaluating good faith:

Section 1129(a)(3) does not define good faith. *In re Madison Hotel Assocs.*, 749

7

OPPOSITION TO DEBTOR'S SECOND AMENDED PLAN                    CASE NO. 1:09-BK-27368-MT

F.2d 410, 425 (7th Cir. 1989). A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code. *Ryan v. Loui (In re Corey)*, 892 F.2d 829, 835 (9th Cir. 1989); *see also Madison Hotel*, 749 F.2d at 425 ("For purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."). The requisite good fairth determination is based on the totality of the circumstances. *Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*, 84 B.R. 167, 172 (9th Cir. BAP 1988).

*In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir. 2002).

The proposed treatment of secured creditor under the proposed plan is to roll all arrears "into the existing loan (i.e., added to principal) and [for the loan to be] reamortized over a hypothetical 30 years from the Effective Date at the existing contract rate of interest of 6.3%, with principal and interest payments estimated to be in the amount of $48,302.55/mth. from the Effective Date forward (the "Reamortized Loan")." *Proposed Plan*, p. 5. The Debtor further modifies the maturity date of the Note, due to mature on August 1, 2013, by nearly three years to April 1, 2016 with remaining principal and all matured and unpaid interest, fees, and charges allowable and due after the Effective Date pursuant to the plan to be due and payable on April 1, 2016. (Disclosure Statement, p. 17, Proposed Plan, p. 5.). Thus, the Debtor's proposal spreads the payment of $799,572.31 in pre-petition arrearages over the course of the new, re-written loan with payments to be made after the Effective Date.[3] Yet, Secured Creditor is to only receive approximately an additional $1,000 per month, despite that under the Plan, there are no provisions to prevent net cash flow of $14,000 per month (after expenses and Plan payments) from being paid to equity.

Further, the Plan provides that the loan will be deemed "reinstated" on the Effective Date. Presumably, the Debtor would expect to be considered no longer in default and able to request payments from the reserve accounts for repairs and leasing commissions and improvements. The Secured Creditor has continued to make the property tax and insurance payments from the escrow accounts for these items as contemplated by the cash collateral order. In its Disclosure Statement, Debtor improperly states that it is entitled to reimbursement from the reserves for "certain repairs" including roof repairs. Disclosure Statement, p. 33; ll. 7-13. However, the

---

[3] Secured Creditor reserves the right to amend its claim and all rights in any dispute.

8

OPPOSITION TO DEBTOR'S SECOND AMENDED PLAN    CASE NO. 1:09-BK-27368-MT

reserve agreements do not require reimbursement to the Debtor for such items by Secured Creditor if the loan is in default. Debtor also did not comply with the reimbursement requirements for the repairs, which includes providing executed mechanics lien waivers by all contractors or suppliers whose contracts, invoices or purchase orders exceed $2,500 in amount.

There are insufficient funds in the replacement reserve to make the full roof repair of $48,500. As of July 23, 2010, the replacement reserve account held only $14,124.17. Even if the Debtor contributed the full amount over the past five months, the replacement reserve balance would only increase by $8,915.00 for a total balance of under $25,000.00. In order to protect the Secured Creditor's interests, the Debtor should be required to bring the reserve accounts "current" before it is considered to no longer be in default and allowed to obtain reimbursements from the escrow accounts.

To the extent the Debtor asserts that "reinstatement" allows it to avoid payment of all default amounts that have accrued, such as default interest and late charges, as well as the pre-payment premium, Secured Creditor disputes this contention. As will be discussed further in Secured Creditor's response to the Debtor's objection to its claim, the Debtor is not "curing" the default, but instead is attempting to modify the Secured Creditor's lien under the Plan.

### E.    The Plan Provides Less To Creditors Than In a Chapter 7 Liquidation (11 U.S.C. § 1129(a)(7))

Section 1129(a)(7) of the Bankruptcy Code requires that each impaired class either accept the plan or "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date. . ."

The Debtor must make interest payments on the unsecured claims from the date of the petition to satisfy this section. This is a solvent estate. In a chapter 7 case, the unsecured claims would receive the full amount of their claim plus interest from the petition date. 11 U.S.C. § 726(a)(5). The Plan only proposes paying interest at the federal judgment rate on account of unsecured claims from the effective date.

### F.    The Proposed Plan Is Not Feasible (11 U.S.C. § 1129(a)(11)

The Debtor's proposed plan is not feasible. Section 1129(a)(11) requires as a condition of confirmation that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." This section requires "the plan proponent to show concrete evidence of sufficient cash flow to fund and maintain both its operations and obligations under the plan." *See* 7 ON BANKRUPTCY ¶ 1129.03[11], *citing S & P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. Ind. 1995) (quoting *In re SM 104 Ltd.*, 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993).

While the disclosure statement recognizes that if the Debtor were to lose tenants and was unable to replace them quickly enough, it may not be able to make payments, but it provides no information in the form of cash flow projections or otherwise for how it will financially handle such a situation, especially given that any excess cash flow can and apparently will be distributed to equity. In any large real property, costs associated with repairs, such as roof repairs, heating and air conditioning systems, and other parts of the property, such as outdoor maintenance, can be significant. If the Debtor cannot even pay the proposed plan payments out of the projected cash flow, it is unreasonable to assume that the Debtor will be able to make the proposed plan payments when there is a vacancy or repair required. Accordingly, it is more than likely that the Debtor will be unable to make all of its payments under the proposed plan and that liquidation of the Property or further reorganization will be needed.

From the numbers and the information in the disclosure statement, the Debtor will likely fail to make payments during the term of the plan. The Debtor should not be allowed to change creditors' rights and then force creditors to spend more time and money when there is a default. At a minimum, any plan should provide for the immediate sale of the property if the Debtor does not timely perform under the plan.

///

///

///

## V.    CONCLUSION

Secured Creditor requests this Court to deny confirmation of the Debtor's Second Amended Plan, plus such other and further relief as the Court deems appropriate.

Dated: March 31, 2011    GORDON & REES LLP


By    /s/ Sandi Colabianchi
Sandi Colabianchi
Attorneys for Secured Creditor
CSFB 2003-C4 NORDHOFF LIMITED PARTNERSHIP

| In re: CHATSWORTH INDUSTRIAL PARK, LP | Chapter 11 |
|---|---|
| | Case Number 1:09-bk-27368-MT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: c/o Gordon & Rees LLP, 275 Battery Street, Suite 2000, San Francisco, CA 94111

A true and correct copy of the foregoing document described as ***CSFB 2003-C4 NORDHOFF LIMITED PARTNERSHIP'S OPPOSITION TO DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***March 31, 2011***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒   Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On ***March 31, 2011***, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒   Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***Fill in Date Document is Filed***, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

March 31, 2011    Dyanne Hammerquist    /s/ Dyanne Hammerquist

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

*August 2010*    FORM 9013-3.1 PROOF OF SERVICE

| In re: CHATSWORTH INDUSTRIAL PARK, LP | Chapter 11 |
|---|---|
|  | Case Number 1:09-bk-27368-MT |

| Date | Type Name | Signature |
|---|---|---|

### ADDITIONAL SERVICE INFORMATION:

**SERVICE VIA NEF:**
Katherine Bunker          kate.bunker@usdoj.gov
Joseph Caceres            jec@locs.com
Sandi M. Colabianchi      scolabianchi@gordonrees.com
Andrew A. Goodman         agoodman@goodmanfaith.com
Ira Benjamin Katz         lkatz@katzlaw.net
Charles Shamash           cs@locs.com
Valerie L. Smith          vsmith@gordonrees.com
United States Trustee     ustregion16.wh.ecf@usdoj.gov

**SERVICE VIA FED EX:**
The Honorable Maureen A. Tighe, U.S. Bankruptcy Judge
United States Bankruptcy Court
21041 Burbank Blvd.
Woodland Hills, CA 91367
    Attn: Intake, CHAMBERS COPY

**SERVICE VIA FIRST-CLASS MAIL**
Katherine Bunker                              **Office of the U.S. Trustee**
Office of the U.S. Trustee
21051 Warner Center Lane, Ste. 115
Woodland Hills, CA 91367
Tel:  (818) 610-2376
Fax:  (818) 716-1576

Traci S. Lagasse                              **Counsel for Jalmar Properties Inc.**
Andrews Lagasse Branch & Bell LLP
11232 El Camino Real, Ste. 250
San Diego, CA 92130
Tel:  (858) 345-5080
Fax:  (858) 345-5072

Joseph Caceres                                **Counsel for Debtor Chatsworth Industries, LP**
Charles Shamash
Caceres & Shamash LLP
8200 Wilshire Blvd., Ste. 400
Los Angeles, CA 90211
Tel:  (310) 205-3400
Fax:  (310) 878-8308